FILED
CLERK, U.S. DISTRICT COURT

APR - 8 2021

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ RS _____ DEPUTY

1  STEPHEN C. STEINBERG (SBN 230656)
     ssteinberg@bzbm.com
2  GABRIELLA A. WILKINS (SBN 306173)
     gwilkins@bzbm.com
3  BARTKO ZANKEL BUNZEL & MILLER
   A Professional Law Corporation
4  One Embarcadero Center, Suite 800
   San Francisco, California 94111
5  Telephone:   (415) 956-1900
   Facsimile:   (415) 956-1152
6
7  Attorneys for Plaintiff
   JUUL Labs, Inc.

8

9               UNITED STATES DISTRICT COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11                   WESTERN DIVISION

12 | JUUL LABS, INC., a Delaware | Case No. **2:21-CV-03056-CAS-PDx**
13 | Corporation, |
   | | **COMPLAINT FOR:**
14 |          Plaintiff, |
   | | **1. FEDERAL TRADEMARK**
15 |       v. | **INFRINGEMENT AND**
   | | **COUNTERFEITING, 15 U.S.C.**
16 | | **§ 1114;**
17 | ANDY CHOU (aka LIZHI ZHOU), an |
   | individual; YIWU CUTE JEWELRY | **2. FEDERAL UNFAIR**
18 | CO., LTD., a Chinese limited company; | **COMPETITION, 15 U.S.C. § 1125;**
   | YIWU XITE JEWELRY CO., LTD., a |
19 | Chinese limited company; CJ |
20 | FULFILLMENT CORP., a California | **3. CALIFORNIA FALSE**
   | Corporation; CJ TRADE CORP., an | **ADVERTISING, CAL. BUS. &**
21 | Arizona Corporation; and YIWU | **PROF. CODE § 17500;**
22 | PROMOTIONAL TRADE CO., LTD. |
   | (aka YIWU PROMOTION TRADE | **4. CALIFORNIA UNFAIR**
23 | CO., LTD.), a Chinese limited | **COMPETITION, CAL. BUS. &**
   | company, | **PROF. CODE § 17200**
24 | |
25 |          Defendants. |
26

27

28

2875.000/1599669.1

COMPLAINT

Plaintiff JUUL Labs, Inc. ("JLI"), by and through its attorneys, Bartko Zankel Bunzel & Miller, for its Complaint against Defendants Andy Chou (aka Lizhi Zhou), Yiwu Cute Jewelry Co., Ltd., Yiwu Xite Jewelry Co., Ltd., CJ Fulfillment Corp., CJ Trade Corp., and Yiwu Promotional Trade Co., Ltd. (aka Yiwu Promotion Trade Co., Ltd.) (collectively, "Defendants"), allege as follows:

## I.     INTRODUCTION

1.     Increasingly, counterfeit products are infiltrating our marketplaces, particularly on the Internet, defrauding unsuspecting consumers and lawful brand owners alike. JLI works steadfastly to combat these wrongdoers and enforce its intellectual property rights. JLI brings this action not only to protect its brand, but also to protect consumers from counterfeit JLI products.

2.     JLI is the designer, manufacturer, and distributor of JUUL-branded electronic nicotine delivery systems ("ENDS") and other related JUUL-branded products.

3.     Defendants, together, form a global enterprise designed to distribute and import counterfeit products from China into the United States and other countries.

4.     The entity Defendants all operate under the sole control and ownership of one individual, who is the mastermind behind a global counterfeiting network.

5.     JLI's brand protection program takes a multilayered approach to the problem of counterfeiting, which is global in scope and affects the entirety of the ENDS industry. JLI employs third-party private investigators or consultants to identify and purchase suspected inauthentic JLI products. Sometimes, like in the present case, these investigations lead to litigation.

6.     This is an action against Defendants for the willful and significant infringement of JLI's trademark rights related to the JUUL System, a closed, cartridge-based product that utilizes heating technology to aerosolize and deliver nicotine without combustion, comprised of: (1) a device containing a rechargeable

1   battery, control circuitry and a receptacle for a cartridge or pod ("JUUL Device");

2   (2) individual disposable prefilled nicotine cartridges or pods that contain a heating

3   chamber ("JUULpods"); and (3) a USB charger designed specifically for charging

4   the JUUL Device and related accessories ("USB Charging Dock") (collectively

5   "JUUL Products").

