Alejandro S. Angulo (State Bar No. 217823)
aangulo@rutan.com
Bradley A. Chapin (State Bar No. 232885)
bchapin@rutan.com
Kathryn D.Z. Domin (State Bar No. 274771)
kdomin@rutan.com
RUTAN & TUCKER, LLP
18575 Jamboree Road, 9th Floor
Irvine, CA 92612
Telephone:   714-641-5100
Facsimile:   714-546-9035

Alexander Chen (State Bar No 245798)
William R. Walz (State Bar No 136995)
Katja M. Grosch (State Bar No 266935)
Theodore S. Lee (State Bar No 281475)
INHOUSE CO. LAW FIRM
7700 Irvine Center Drive, Suite 800
Irvine, CA 92618
Telephone:   949-250-1555
Facsimile:   714-882-7770

Attorneys for Defendants and Counter-Claimants,
Andy Chou (aka Lizhi Zhou); Yiwu Cute Jewelry
Co., Ltd.; Yiwu Xite Jewelry Co., LTD.; CJ
Fulfillment Corp.; CJ Trade Corp.; and Yiwu
Promotional Trade Co., LTD (aka Yiwu Promotion
Trade Co.. LTD.).

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| JUUL LABS, INC., a Delaware corporation,<br><br>           Plaintiff,<br><br>     vs.<br><br>ANDY CHOU (aka LIZHI ZHOU), an individual; YIWU CUTE JEWELRY CO., LTD., a Chinese limited company; YIWU XITE JEWELRY CO., LTD., a Chinese limited company; CJ FULFILLMENT CORP., a California corporation; CJ TRADE CORP., an Arizona corporation; and YIWU PROMOTIONAL TRADE CO., LTD. (aka YIWU PROMOTION TRADE CO., LTD.), a Chinese limited company,<br><br>           Defendants. | Case No.: 2:21-cv-03056-DSF-PD<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES OPPOSING PLAINTIFF'S *EX PARTE* APPLICATION TO INCREASE ASSET FREEZE LIMIT PURSUANT TO THE COURT'S ORDER GRANTING PLAINTIFF'S APPLICATION FOR A PRELIMINARY INJUNCTION**<br><br>**Honorable Dale S. Fischer** |

-1-
DEFENDANTS' MPA OPPOSING PLAINTIFF'S *EX PARTE* APPLICATION
TO INCREASE ASSET FREEZE LIMIT PURSUANT TO THE COURT'S

ANDY CHOU (aka LIZHI ZHOU), an individual, YIWU CUTE JEWELRY CO., LTD., a Chinese limited company; CJ FULFILLMENT CORP., a California corporation; and CJ TRADE CORP., an Arizona corporation,

    Counter-Claimants,

  vs.

HU QIAN, an individual,

    Counter-Defendant.

## I. INTRODUCTION

Andy Chou (aka Lizhi Zhou); Yiwu Cute Jewelry Co., Ltd.; Yiwu Xite Jewelry Co., Ltd.; CJ Fulfillment Corp; CJ Trade Corp. and Yiwu Promotional Trade Co., Ltd. (aka Yiwu Promotion Trade Co., Ltd.) (collectively, "Defendants"), hereby oppose Plaintiff JUUL Labs, Inc. ("JLI") *ex parte* application to increase the asset freeze limit set by this Court's June 9, 2021, order ("Order") granting JLI's application for a preliminary injunction ("Application"). The Application should be denied for three straightforward reasons:

(1)   There is no temporal urgency that warrants ex parte relief;[1]

(2)   The Application presents no further evidence beyond what was submitted with the Preliminary Injunction that Defendants willfully counterfeited "Juul" products and therefore, an increase to the asset freeze limit (which is already at the statutory maximum unless a finding of willfulness is found) is unwarranted; and

(3)   JLI overstates Defendants' actions, which do not amount to "dissipating assets" and instead include only (a) unintentionally

---

[1] In fact, this Opposition makes clear that JLI's Application should have been brought as a noticed motion where they were forced to meet and confer pursuant to Local Rule 7-3. Many of the issues should have been discussed and potentially resolved. Instead, JLI's counsel rushed into Court after demanding Defendants' counsel meet and confer about this Application within 19 hours (the e-mail, sent after 5 p.m. on June 24, 2021 demanding a time to discuss within less than 24 hours). Declaration of Alejandro S. Angulo ("Angulo Decl."), ¶ 8, Ex. 14.