6         7.    Defendants are unlawfully manufacturing, advertising, marketing,

7   selling, and/or distributing unauthorized, inauthentic, and infringing products that

8   look identical or nearly identical to JUUL Products and bear various JUUL-

9   formative trademarks such as JUUL and JUULpods (the "JUUL Marks.")

10        8.    Defendants have no license, nor are they authorized in any way, to use

11   the JUUL Marks.

12        9.    JUULpods are not optimized to be refilled or filled with anything other

13   than JLI's proprietary nicotine e-liquid formulations made at JLI's direction and

14   following JLI's stringent quality controls.

15        10.   Defendants, without the consent of JLI and within the U.S., have

16   offered to sell and have sold non-genuine JUUL Products.

17        11.   Such sales violate federal regulations.

18        12.   Inspections revealed that these products are not made with genuine

19   approved parts, and their functionality is unknown.

20        13.   JLI is seeking injunctive and monetary relief to protect its customers

21   and consumers from confusion and the sale of these inauthentic and potentially

22   dangerous goods, to enjoin Defendants from further unlawful and infringing

23   conduct, and to recover full damages and statutory penalties for Defendants'

24   harmful behavior.

25               II.    THE PARTIES

26        14.   JLI is a privately held corporation organized and existing under the

27   laws of the state of Delaware, with its principal place of business at 1000 F St. N.,

28

FL 8, Washington, DC 20004, and its largest domestic office at 560 20th Street, San Francisco, CA, 94107.

15.     On information and belief, Defendant Andy Chou (aka Lizhi Zhou) (hereinafter, "Chou") is a Chinese national. Chou regularly conducts business in the State of California by offering for sale, marketing, selling, importing, and distributing goods to customers in or via locations in the Central District of California and elsewhere in the United States. Chou is the sole owner, president, legal representative, agent, director, and shareholder of Defendants Yiwu Cute Jewelry Co., Ltd., Yiwu Xite Jewelry Co., Ltd., CJ Fulfillment Corp., CJ Trade Corp, and on information and belief, Yiwu Promotional Trade Co., Ltd. (aka Yiwu Promotion Trade Co., Ltd.).

16.     Defendant Yiwu Cute Jewelry Co., Ltd. ("CJ") is a limited company organized and existing under the laws of China, with its principal place of business at District 5, International Trade City, No. 70335, Street 7, F5, Gate 97, Yiwu, Zhejiang, China 32200, and is owned and/or directly controlled by Chou. CJ regularly conducts business in the State of California by offering for sale, marketing, selling, importing, and distributing goods to customers in or via locations in the Central District of California and elsewhere in the United States. CJ does business as "CJDropshipping," through its website, www.cjdropshipping.com.

17.     On information and belief, Defendant Yiwu Xite Jewelry Co., Ltd. ("CJ2") is a limited company organized and existing under the laws of China, with its principal place of business at 3rd Floor, Building 8, No. 89 Siyuan Road, Niansanli Street, Yiwu, Zhejiang, China, and is owned and/or directly controlled by Chou. On information and belief, CJ2 is a DBA of CJ. CJ2 regularly conducts business in the State of California by offering for sale, marketing, selling, importing, and distributing goods to customers in or via locations in the Central District of California and elsewhere in the United States.

18. Defendant CJ Fulfillment Corporation ("CJ Fulfillment") is a corporation organized and existing under the laws of the State of California, having its principal place of business at its warehouse located at 13955 Central Ave. Chino, California 91709, which is owned and/or directly controlled by Chou.

19. Defendant CJ Trade Corp. ("CJ Trade") is a corporation organized and existing under the laws of the State of Arizona, with its principal place of business at 2 East Congress Street, Suite 900-126, Tucson, Arizona 85701, and is owned and/or directly controlled by Chou. CJ Trade is also registered to do business as a foreign for-profit corporation in the State of New Jersey, with a warehouse operating at 20 Haypress Road, Suites 313 & 314, Cranbury, NJ 08512. CJ Trade regularly conducts business in the State of California by offering for sale, marketing, selling, importing, and distributing goods to customers in or via locations in the Central District of California and elsewhere in the United States.