-2-

> omitting accounts with less than $700 in assets in Defendants' supplemental accounting ("Supplemental Accounting") and
>
> (b) continuing to conduct business from frozen accounts and increasing the amount of funds therein.

Indeed, JLI's Application is devoid of any legal basis to increase the asset freeze. Johnson v. Couturier, 572 F.3d 1067, 1085 (9th Cir. 2009) (reasoning asset freeze is warranted where defendant is dissipating assets).

The Application should be denied.

## II. TIMELINE OF RELEVANT EVENTS

On June 9, 2021, the Court issued its Order setting the asset freeze limit at $2.8 million. Dkt. No. 65. The Order stated, in pertinent part:

> Immediately on receipt of this Order, all assets and funds held by, for, or on account of any of the Restrained Parties, or in an account owned or controlled by any of the Restrained Parties or in an account as to which any of the Restrained Parties has signature authority, shall continue to be frozen and restrained, and a full accounting of the restrained assets not previously provided to JLI shall be provided to counsel for JLI within three business days of receipt of this Order.

Id. at p. 29.

On June 14, 2021, in compliance with the Order, Defendants provided a supplemental list of its assets ("Supplemental Accounting") to JLI. Declaration of Gabriella A. Wilkins ("Wilkins Decl."), Ex. B.

On June 18, 2021, Defendants notified JLI that it had frozen over $2.8 million in violation of the Court's Order. Angulo Decl., ¶ 3, Ex. 10. On June 21, 2021, JLI denied that over $2.8 million was frozen. Id., ¶ 4, Ex. 11. On June 22, 2021, Defendants provided JLI with a list of frozen accounts and balances thereof, which totaled approximately $4,055,484.70. Id., ¶ 6, Ex. 12. This list reflected approximately $1,454,092.21 in balance increases since Defendants provided its

Rutan & Tucker, LLP
attorneys at law

2686/036849-0001
16654518.2 a06/29/21

-3-

DEFENDANTS' MPA OPPOSING PLAINTIFF'S *EX PARTE* APPLICATION
TO INCREASE ASSET FREEZE LIMIT PURSUANT TO THE COURT'S

supplemental accounting on June 14, 2021.  Id.

On June 21, 2021, Defendants offered to put $2.8 million into an account so as to satisfy the asset freeze Order and dispense with the need for JLI to continue freezing accounts.  Id. at ¶ 5.  JLI rejected this proposal.  Id.

On June 24, 2021, after confirming it had in fact frozen over $2.8 million, JLI emailed Defendants accusing them of hiding accounts and misstating the amounts in previously disclosed accounts.  Id. at ¶ 8, Ex. 14.

After close of business on that same day, JLI's counsel emailed again, demanding that Defendants' counsel make themselves available to meet and confer the next day, Friday, June 25, 2021.  Id.  Frustrated when Defendants were unavailable within 24 hours of their demand, JLI filed their Application less than 24 hours after first reaching out to counsel for Defendants.  Doc. 72-1, Wilkins Decl., ¶¶ 18-20, Exs. G-I.

### III. JLI'S APPLICATION SHOULD BE DENIED

JLI's Application should be denied for two reasons.  First, JLI's Application fails to justify the basis for *ex parte* relief, which is limited to circumstances involving temporal urgency.  Ho v. Mlynarski Investors LLC, 2019 WL 12377810, at *1 (C.D. Cal. Feb. 11, 2019).  Second, even if *ex parte* relief was warranted, the requested increase to the Order's asset freeze limit is not justified.