20. On information and belief, Yiwu Promotional Trade Co., Ltd. (aka Yiwu Promotion Trade Co., Ltd.) ("CJ3") is a limited company organized and existing under the laws of China, and is a DBA of CJ. CJ3 regularly conducts business in the State of California by offering for sale, marketing selling, importing, and distributing goods to customers, as well as collecting payments from customers, in and via locations in the Central District of California, and elsewhere in the United States.

## III.   JURISDICTION AND VENUE

21. This is an Action for violations of the Trademark Act of 1946, 15 U.S.C. §§ 1051 et seq. (the "Lanham Act"), and related causes of action. This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121(a), and 28 U.S.C. §§ 1331 and 1338(a) and (b).

22. This Court has general personal jurisdiction over CJ Fulfillment because it, at all relevant times, was a California corporation with its principal place

of business in Chino, California, and thus is "at home" in the state of California. *Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. 915, 924 (2011).

23.     This Court has both general and specific personal jurisdiction over Chou, CJ, CJ2, CJ3, and CJ Trade because there is such identity of interests between them and Defendant CJ Fulfillment that the purported separate legal personalities of them no longer exist. Moreover, this unity of interests includes fraudulent conduct such that the failure to treat them as a single personality would perpetuate fraud and result in injustice.

24.     It is well settled that the corporate form may be ignored and the contacts of multiple corporations and individuals with a State may be attributed to a single legal personality when the parties are agents or alter egos of one another or where there is an identity of interests between the parties. This is particularly true when the failure to disregard the corporate form and treat the defendants as a single legal personality would enable the parties to perpetuate fraud.

25.     General jurisdiction thus exists over all Defendants because Chou, CJ, CJ2, CJ3, CJ Trade, and CJ Fulfillment share such an identity of interests that they are no longer entitled to independent legal status and have acted in unity to perpetuate fraudulent conduct. As such, because CJ Fulfillment is "at home" in California, Chou, CJ, CJ2, CJ3, and CJ Trade are also.

26.     Specific jurisdiction exists because when the Defendants' separate legal personalities are disregarded and the six Defendants are viewed as a single personality, the respective "contacts" of that single personality justify jurisdiction in the forum. That personality has purposely availed itself of the benefits and protections of California law and has purposefully directed its products to California.

27.     Such purposeful availment and purposeful direction included, inter alia: engaging in business activities in this District and the State of California, offering

for sale inauthentic products in and via this District and knowingly and purposefully directing business activities in and via this District.

28.     Plaintiff's claims for relief arise out of the Defendants' conduct within this District and the State of California. Additionally, Defendants store in and distribute counterfeit products from a facility physically located within this District and in the State of California. Accordingly, California and this Court have a strong interest in adjudicating this dispute to remedy the misuse of California resources to perpetuate fraud in and via California.

29.     On information and belief, Chou enjoys complete control over decisions made on behalf of each of the Defendants and all of the defendant entities were created for the sole purpose of distributing counterfeit products for Chou's unlawful organization in and to the United States, including the state of California.

30.     In addition, a significant identity of interest exists between the purported separate personalities, including: Chou has sole ownership of all of the stock of the corporation(s); the alleged separate personalities have failed to segregate funds and have commingled funds and other assets; treatment by Chou of the assets of the corporation(s) as his own; failure to adequately capitalize his corporations; total absence of corporate assets and undercapitalization; and use of corporations as shell companies.

31.     Moreover, Chou has misused the corporate privilege to perpetuate fraud as described below and unless he and his entities are not treated as a single legal personality, he will continue to benefit from the fraudulent conduct described below. If Chou is permitted to exploit the separate legal personalities of himself and the Defendant entities, injustice will occur.

32.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b-c) in that a substantial part of the events or omissions giving rise to the claims occurred here and Defendants are subject to personal jurisdiction in this District.

## IV.   **FACTUAL ALLEGATIONS**

### *A.    JLI's History and Background*

33.    JLI was founded and incorporated in 2007 and is recognized globally as a leader in offering an alternative to traditional combustible cigarettes.

34.    JLI's mission is to transition the world's billion adult smokers away from combustible cigarettes and eliminate their use.

35.    JLI has been very successful in offering current adult smokers an alternative to traditional cigarettes. In the years following the launch of the JUUL System, JLI reportedly obtained over half of the overall e-cigarette market in the U.S.

36.    By virtue of JLI's marketplace success and its promotion of the JUUL brand, JLI has established substantial consumer goodwill in the JUUL trade name and JUUL Marks. Consumers of ENDS products associate the JUUL Marks with high-quality and innovative products.