#### A. THERE IS NO TEMPORAL URGENCY WARRANTING *EX PARTE* RELIEF

"The law on ex parte applications is well-settled in th[e] [Ninth Circuit]. Securities & Exch. Com'n v. Private Equity Management Grp., LLC, 2009 WL 1463439, at *1 (C.D. Cal. May 18, 2009).  "In order to justify ex parte relief, the evidence must establish two things.  First, that the moving party's cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures" and second, "the moving party must also establish that she is without fault in creating the crisis that requires ex parte relief, or that the crisis

Rutan & Tucker, LLP
attorneys at law

2686/036849-0001
16654518.2 a06/29/21

-4-
DEFENDANTS' MPA OPPOSING PLAINTIFF'S *EX PARTE* APPLICATION
TO INCREASE ASSET FREEZE LIMIT PURSUANT TO THE COURT'S

1  occurred as a result of excusable neglect." Id. (citing Mission Power Eng'g Co. v.
2  Continental Cas. Co., 883 F. Supp. 488, 492 (C.D. Cal. 1995)). In short, "[t]he
3  opportunities for legitimate ex parte applications are extremely limited" and are
4  "justified only where 'there is a temporal urgency such that immediate and
5  irreparable harm will occur if there is any delay in obtaining relief.'" Ho v.
6  Mlynarski Investors LLC, 2019 WL 12377810, at *1 (C.D. Cal. Feb. 11, 2019)
7  (quoting Lum v. Mercedes-Benz USA, LLC, 2012 WL 13012454, at *1 (C.D. Cal.
8  Jan. 5, 2012) and Mission Power, 883 F. Supp. at 490). Indeed, the court in Mission
9  Power, characterized ex parte applications as follows: "Lawyers must understand
10 that filing an ex parte motion . . . is the forensic equivalent of standing in a crowded
11 theater and shouting, 'Fire!' *There had better be a fire.*" Mission Power, 883 F.
12 Supp. at 492 (emphasis added).

13     No such fire exists here and JLI has not justified its request for *ex parte* relief
14 as opposed to bringing a noticed motion. At the heart of JLI's Application are two
15 arguments: (1) Defendants' failure to disclose additional bank accounts; and (2) the
16 balances of the disclosed accounts are now higher than previously disclosed. Dkt
17 No. 72, p. 4. Neither of these arguments warrants emergency relief.

18     First, and as explained fully below in Section III.B.3, the accounts
19 inadvertently missing from previous disclosure collectively hold less than a
20 thousand dollars. Lee Decl., ¶ 6. Of those accounts, many of them are not
21 accessible by Defendants. Id. For those Defendants can access, Defendants have
22 not withdrawn or transferred any funds since before they were notified of this
23 lawsuit. See, id. While Defendants greatly appreciate the weight of violating the
24 Court's Order, Defendants' oversight was not intentional, id., ¶¶ 6-7, and the sum of
25 the assets included in the missing (and largely inaccessible) accounts is *de minimis*
26 compared to millions of dollars disclosed. Indeed, Defendants offered to put $2.8
27 million in an account to satisfy the asset freeze Order.

28     Second, and as for the balance increase for the previously disclosed accounts,

Rutan & Tucker, LLP
attorneys at law

2686/036849-0001
16654518.2 a06/29/21

-5-
DEFENDANTS' MPA OPPOSING PLAINTIFF'S *EX PARTE* APPLICATION
TO INCREASE ASSET FREEZE LIMIT PURSUANT TO THE COURT'S

1. this alone proves *ex parte* relief is **unwarranted** and that there is no threat of
2. "immediate and irreparable harm." Ho, 2019 WL 12377810, at *1. Indeed, nothing
3. in the Order precludes Defendants from ***adding funds to disclosed accounts***, which
4. is the inevitable result of Defendants continuing to operate their business. While
5. Defendants do not believe that a judgment exceeding the $2.8 million asset freeze
6. will be entered against them, Defendants still willingly increased the funds in their
7. normal business (albeit frozen) accounts knowing that local funds would be subject
8. to a judgment entered against them.

Furthermore, JLI has also spilled much ink arguing that because it would never be able to recover assets located in China, the Court should immediately and indefinitely freeze every cent Defendants own in the United States. This argument is flawed. In fact, on or about June 28, 2021, JLI successfully froze a bank account located in China (Industrial Commercial Bank of China, Acct No. -0360). Lee Decl., ¶ 18, Ex. 9.