### *B.    JLI's Trademarks*

37.    JLI owns the following well-known and registered trademarks for use in connection with 1) e-cigarettes, 2) e-cigarette refill liquids and cartridges, and 3) nicotine-based liquid and cartridges, and that appear on genuine JUUL Products:

- "JUUL" (U.S. Trademark Reg. No. 4,818,664);
- JUUL (U.S. Trademark Reg. Nos. 4,898,257);
- JUUL LABS (U.S. Trademark Reg. No. 5,770,541);
- "JUUL LABS" (U.S. Trademark Reg. No. 5,776,153);
- "JUULPODS" (U.S. Trademark Reg. Nos. 5,918,490);

38.    JLI also owns the following well-known and registered trademarks for use in connection with 1) carrying cases, and 2) adapters and battery chargers for e-cigarettes, and that appear on genuine JUUL Products:

- ⟨JUUL⟩ (U.S. Trademark Reg. No. 6,064,902); and
- JUUL (U.S. Trademark Reg. Nos. 6,211,614).

39.     All of these marks together are referred to as, the "JUUL Marks." All of which JLI has registered with the Principal Register of the U.S. Patent and Trademark Office in connection with its various products.

40.     For over five years JLI has continuously used one or more of the JUUL Marks on its products in commerce. To this day, all JUUL Products, including the JUUL Device, JUULpods, and USB Charging Dock, bear one or more of the JUUL Marks.

41.     The JUUL Marks are distinctive and serve solely to identify and promote JLI's genuine products and well-known brand.

42.     JLI invests significant resources in marketing and promotional efforts featuring the JUUL Marks.

43.     JLI has spent substantial time, money, and effort in developing consumer recognition and awareness of its brand.

44.     JLI markets JUUL Products nationwide to current adult smokers, including through its website, and sells its products through its authorized network.

### C.     JLI's Quality Control Measures

45.     Each JUUL Product is designed to meet industry standards for safety, quality, reliability, and performance.

46.     JLI is committed to providing quality products that perform consistently to JLI's specifications. JLI invested and continues to invest in creating and maintaining strict manufacturing and quality standards for the JUUL System and relies on multiple safeguards, testing standards, and quality controls.

47.     JLI practices stringent quality controls to guarantee consistent quality, safety, and performance for each of its products. JLI conducts quality control tests on JUUL products in their totality and on component parts.

48.     The JUUL System is not designed to be used with any third-party cartridges.

49. The JUUL System is specifically designed to function exclusively with the pre-filled, non-refillable JUULpods that contain JLI's proprietary nicotine formulations.

D. *Consumer Confusion and Counterfeit JUUL Products*

50. Defendants are advertising, marketing, offering to sell, and/or have sold or distributed ENDS products that bear confusingly similar imitations of the JUUL Marks. Through these sales, Defendants are intentionally deceiving or facilitating the deception of customers into believing that they are purchasing and receiving authentic JUUL Products that are developed, manufactured, and screened by JLI or another party legitimately associated with or affiliated with, or authorized, licensed, or approved by JLI.

51. Beyond being inauthentic, the functionality, performance, and safety of Defendants' products are unknown. JLI has no control over Defendants' products and has no way of testing the safety of these products. These products are not subjected to JLI's quality-control standards and testing. These products may be manufactured with unknown foreign substances and materials that users and those around them are then inhaling and are otherwise exposed to.

52. Consumers are irreparably harmed by Defendants' conduct because they receive inauthentic products, which are at risk of being lower quality, less reliable, and less safe than the high-quality and reliable genuine JUUL Products they expect.

53. Consumers and the general public are likely to associate any negative or unsafe qualities of these inauthentic products with JLI and the JUUL Marks. This does irreparable harm to JLI by damaging the reputation of the JUUL brand reputation JLI has worked to build and to sustain.

54. Counterfeit JUUL Products are widely recognized as dangerous and potentially harmful. In November 2019, in the port of St. Louis, U.S. Customs and Border Protections officers seized 2,379 counterfeit JUULpods heading to

1   Columbia, Missouri. As stated in the press release, "Authentic Juul pods follow

2   strict guidelines. The pods in [sic] U.S. are produced in regulated facilities, and the

3   manufacturing process and ingredients are regulated by the U.S. government. In

4   contrast, counterfeit Juul products are manufactured overseas in unregulated and

5   unsanitary facilities, and there is no way to verify the authenticity and safety of the

6   electronic cigarette's ingredients."[1]

7        55.    The sale of these infringing and counterfeit goods also deprives JLI of

8   legitimate sales and revenue.