Finally, the Application also entire omits Defendants' offer to JLI to transfer $2.8 million to a bank account that could be frozen and untouched. Angulo Decl., ¶ 5. This would have obviated any perceived "urgency" for court intervention. Instead, JLI rejected the offer, divulging that they would immediately seek to increase the asset freeze amount the moment they found more funds. Id. Of course, a party must be "without fault in creating the crisis that requires ex parte relief." Ho, 2019 WL 12377810, at *1.

In short, JLI's Application does not even attempt to justify its ex parte relief, and on this basis alone, the Application should be denied.

### B. <u>AN INCREASE TO THE ASSET FREEZE ORDER IS NOT WARRANTED</u>

Even if *ex parte* relief was warranted (it is not), there are no circumstances warranting an increase to the Order's asset freeze limit. Indeed, the Order's asset freeze limit is already at the maximum judgment JLI could receive unless a

Rutan & Tucker, LLP
attorneys at law

-6-

2686/036849-0001
16654518.2 a06/29/21

DEFENDANTS' MPA OPPOSING PLAINTIFF'S *EX PARTE* APPLICATION
TO INCREASE ASSET FREEZE LIMIT PURSUANT TO THE COURT'S

willfulness to counterfeit is found. See 15 U.S.C. § 1117. JLI's Application, however, does not offer any new or additional proof that Defendants' acted willfully (if at all wrongfully).[2]

Furthermore, and as this Court previously ruled, "[a] party seeking an asset freeze must show a likelihood of dissipation of the claimed assets, or other inability to recover monetary damages, if relief is not granted." Johnson v. Couturier, 572 F.3d 1067, 1085 (9th Cir. 2009). JLI argues an increase is warranted because (1) the balances in disclosed bank accounts are now higher than previously disclosed; and (2) Defendants failed to disclose ten additional bank accounts. These arguments are meritless and JLI ignores that Defendants' recent actions have only shown a willingness to comply with any judgment found against them and not any desire to dissipate assets.

### 1. **JLI Has Offered No Further Proof of a Willful Intent to Counterfeit.**

As an initial matter, the Court's Order of a $2.8 million asset freeze represents the maximum JLI can receive absent a finding Defendants counterfeited products willfully. Dkt. No. 65, p. 26. JLI argues without any legal authority or analysis that the increased account balances and defunct, missing accounts equate to further evidence of willfulness justifying a higher asset freeze limit. Ex Parte, p. 10. JLI is wrong. Setting aside whether Defendants' actions show some sinister desire to thwart the Court and hide assets from JLI, whether Defendants complied with the Order or not is a matter of possible contempt (although Defendants naturally dispute this), *not evidence that it willfully counterfeited "Juul" products*. As such, there is absolutely no evidence warranting an increase to the asset freeze limit for the purpose of protecting a judgment based upon a finding of willfulness. This is particularly true given that Defendants are facing Juul's allegations head on, and

---

[2] Contrary to JLI's misguided argument, the discovery of additional accounts has absolutely no bearing on whether Defendants' alleged trademark infringement was willful.

Rutan & Tucker, LLP
attorneys at law

2686/036849-0001
16654518.2 a06/29/21

-7-
DEFENDANTS' MPA OPPOSING PLAINTIFF'S *EX PARTE* APPLICATION
TO INCREASE ASSET FREEZE LIMIT PURSUANT TO THE COURT'S

offered to put $2.8 million in an account to satisfy the freeze Order.

### 2. Increased Balances in Accounts Are Evidence of Continuing Business, Not Grounds to Increase the Asset Freeze

JLI next argues an increase to the asset freeze limit is warranted because amounts disclosed in the accounts included in the Supplemental Accounting are higher now than when the accounts were initially disclosed. Ex Parte, p. 8; Wilkins Decl., ¶ 14, Ex. D. JLI is wrong.

As is evident from the Declaration of Lynn Lee, *the account balances are higher now than they were when initially disclosed because Defendants continued to process orders and do business through the frozen accounts*, knowing that $2.8 million in those accounts would remain frozen. Lee Decl., ¶ 11. There is no deception here – Defendants simply continued conducting business as usual and the $1.454 million increase JLI has rushed into Court yelling "fire" about is simply the result of processing orders. Id. Indeed, Exhibit 7 shows approximately 4,500 transactions between June 14 and 18, 2021, consisting of deposits from sales made through Defendants' website.