9                        *E.    Defendants' Illegal Enterprise*

10       56.    In or around 2015, Chou started CJ, and began selling mostly jewelry

11   products through online stores on the Alibaba and AliExpress websites, which are

12   equivalent to Amazon in China.

13       57.    Later, he and his wife created a drop shipping website for CJ to start

14   selling products itself in the U.S. and around the world through its own platform at

15   www.cjdropshipping.com.

16       58.    As a drop shipping fulfillment business, CJ houses inventory in its

17   multiple warehouses around the world – including the CJ Fulfillment warehouse in

18   California and CJ Trade warehouse in New Jersey – on behalf of its retail business

19   customers. This eliminates the need for its retail business customers to maintain a

20   brick-and-mortar store or warehouse of their own. Once a purchase is made, CJ

21   fulfills and ships the order to the ultimate buyer on behalf of its retail business

22   customer. CJ also now offers direct sales of products to consumers through its own

23   website, as happened with some of the transactions described below. Sometimes

24   orders are shipped to or picked up by CJ's retail business customers from one of its

25   warehouses instead, as happened with one of the transactions described below. .

---

[1] "CBP Officers in St. Louis Seize Harmful Counterfeit Juul Pods" (Nov. 25, 2019), https://www.cbp.gov/newsroom/local-media-release/cbp-officers-st-louis-seize-harmful-counterfeit-juul-pods.

59.     In or around 2017, Chou incorporated CJ Trade in Arizona, and registered it to do business in New Jersey, as a trading company, wholesale jewelry, and drop shipping service. Shortly thereafter, Chou opened a warehouse in Cranbury, New Jersey as a fulfillment center.

60.     In or around 2018, Chou incorporated CJ Fulfillment in California and began operating a warehouse in Chino, California as CJ's fulfillment center.

61.     At various times, the website has listed its location as the CJ Fulfillment warehouse in Chino, California and/or CJ's offices in Yiwu, Zhejiang, China.

62.     Chou also filed with the USPTO to register two trademarks in the U.S., one for "CJ" which eventually issued as U.S. Trademark Reg. No. 5,714,207, and one for "CJDROPSHIPPING.COM YOU SELL! – WE SHIP FOR YOU!" which eventually issued as U.S. Trademark Reg. No. 5,394,331. ***Both applications provided the address for CJ's principal place of business in China and both list Lizhi Zhou, Chou's alias, as the owner of the trademarks***.

### F.     JLI's Discovery of Defendants' Counterfeit Products

63.     Because of the scope and seriousness of counterfeiting, particularly on the Internet, JLI conducts its own internal processes to combat counterfeiters by investigating and policing suspect counterfeit products. As part of these efforts, JLI employs third-party private investigators or consultants to identify and purchase suspected inauthentic JUUL Products.

64.     JLI found Defendants advertising and offering for sale purported JUUL Products, as "JUUL Starter Kits," online, and JLI arranged for its consultant to purchase samples of such products from Defendants.

65.     Defendants' JUUL Starter Kits include the following purported products: (1) JUUL Device; (2) USB Charging Docks; and (3) four JUULpods in Cool Mint, Virginia Tobacco, Crème Brulee, and Mango flavors. Notably, JLI has

1  not sold any of these flavors in the United States, except for Virginia Tobacco, since

2  2019,  raising a red flag that these products were likely counterfeit.

3      66.    A consultant for JLI made various purchases from CJ of these suspect

4  JUUL Starter Kits, with payments made to a PayPal account in the name of CJ3.

5  The products were then sent to one or more of CJ's U.S. warehouses, via a port in

6  the United States.

7      67.    Once the consultant received the suspect JUUL Products from

8  Defendants, the consultant sent the products to JLI for testing. A strict-chain-of-

9  custody was followed throughout the entire transfer process. JLI's evidence

10  custodian assessed each product's authenticity, and determined that all of the

11  products received from Defendants were counterfeit.