Again, for an asset freeze, JLI is required to show that Defendants are dissipating assets, not accumulating them. Johnson, 572 F.3d at 1085. Clearly, Defendants are not trying to ferret off money deposited into the very accounts of which JLI is aware and are subject to the Court's Order. While JLI glosses over this obvious conclusion in its Application, Defendants specifically told JLI about the increased assets in the frozen accounts. Angulo Decl., ¶ 7, Ex. 13. Thus, but for Defendants disclosing this information, JLI would not even know about the increased amounts. Id.

Finally, and as explained above in Section III.A, Defendants' willingness to continue to conduct business and deposit further money into the frozen accounts in the United States should be seen for exactly what it is: a desire to continue to defend themselves in this lawsuit and continue to operate within the United States long after

Rutan & Tucker, LLP
attorneys at law

2686/036849-0001
16654518.2 a06/29/21

-8-
DEFENDANTS' MPA OPPOSING PLAINTIFF'S *EX PARTE* APPLICATION
TO INCREASE ASSET FREEZE LIMIT PURSUANT TO THE COURT'S

this lawsuit is over,[3] not a desire to hide away ill-gotten gains.

### 3. The Inactive, Empty and *De Minimis* Accounts Are Not Evidence of Dissipating Assets

JLI next argues the asset freeze limit should be increased because Defendants intentionally withheld accounts from disclosure. Ex Parte, p. 9; Wilkins Decl., ¶ 14, Ex. D. While this argument may facially appear to have merit, the reality is far less sinister than JLI would have this Court believe. The fact of the matter is: Defendants were ordered to disclose their *assets* (not accounts) and did not hide any meaningful *assets* from JLI; nor did Defendants intentionally hide these *de minimis* accounts.

In its Application, JLI lists the "missing" accounts: 9 Stripe accounts, 1 Payoneer account, 4 Citibank accounts, 1 China Merchants Bank account, 1 Community Federal Savings Bank, and 2 undisclosed credit card accounts. None of these accounts has or have had (since the beginning of this lawsuit) any meaningful assets Defendants sought to hide:

**Stripe Accounts**

- Seven of the accounts have a $0 balance, one of the accounts has a negative balance (-$34.59), and the final account (the only one with any funds) has a mere total of $636.01;
- Two of the accounts with a $0 balance have no payment history;
- Four of the accounts with a $0 balance are inaccessible, as Stripe's login function does not even recognize the accounts and/or Defendants do not have access to the password reset email;

---

[3] JLI's failure to release the excess funds frozen in the accounts has greatly affected Defendants' business. Despite the fact that Defendants have continued to process orders in the frozen accounts, Defendants have now been unable to access the excess funds to pay suppliers, couriers, or employment salaries. Indeed, Defendants currently owe $1.7 million to 4PX, one of the domestic couriers they use, and about $50,000 to DHL. If they do not pay DHL and 4PX soon, the couriers will stop taking Defendants' orders. Lee Decl., ¶ 16, Ex. 8. While JLI has the right to prosecute its claims, it does not have the right to violate the Court's Order, freeze in excess of the permitted amount, and destroy Defendants' business prior to trial.

-9-

Rutan & Tucker, LLP
attorneys at law

2686/036849-0001
16654518.2 a06/29/21

DEFENDANTS' MPA OPPOSING PLAINTIFF'S *EX PARTE* APPLICATION
TO INCREASE ASSET FREEZE LIMIT PURSUANT TO THE COURT'S

- The only Stripe account with any money ($636.01) and the Stripe account with a negative balance (-$34.59) are also inaccessible, as Stripe's login provides Defendants with an error message that the email associated with the account cannot be found.
- None of the accounts have been used by Defendants since before they received notice of this lawsuit.

Lee Decl., ¶ 6.

**Payoneer Account**

- The account has a $0 USD balance and was not used for Defendants' business, but instead was a test account to verify whether transactions were being properly processed.
- This account has not been used by Defendants since before they received notice of this lawsuit.

Lee Decl., ¶ 6.