12      68.    On one occasion, the consultant had the suspect JUUL Products

13  shipped to Defendants' warehouse in New Jersey. JLI arranged for another

14  investigator, along with personnel from the U.S. Department of Homeland Security

15  to pick up the suspect JUUL Products. JLI's investigator then sent high resolution

16  photographs to JLI for analysis.

17                G.    *Defendants' Unlawful Conduct*

18      69.    Defendants advertise JUUL Starter Kits as authentic JUUL Products.

19  After initially corresponding on Defendants' online platform – and later on Skype

20  Chat – JLI's investigator purchased the following products from Defendants:

21

| Product Description | SKU No. |
| --- | --- |
| (3) JUUL Silver Starter Kits | CJXFZNZN00104-default |
| (2) JUUL Pink Starter Kits | CJXFZNZN00104-default |
| (5) JUUL Black USB Charging Docks | CJXFLPCD00042-default |
| (6) JUUL Pink Starter Kits | CJXFZNZN00104-default |
| (5) JUUL Slate Starter Kits | CJXFZNZN00104-default |
| (2) JUUL Silver Starter Kits | CJXFZNZN00104-default |

| (100) JUUL Starter Kits | CJXFZNZN00104-default |
|---|---|

70.     Each JUUL Starter Kit came in counterfeit JUUL-branded packaging, an example of which is shown below:

 



1        71.    Each JUUL USB Charging Dock came in counterfeit JUUL-branded
2  packaging, an example of which is shown below:
3        72.    Each JUUL Device bore a counterfeit JUUL Mark, an example of
4  which is shown below:






15

73.     Each JUUL Device came in counterfeit JUUL-branded packaging, an example of which is shown below:

74.     Each JUULpods pack came in counterfeit JUUL-branded exterior packaging, an example of which is shown below:







16

75. Each JUULpods pack also came with counterfeit JUUL-branded interior packaging, an example of which is shown below:

 



76. JLI's evidence custodian determined that the purported JUUL Products sold by Defendants differ from authentic JUUL Products in at least the following ways:

    a.    The JUUL Device has either no engraved serial number or multiple JUUL Devices have the same engraved serial number;

    b.    The lot code on some of the suspect JUUL Device packaging does not match the serial number on the suspect JUUL Devices contained therein;

    c.    Some of the suspect JUUL Devices have an incorrect Universal Product Code ("UPC");

    d.    Some of the foil packaging for the JUULpods has no lot code;

    e.    The foil packaging for the suspect JUULpods has a shiny metallic appearance, whereas authentic JUULpods have a matte appearance; and

f.     The font and spacing on the packaging for the suspect JUUL Starter Kits, JUUL Device, and JUULpods differ from authentic JUUL products.

77.    JLI has not authorized Defendants to make, market, advertise, distribute, or sell any JUUL Products or any products bearing the JUUL Marks.

78.    JLI has not granted Defendants a license to use the JUUL Marks.

## FIRST CLAIM FOR RELIEF

### *Federal Trademark Infringement and Counterfeiting*

### (15 U.S.C. § 1114 [Lanham Act § 32] Against All Defendants)

1.     JLI hereby incorporates by reference each of the allegations in the preceding paragraphs of this Complaint as if fully set forth herein.

2.     The JUUL Marks are all valid marks entitled to protection under the Lanham Act and registered on the principal register in the United State Patent and Trademark Office.

3.     JLI is the exclusive owner and registrant of its individual marks.

4.     Without JLI's consent or authorization, Defendants are using, and will continue to use, in commerce, reproductions, counterfeits, copies or colorable imitations of the JUUL Marks in connection with the sale, offering for sale, distribution, or advertising of counterfeit and/or inauthentic JUUL Products.

5.     Without JLI's consent or authorization, Defendants are reproducing, counterfeiting, copying, or colorably imitating the JUUL Marks and applying them to labels and/or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of counterfeit and/or inauthentic JUUL Products.

6.     Defendants' counterfeiting and infringing activities have caused, are causing, or are likely to cause, confusion, mistake, and deception among the consuming public as to the origin, sponsorship, and quality of Defendants' counterfeit products.

7.     On information and belief, JLI alleges that Defendants' conduct was committed willfully, in bad faith, and with knowledge of JLI's exclusive rights to its marks, or with willful blindness to the same, and with the intent to cause confusion, mistake, and/or to deceive.