**Citibank Accounts**

These accounts are actually owned by WorldFirst and LianLian Global for the benefit of Defendants. Lee Decl., ¶ 6. Both companies are international payments businesses that help companies like CJ move money around the world by completing the foreign exchange transactions (i.e., exchanging 15 Euro to $17.85 USD). WorldFirst and LianLian Global use these Citibank accounts to collect U.S. Dollars for transactions completed in the United States before they convert those dollars into whatever currency desired. These accounts do not retain a balance, but are used instead as an intermediary account before WorldFirst and LianLian Global can complete the exchange. Defendants' accounts with WorldFirst and LianLian Global were disclosed in the Supplemental Accounting.

**China Merchants Bank Account**

This account has a balance of $0. This account has not been used by Defendants since before they received notice of this lawsuit. Lee Decl., ¶ 6.

Rutan & Tucker, LLP
attorneys at law

2686/036849-0001
16654518.2 a06/29/21

-10-
DEFENDANTS' MPA OPPOSING PLAINTIFF'S *EX PARTE* APPLICATION
TO INCREASE ASSET FREEZE LIMIT PURSUANT TO THE COURT'S

**Community Federal Savings Bank Account**

This account is owned by Payoneer for the benefit of Defendants. Like WorldFirst and LianLian Global, Payoneer uses this account as an intermediary account before Payoneer can complete the desired exchange. Lee Decl., ¶ 6.

**Undisclosed Credit Card Accounts**

These credit card accounts obviously have no "funds" in which to freeze since they merely have lines of credit.

This is not evidence of some grand scheme to conceal and dissipate assets. Johnson, 572 F.3d at 1085. In total, these accounts hold less than a thousand dollars, and (other than the Citibank and Community Federal Savings Bank accounts owned by third parties) Defendants have not withdrawn or transferred any funds from these accounts since before they were notified of the lawsuit. Lee Decl., ¶ 6. In short, the funds Defendants have inadvertently "hidden" from JLI is *de minimis* and pales in comparison to the over $1.3 million Defendants have ***added*** to the frozen accounts since the Order was issued. These accounts simply are not sufficient justification for increasing the asset freeze limit by any amount.

Additionally, Defendants did not intentionally withhold these accounts from JLI. After receiving the Order, Defendants had their accountant compile a list of all the necessary accounts. Lee Decl., ¶¶ 7-8. Because the "missing" accounts are defunct, inaccessible, and/or otherwise not used by Defendants, the accountant inadvertently failed to include them in the list. Id. There was simply no intent to deceive.

Finally, Defendants are very mindful of the importance of following the Courts' Order and seek only to honestly defend themselves (as seen by their activity in this case so far). Defendants' decision to continue their business and conduct U.S.-based transactions in the disclosed accounts (and increase the totals in those accounts by $1.3 million) compared to the nominal amount within the defunct, unused accounts proves Defendants are not trying to hide assets.

Rutan & Tucker, LLP
attorneys at law

2686/036849-0001
16654518.2 a06/29/21

-11-
DEFENDANTS' MPA OPPOSING PLAINTIFF'S *EX PARTE* APPLICATION
TO INCREASE ASSET FREEZE LIMIT PURSUANT TO THE COURT'S

## IV. CONCLUSION

For all of the foregoing reasons, the Court should deny the Application.

Dated: June 29, 2021              RUTAN & TUCKER, LLP

By: */s/ Alejandro S. Angulo*
Alejandro S. Angulo
Attorneys for Defendants and Counter-Claimants, Andy Chou (aka Lizhi Zhou); Yiwu Cute Jewelry Co., Ltd.; Yiwu Xite Jewelry Co., LTD.; CJ Fulfillment Corp.; CJ Trade Corp.; and Yiwu Promotional Trade Co., LTD (aka Yiwu Promotion Trade Co., LTD.)

Rutan & Tucker, LLP
attorneys at law

2686/036849-0001
16654518.2 a06/29/21

-12-
DEFENDANTS' MPA OPPOSING PLAINTIFF'S *EX PARTE* APPLICATION
TO INCREASE ASSET FREEZE LIMIT PURSUANT TO THE COURT'S