8.     As a direct and proximate result of Defendants' counterfeiting and infringing activities, JLI has suffered irreparable harm and damage to its valuable marks—and damage to its reputation and goodwill—to which there is no adequate remedy at law. This irreparable harm will continue unless Defendants' conduct is stopped.

9.     JLI is entitled to injunctive relief against Defendants pursuant to 15 U.S.C. § 1116(a), an order to promptly stop Defendants from offering and selling all counterfeit and infringing JUUL Products, as well as all monetary relief and other remedies available under the Lanham Act, including, but not limited to, treble damages and/or profits, statutory damages, reasonable attorneys' fees, costs, and prejudgment interest under 15 U.S.C. § 1117(a).

<u>**SECOND CLAIM FOR RELIEF**</u>

***Federal Unfair Competition***

**(False Designation of Origin and False Advertising, 15 U.S.C. § 1125(a),**

**[Lanham Act § 43(a)] Against All Defendants)**

10.     JLI hereby incorporates by reference each of the allegations in the preceding paragraphs of this Complaint as if fully set forth herein.

11.     Defendants, in connection with the sale of counterfeit JUUL Products, falsely describe the origin of and/or use misleading descriptions and representations of fact in commerce.

12.     Defendants' unauthorized conduct has caused, is likely to cause, and will continue to cause, confusion or mistake, or has deceived, is likely to deceive, and will continue to deceive, consumers as to Defendants' products, affiliation,

connection, sponsorship, approval, origin, or association with JLI, in violation of 15 U.S.C. § 1125(a)(1)(A).

13. Defendants misrepresent the nature, characteristics, qualities and/or geographic origin of their inauthentic products in commercial advertising or promotion, in violation of 15 U.S.C. § 1117(a).

14. Defendants' willful and intentional conduct is in violation of 15 U.S.C. § 1114(1), and JLI is entitled to treble damages and/or enhanced statutory damages under 15 U.S.C. §§ 1117(b) and (c).

15. Defendants' conduct will continue to cause substantial and irreparable injury to JLI and its businesses and goodwill. JLI has no adequate remedy at law and is thus entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a).

## THIRD CLAIM FOR RELIEF

### *California False Advertising*

### (Cal. Bus. & Prof. Code § 17500 Against All Defendants)

16. JLI hereby incorporates by reference each of the allegations in the preceding paragraphs of this Complaint as if fully set forth herein.

17. Defendants have knowingly and willfully made false or misleading statements in connection with the sale of their inauthentic products.

18. In advertising and promoting their products, Defendants knew or, with the exercise of reasonable care, should have known, that their statements were false and misleading.

19. As a direct, proximate, and foreseeable result of Defendants making these false and misleading statements, JLI has suffered, and will continue to suffer, irreparable harm to its individual brand, reputation, and goodwill. JLI has no adequate remedy at law to compensate for these substantial injuries and is thus entitled to injunctive relief.

20.     As a direct, proximate, and foreseeable result of Defendants making these false and misleading statements, JLI has suffered and will continue to suffer, money damages in an amount to be proven at trial.

### FOURTH CLAIM FOR RELIEF

### *California Unfair Competition*

### (Cal. Bus. & Prof. Code § 17200 Against All Defendants)

21.     JLI hereby incorporates by reference each of the allegations in the preceding paragraphs of this Complaint as if fully set forth herein.

22.     Defendants have knowingly and willfully participated in unlawful, unfair, and fraudulent business practices and unfair, deceptive, untrue, and misleading advertising prohibited by Cal. Bus. & Prof. Code § 17200, by advertising and selling inauthentic products using counterfeit JUUL Marks, in violation of the Lanham Act, 15 U.S.C. § 1114, as well as the other acts alleged herein.

23.     As a direct, proximate, and foreseeable result of Defendants' unfair and deceptive conduct, JLI has suffered, and will continue to suffer, irreparable harm to its individual brands, reputations, and goodwill. JLI has no adequate remedy at law to compensate for these substantial injuries and is thus entitled to injunctive relief.

24.     As a direct, proximate, and foreseeable result of Defendants' unfair and deceptive conduct, JLI has suffered, and will continue to suffer, lost business and revenue. JLI is entitled to restitution damages in an amount to be proven at trial.

### PRAYER FOR RELIEF

WHEREFORE, JLI respectfully prays for the following relief:

A.     Judgment in favor of JLI that Defendants infringed JLI's trademark rights under 15 U.S.C. § 1114;

B.     Judgment in favor of JLI that Defendants competed unfairly with JLI, in violation of JLI's rights under common law, 15 U.S.C. § 1125(a), and/or California Bus. & Prof. Code § 17200;

1      C.      Judgment in favor of JLI that Defendants made false and misleading

2   statements about and falsely and misleadingly advertised their counterfeit products,

3   in violation of JLI's rights under California Bus. & Prof. Code § 17500;

4      D.      A preliminary and permanent injunction enjoining Defendants and their

5   subsidiaries, parents, agents, officers, members, directors, servants, employees,

6   attorneys, successors, assigns, affiliates, and joint ventures, and any person(s) in

7   active concert or participation with them, and/or any person(s) acting for, with, by,

8   through, or under them, from:

9          a.   Manufacturing, producing, sourcing, importing, exporting, selling,

10             offering to sell, marketing, distributing, licensing, promoting, or

11             labeling any goods that display any words, symbols, or designs that

12             resemble or replicate the JUUL Marks, or are likely to cause

13             confusion, mistake or deception of, or in connection with, any of

14             JLI's products, whether genuine or counterfeit;

15         b.   Using any logo, trade name, trademark, symbol, term, name, word,

16             representation, or combination thereof, that causes, or is likely to

17             cause, confusion, mistake, or deception as to the origin, ownership,

18             affiliation, sponsorship, association, or connection, in any way, of

19             JLI or its products, or any false designation of origin, false or

20             misleading description or representation of fact, or any false or

21             misleading advertisement of the same;

22         c.   Destroying any documentation or record of the manufacture, sale,

23             offer of sale, communication regarding, advertisement, distribution,

24             shipment, receipt, or payment of, any product that Defendants

25             represented as one of JLI's products;

26         d.   Infringing the rights of JLI, in and to any use of the JUUL Marks or

27             otherwise damaging JLI's goodwill, name, and/or business

28             reputation;

  e. Promoting the sale of any goods or services by associating the same, genuine or otherwise, with JLI or the JUUL Marks;

  f. Competing unfairly in any manner with JLI; and

  g. Assisting, aiding, abetting, or working with any other person or business to engage or participate in any of the above listed activities as referenced in subparagraphs (a) through (g).

 E. An order that Defendants must disable, suspend, or otherwise cancel all URLs on Defendants' website that are still being used to sell JUUL Products.

 F. An order that Defendants must immediately produce to JLI documents, including but not limited to, data from Defendants' inventory system, showing the names, addresses and other contact information of all individuals, businesses, and entities from whom they purchased, and to whom they sold, offered to sell, or distributed, the infringing products at issue in this Complaint, including for each the products and respective quantities and amounts paid;

 G. Judgment that Defendants immediately transfer to JLI their entire inventory of infringing products that are in their possession or under their control, that bear the JUUL Marks or anything resembling the JUUL Marks;

 H. JLI to recover all damages and lost profits in an amount to be proven at trial;

 I. JLI to be awarded punitive damages from each Defendant;

 J. An accounting of each Defendant's profits attributable to their illegal and infringing acts and an award of: (1) Defendants' profits; and (2) all of JLI's damages pursuant to 15 U.S.C. § 1117;

 K. JLI to be awarded all of Defendants' ill-gotten profits and gains, and/or any other unjust benefits received by Defendants from Defendants' manufacture, sale, and/or distribution of counterfeit JUUL Products;

 L. Statutory damages;

 M. Treble damages and/or enhanced damages;

1       N.    An order to freeze Defendants' assets pending a final determination of

2  liability and damages;

3       O.    An order for an accounting of and imposition of a constructive trust on

4  all of Defendants' funds and assets connected to their infringing acts;

5       P.    Pre- and post-judgment interest;

6       Q.    All reasonable attorneys' fees, costs, and investigative expenses

7  associated with Defendants' infringing acts; and

8       R.    Any and all other relief the Court deems just, proper, fair, and

9  equitable.

10

11  DATED:  April 7, 2021                   Respectfully submitted,

12

13                             BARTKO ZANKEL BUNZEL & MILLER

14                             A Professional Law Corporation

15

16            By: _____

17                  STEPHEN C. STEINBERG

                           Attorneys for Plaintiff

18                           JUUL Labs, Inc.

19

20

21

22

23

24

25

26

27

28