**From:** Larry Sandell <lsandell@meimark.com>
**Subject: Case 2:21-cv-03056-DSF-PD JUUL Labs, Inc. v. Andy Chou et al - Joint Request for Brief Pre-Discovery Motion Conference**
**Date:** November 22, 2021 at 8:24:49 PM EST
**To:** Isabel_Martinez@cacd.uscourts.gov
**Cc:** "Gabriella A. Wilkins" <gwilkins@BZBM.com>, JUULvChou <JUULvChou@BZBM.com>, Lei Mei <mei@meimark.com>, "P. Andrew Riley" <ariley@meimark.com>, Guang-Yu Zhu <gzhu@meimark.com>, "Stephen C. Steinberg" <ssteinberg@BZBM.com>

Dear Ms. Martinez,

Pursuant to Judge Donahue's procedures, Defendants ("CJ") and Plaintiff JUUL Labs, Inc. ("JLI") request a Brief Pre-Discovery Motion Conference such that their discovery disputes might be resolved without formal briefing. This email follows a lengthy meet-and-confer call on Friday, November 19, 2021 where the parties resolved some discovery disputes, determined that some disputes were not yet ripe for the Court's consideration, and reached an impasse with respect to the following 13 issues. The discovery cut-off date for this case is May 6, 2022.

The Parties propose the following mutually agreed upon times for the Zoom conference:
- December 1, 2021 at 9 AM PT (12 PM ET)
- December 1, 2021 at 10 AM PT (1 PM ET)
- December 1, 2021 at 11 AM PT (2 PM ET)
- December 3, 2021 at 9 AM PT (12 PM ET)
- December 3, 2021 at 10 AM PT (1 PM ET)
- December 3, 2021 at 11 AM PT (2 PM ET)

Neutral statements for each issue in dispute and the Parties' brief descriptions of their respective positions are below, and divided into five categories of disputes. The first two categories are brought by CJ, and the last three are brought by JLI.

## CATEGORY 1: CJ'S POTENTIAL MOTION TO COMPEL REGARDING JLI'S INITIAL DISCOVERY RESPONSES:

*ISSUE 1.     JLI's November 10, 2021, Response to CJ's September 27, 2021, Requests for Production repeatedly states: "Plaintiff will produce non-privileged documents responsive to this request to the extent any exist and are located during a reasonable search, and intends to do so within 60 days." Additionally, for certain categories of documents, JLI has states: "Plaintiff objects to this request on the ground that it seeks confidential, proprietary, and/or trade secret information belonging to Plaintiff, which Plaintiff will not produce until an appropriate Protective Order is in place." The parties are still negotiating a protective order. JLI has not produced any documents.*

CJ'S POSITION:

JLI's stated intention to begin document production 105 days after they requests were served (i.*e.*, on Monday, January 10, 2022, assuming a lack of document service on Sunday, January 9) is not a "reasonable time" as contemplated by FRCP 34(b)(2)(B), especially given the limited discovery schedule (*i.e.,* only 116 days remaining before discovery cutoff after the 105 days). In view of CJ's

written assurances that, "until a protective order is entered by the Court, … only attorneys and employees of Mei & Mark LLP may view or access any material designated by JLI as CONFIDENTIAL or HIGHLY CONFIDENTIAL," JLI's additional, potentially-indefinite delay pending "an appropriate Protective Order" is not credible. *See Happy Place, Inc. v. Hofesh, LLC*, No. 218CV6915ODWSKX, 2019 WL 4221400, at *1 (C.D. Cal. May 17, 2019) ("Boilerplate and general objections, with an open-ended promise to produce responsive documents if and when they may be found, are no longer allowed."). For context, two days before JLI's improper RFP responses, CJ timely produced substantial CONFIDENTIAL and HIGHLY CONFIDENTIAL documents to JLI based on a similar representation from JLI's counsel.

JLI'S POSITION:

Defendants misstate JLI's position, which is that it intends to <u>complete</u> its production within 60 days of its responses. This is reasonable where JLI is a large company with relevant personnel and documents in multiple offices across the country, Defendants' document requests seek broad categories of documents, such that the universe of documents collected for processing and review for potential production is over 10,000 documents so far, and the timeframe includes two upcoming holidays. JLI has been diligently working to search for and gather all documents potentially responsive to Defendants' requests that are in its possession, custody, and control, but still needs to review such documents for responsiveness and privilege, and process such documents for production in a usable format, with a load file and metadata for ESI, none of which was provided by Defendants with their rushed and incomplete production earlier this month.

*ISSUE 2.        CJ's ROG 5 states, "Identify and describe with specificity all settlements, licenses, litigations, negotiations, and accusations relating to your trademarks," including the most knowledgeable person on the topic. CJ's RFP 5 seeks "All documents relating to settlements, licenses, litigations, negotiations, and accusations relating to your trademarks."  JLI lodged objections and reserved the right to supplement with respect to both ROG 5 and RFP 5, but did not provide a substantive response or indicate any intention to produce documents. The parties dispute whether the topic(s) underlying ROG 5 and RFP 5 is relevant.*

CJ'S POSITION:

During summary judgment briefing, JLI relayed the legal proposition that "the value of the trademark" is an appropriate consideration for determining statutory Trademark damages, before asserting (based solely on a self-serving affidavit) that "the JUUL Marks are an invaluable asset to JLI." Dkt. 77-1 at 28:12-26; Dkt. 77-34, ¶20. Accordingly, CJ's discovery requests directed to JLI's enforcement of "the JUUL Marks"; negotiations and settlement thereto; and licensing thereof are reasonably calculated to lead to the discovery of admissible evidence on, *inter alia*, the value of JLI's trademarks—including how disproportionate the $28 MM JLI seeks is to the actual (negligible) damage incurred. In assessing statutory damages, Federal Courts in California consider a plaintiff's licensing practices and the amount(s) it has previously settled similar infringement allegations for. *E.g., Sanrio, Inc. v. Torres*, No. CV1403736MMMJCX, 2015 WL 12661916, at *8-*9 (C.D. Cal. Jan. 5, 2015) (rejecting plaintiff's requested statutory damages award in view of the "scant evidence before it supporting a conclusion that $50,000 is an appropriate amount of statutory damages to award in this case"); *Sanrio Co. v. J.I.K. Accessories*, No. C-09-0440 EMC, 2012 WL 1366611, at *7, *4, n.2 (N.D. Cal. Apr. 19, 2012) (granting

plaintiff's requested statutory damages award because the "request is in line with other settlements in this case and other cases….").

JLI'S POSITION:

The Court has already found Defendants liable for trademark infringement involving the use of counterfeit marks, JLI has elected to seek statutory damages pursuant to 15 U.S.C. § 1117(c), and the only remaining issue for trial is the appropriate amount of statutory damages to be awarded, including whether Defendants' conduct was willful. *See* ECF No. 103 at 16-21. Besides being overbroad, unduly burdensome, and disproportionate to the needs of this case in seeking every document related to every prior instance of infringement of JLI's trademarks, Defendants' interrogatory and document request seek information and documents that are not relevant to the remaining issue in the case, since statutory damages are awarded "per counterfeit mark per type of goods or services" (15 U.S.C. §§ 1117 (c)), and analysis for enhanced statutory damages looks at the conduct and "state of mind" <u>*of the Defendant*</u> and is rooted in the principles of deterrence. *See N. Face Apparel Corp. v. Niman*, No. CV053628DSFPLAX, 2007 WL 9700729, at *7 (C.D. Cal. Jan. 29, 2007) (holding "principles of deterrence can lead to a maximum damages award"). The case law cited by Defendants does not support their position, and past settlements in *separate* cases with *different* defendants involving different facts are not relevant to the Court's determination of statutory damages in this case.

**ISSUE 3.** *CJ's ROG 6 states, "Identify and describe in detail your sale of any Juul-branded products in China, including but not limited to a description of and identification of Documents relevant to (a) the dates of such sales, (b) revenues and profits, (c) advertisements relating to those sales, and (d) reason for discontinuing those sales," including the most knowledgeable person on the topic. CJ's RFP 6 sought document production on the same topic. JLI lodged objections and reserved the right to supplement with respect to both ROG 6 and RFP 6, but did not provide a substantive response or indicate any intention to produce documents. The parties dispute whether the topic(s) underlying ROG 6 and RFP 6 is relevant.*

CJ'S POSITION:

As made explicit in the summary judgment briefing, the Chinese Defendants contend that their admitted strict-liability infringement could not have been willful because, *inter alia,* they lacked awareness of the Juul brands before being served with JLI's lawsuit and, consequently, their internal IP Enforcement Unit failed to identify the third-party sales listing as counterfeit. In reply, JLI contended that "JLI has sold its products and has brand recognition worldwide, including in China." Dkt. 94-11 at 16, ¶ 108. The extent of Juul sales in China, if there are any, is probative of brand recognition in China, and, in turn, the veracity of JLI's contention.

JLI'S POSITION:

This case concerns Defendants' counterfeiting and infringement of JLI's registered trademarks in the U.S., not China, and the extent of JLI's sales of products in China is not relevant. Defendants have been unable to identify any case to support their argument that a plaintiff's extent of foreign sales is a defense to trademark infringement in the U.S.

***ISSUE 4.     CJ's ROG 9 states, "Identify and describe all Communications, Documents, accusations, litigations, and news articles within your possession, custody, knowledge, or control relating to negative views by the public of Juul's goodwill and reputation, including without limitation, information relating to (a) settlements relating to youth vaping, whether or not the settlement includes an admission of wrongdoing, (b) lawsuits relating to youth vaping, (c) Documents or Communications relating to youth vaping, including those related to Juul's "Youth Prevention and Education" division, (d) advertising, press releases, or public outreach related to any allegations of youth vaping," including the most knowledgeable person on the topic. CJ's RFP 9 seeks "All documents and things relating to negative views by the public of Juul's goodwill and reputation, including without limitation, information relating to (a) settlements relating to youth vaping, whether or not the settlement includes an admission of wrongdoing, (b) lawsuits relating to youth vaping, (c) Documents or Communications relating to youth vaping, including those related to Juul's "Youth Prevention and Education" division, (d) advertising, press releases, or public outreach related to any allegations of youth vaping. including the most knowledgeable person on the topic. CJ's RFP 9 seeks "All documents and things relating to negative views by the public of Juul's goodwill and reputation, including without limitation, information relating to (a) settlements relating to youth vaping, whether or not the settlement includes an admission of wrongdoing, (b) lawsuits relating to youth vaping, (c) Documents or Communications relating to youth vaping, including those related to Juul's "Youth Prevention and Education" division, (d) advertising, press releases, or public outreach related to any allegations of youth vaping. JLI lodged objections and reserved the right to supplement with respect to both ROG 9 and RFP 9, but did not provide a substantive response or indicate any intention to produce documents. The parties dispute whether the topic(s) underlying ROG 9 and RFP 9 is relevant.***

CJ'S POSITION:

This topic is relevant to disputed questions regarding alleged damage to the goodwill or reputation of Juul brands and product—which JLI has unambiguously brought into issue vis-à-vis the Court's adjudication of amount of statutory damages. *E.g.,* Dkt. 77-34 at 5, ¶20 ("Due to JLI's longtime use of and investment in the JUUL Marks and the quality of JLI's products, the JUUL brand has built up a tremendous amount of consumer goodwill. The JUUL Marks symbolize the business goodwill of JLI and are invaluable assets to JLI."); Dkt. 94 at 6:25-27 ("it would be impossible to quantify the potential harm to JLI's goodwill and brand reputation if one of the consumable counterfeit products that Defendant sold ultimately harmed a consumer."). *See also Thien The, Inc. v. Tu Thein Telecom, Inc.*, 668 Fed. Appx. 299, 300 (9th Cir. 2016) ("In awarding damages, the court may consider any loss of reputation and goodwill. . . ."). JLI is also required to disclose whether responsive exist. *Kellgren v. Petco Animal Supplies, Inc.*, No. 13-CV-644 L (KSC), 2016 WL 4097521, at *3 (S.D. Cal. May 26, 2016) (quoting the advisory committee's notes for the proposition that that "'Rule 34(b)(2)(C) direct[s] that an objection must state whether any responsive materials are being withheld on the basis of that objection.'")

JLI'S POSITION:

Defendants' requests are nothing more than a fishing expedition for information and documents that are being sought for an improper purpose, as documents regarding negative views by the public of JLI's

goodwill and reputation are not relevant to the remaining issue of statutory damages and whether Defendants' conduct was willful. *See Nike, Inc. v. Top Brand Co.*, No. 00-CIV-8179 KMW(RLE), 2006 WL 2946472, at *2 (S.D.N.Y. Feb. 27, 2006), *report and recommendation adopted sub nom. Nike, Inc. v. Top Brand Co.,* No. 00-CV- 8179(KMW)(RLE), 2006 WL 2884437 (S.D.N.Y. Oct. 6, 2006) (in determining an award for ***statutory damages***, courts consider "the defendants' likely profits from the infringement, the possibility of deterrence, and the need for redress of [defendants'] wrongful conduct"). Defendants' cited case law does not support their position; a determination of the maximum statutory damages award and willfulness looks at the conduct and "state of mind" of the defendant in its infringement, not at the plaintiff's goodwill and reputation. *See N. Face Apparel Corp.*, *supra* 2007 WL 9700729, at *7.


**ISSUE 5.** *CJ's ROG 3 states, "<u>Identify and describe with specificity the date and circumstances of how you first became aware of any sale or offer to sell a product that you contend infringes one of your trademarks</u>, whether by Defendants, Cross-Defendants, related parties thereto, or any other third party; and the steps you took after you became aware of the sale or offer, and any outcome that resulted from those steps. Your response should include the Person or Persons with the most knowledge responsive to this Interrogatory.."*
  *With respect to ROG 3, JLI made objections and substantively responded "<u>that it became aware of Defendants' advertising and offering for sale of purported JUUL Products, as 'JUUL Starter Kits,' online, in or around July 2019</u>. Defendants' JUUL Starter Kits include the following purported products: (1) JUUL Device; (2) USB Charging Docks; and (3) four JUULpods in Cool Mint, Virginia Tobacco, Crème Brulee, and Mango flavors. The "Cool Mint" and "Crème Brulee" JUULpods were renamed in the U.S. in August 2018 to "Mint" and "Crème," respectively, Plaintiff had not sold four-flavor JUUL Starter Kits since November 2018, and Plaintiff had not sold JUULpods in Crème, Mango, or Mint in the United States, since the fall of 2019, raising a red flag that these products were likely counterfeit.*
   *Plaintiff arranged for its consultant, Matthew Hewlett, to purchase samples of each different color of JUUL Starter Kit advertised and offered by Defendants, as well as JUUL USB Charging Docks offered by Defendants. Mr. Hewlett placed these orders on various dates between October 2019 and April 2020. Mr. Hewlett received the first two shipments of suspect JUUL Products from Defendants in November 2019 and April 2020, and sent the products to Plaintiff for analysis. The third shipment of suspect JUUL Products from Defendants was shipped to Defendants' warehouse in New Jersey in July 2020. Plaintiff arranged for another consultant, James Ricaurte, along with personnel from the U.S. Department of Homeland Security, to pick up the suspect JUUL Products in August 2020. Mr.Ricaurte then sent high resolution photographs to Plaintiff for analysis.*
   *Plaintiff's evidence custodian, Jonathan Powell, assessed each product's authenticity, and determined that all of the purported JUUL Products received from Defendants were counterfeit." The Parties dispute whether this response is sufficient. Defendants contend that only the underlined portions above are relevant to the dispute.*

CJ'S POSITION:

JLI's response is silent with respect to the circumstances of <u>how</u> JL "became aware of Defendants' advertising and offering for sale of purported JUUL Products..." CJ requests a supplemental response specifically explaining how such awareness was gained and what individuals were involved.

JLI'S POSITION:

JLI believes its response is sufficient in that it describes in detail the date and circumstances of how it first became aware of Defendants advertising and offering for sale counterfeit JUUL Products on their website, the steps JLI took after becoming aware, and the key people with knowledge of such facts. Moreover, since the Court has already found Defendants liable for counterfeiting and trademark infringement, JLI does not believe this question is relevant, or that any further detail is necessary.

**CATEGORY 2: CJ'S POTENTIAL MOTION FOR PROTECTIVE ORDER REGARDING THE LOCATION OF JLI-NOTICED DEPOSITIONS:**

*ISSUE 6.  On October 11, 2021, JLI noticed the personal depositions of CJ employees Gen Yu Wi, "Gringer," Lynn Lee, and Wang Huiyin for late November 2021 in Los Angeles, California. The Parties dispute whether this location is appropriate.*

CJ'S POSITION:

These deposition notices—which were served absent consultation with CJ's counsel or leave of the Court—are *prima facie* improper under FRCP 45(c), because all of these witnesses are Chinese nationals residing and working in China—and not "within 100 miles of" Los Angeles. Because conducting depositions in mainland China is not permitted under Chinese law and because travel to any other location would unnecessarily subject the deponents to an extremely burdensome 21-day quarantine upon return to mainland China, CJ has offered to produce the witnesses in Macau (and would permit JLI's counsel to conduct depositions either in person or virtually). JLI—citing an alleged "legal gray area" regarding Macau-based depositions and in apparent recognition of the travel burden to CJ's witnesses—offered to conduct these personal depositions in Singapore, but JLI's counsel has been unable or unwilling to provide any authority in support of its proposition that Macau-based (as opposed to mainland China-based) depositions are improper, and Veritext (a leading litigation services company that both Parties' counsel employ for depositions) has continued to conduct Macau-based depositions in 2021.

JLI'S POSITION:

Pursuant to Article 277 of the Civil Procedure Law of the People's Republic of China, the taking of depositions for foreign litigation, *including virtual depositions*, is illegal in China (*see Inventus Power v. Shenzhen Ace Battery*, No. 20 CV 3375, 2021 WL 4477940, at *7 (N.D. Ill. Sept. 30, 2021) (holding that participating in unauthorized depositions in China "could result in the arrest, detention or deportation of the American attorneys and other participants."); *see., e.g., Junjiang Ji v. Jling Inc.*, No. 15-CV-4194 (SIL), 2019 WL 1441130, at *11 (E.D.N.Y. Mar. 31, 2019) (finding that conducting the plaintiff's trial testimony remotely while he was located in China violated Article 277)), and Macau is part of China. Notwithstanding that all of the deponents are agents and officers of the corporate Defendant that has a principal place of business in the Central District of California, and thus Los Angeles is a proper location, JLI has offered to use Singapore as a neutral location for these depositions as a compromise. Beyond being legal, depositions in the U.S. or Singapore are appropriate because JLI plans to take these depositions in person, and Americans—vaccinated or not—*cannot travel* to Macau,

or any other part of China, while vaccinated Chinese and U.S. citizens can now travel to the U.S. and Singapore without quarantine requirements, and courts do not recognize the burden of COVID quarantine requirements in China as outweighing the need for depositions. *Est. of Boyles v. Gree USA, Inc*., No. 1:20-CV-276, 2021 WL 3292727, at **2-3 (M.D.N.C. Aug. 2, 2021) (ordering Chinese defendants to appear for deposition outside of mainland China despite defendants' argument that doing so would subject them to a 14-day quarantine upon arrival and another 14-day quarantine upon return, finding argument to "involve issues of convenience and not impossibility").

**ISSUE 7.** *On October 11, 2021, JLI noticed the personal deposition of Andy Chou, who is both a named Defendant and the owner and lead executive for all the corporate defendants, for November 18, 2021 in Los Angeles, California. The Parties dispute whether this location is appropriate.*

CJ'S POSITION:

This deposition notice—which was served absent consultation with CJ's counsel or leave of the Court—is *prima facie* improper under FRCP 45(c), because Mr. Chou is a Chinese national residing in China, and is neither "employed, [n]or regularly transacts business in person" in California. Additionally, because Mr. Chou is the lead executive of businesses that sell hundreds of millions of dollars of goods annually, his deposition is "a so-called apex deposition" and the Court is tasked with considering "whether [JLI] has exhausted other less intrusive discovery methods." *E.g., Anderson v. County of Contra Costa*, No. 15-cv-01673-RS (MEJ), 2017 WL 930315, at *4 (N.D. Cal. Mar. 9, 2017). Forcing this busy executive to travel to California (or even Singapore—which JLI has inexplicably not offered for Mr. Chou as it has for his employees) and subjecting him to a 21-day quarantine upon return to mainland China is extremely burdensome, unreasonably intrusive, and unnecessarily disruptive to Defendants' business operations.

JLI'S POSITION:

Los Angeles is the proper location for this deposition because Andy Chou's address, as the Chief Executive Officer, Secretary, CFO, and Director of Defendant CJ Fulfillment, is listed as 13955 Central Ave., Chino, California on CJ Fulfillment's Statement of Incorporation, which is also where CJ Fulfillment's principal place of business is, and which is located in the forum district. The fact that Mr. Chou is "busy" or that Mr. Chou may be required to quarantine in China are not valid excuses, particularly where he is a named Defendant who has already been found liable for counterfeiting and trademark infringement. *See Est. of Boyles, supra* 2021 WL 3292727, at **2-3; *New Medium Techs. LLC v. Barco N.V.,* 242 F.R.D. 460, 469 (N.D. Ill. 2007) (ordering Japanese defendants to travel to Chicago in the forum district or to California where defendants had a subsidiary and holding "[h]ighly placed executives are not immune from discovery, and the fact that an executive has a busy schedule cannot shield him or her from being deposed."). As explained above, it is illegal to take depositions in China and Americans cannot currently travel to China, whereas Mr. Chou can travel to the U.S. without quarantine requirements here.

**ISSUE 8.** *On October 29, 2021, JLI jointly noticed its Rule 30(b)(6) deposition of all corporate defendants for November 18, 2021 in Los Angeles, California. CJ's counsel identified Mr. Chou as its Rule 30(b)(6) deponent for all defendant corporations before JLI issued its Rule 30(b)(6) notice. The Parties dispute whether Los Angeles is the proper location for 30(b)(6) deposition(s).*

CJ'S POSITION:

Given Mr. Chou's location, residence, and place of work in China; his lack of travel outside of China since 2019; his extensive business responsibilities as owner and lead executive of all related companies; China's 21-day quarantine requirement upon return to the mainland from anywhere but Macau; COVID-19 transmission risks inherent in international travel; and JLI's lack of a colorable argument to depose Mr. Chou in his personal capacity anywhere but Macau, "the convenience of all parties and in the general interests of judicial economy" powerfully demand that the noticed Rule 30(b)(6) deposition be based on Macau. *Cadent Ltd. v. 3M Unitek Corp.*, 232 F.R.D. 625, 628-29 (C.D. Cal. 2005). "[T]he presumption that a corporate party's deposition should be held at its principal place of business" is inapplicable, or at least substantially undermined, because a majority of the jointly noticed corporate defendants (*i.e.,* of the three that actually exist) have a principal place of business outside of California, namely China and Arizona. *Id.* While physically traveling to Macau may be burdensome for U.S.-based attorneys, Defendants' counsel plans to eliminate this burden for itself by attending such depositions virtually—a practice which has become commonplace in the COVID era, but has agreed to schedule all depositions so that they can be accomplished in a single international trip to the extent that JLI's counsel prefers to conduct depositions in person. *See Pruco Life Ins. Co. v. Cal. Energy Dev.*, No. 3:18-cv-02280-DMS-AHG, 2021 WL 5043289, at *1 (S.D. Cal. Oct. 29, 2021).

JLI'S POSITION:

Besides Los Angeles being in the forum district, Defendant CJ Fulfillment Corp. is incorporated in California, has its principal place of business in Chino, California, and lists Chino, California as the address for Defendant Andy Chou in its Statement of Incorporation. Since Defendants have strong economic ties to the jurisdiction, and the District has a compelling interest in protecting its citizens from Defendants' counterfeiting activities, it is justified to have the depositions take place in the Central District of California. *See Jacobs v. Floorco Enterprises, LLC*, No. 3:17-CV-90-RGJ-CHL, 2020 WL 1290607, at *16 (W.D. Ky. Mar. 18, 2020) (compelling defendant, who resided in China, to appear for deposition in Kentucky despite objections); *Recaro N. Am., Inc. v. Holmbergs Childsafety Co.*, No. 09-12256, 2011 WL 5864727, at *3, 2011 U.S. Dist. LEXIS 134978 at *8 (E.D. Mich. Nov. 22, 2011) (compelling Chinese and Swedish corporate defendants to appear for deposition in Michigan where defendants did business and Michigan had a strong interest in protecting its corporate citizens). Macau is not convenient for all parties, because JLI plans to take these depositions in person and: (1) Americans cannot currently travel to Macau; (2) it is illegal to take depositions in China; and (3) China's current political climate and government crackdowns in areas of China where they previously applied different rules, like Hong Kong and Macau, make taking depositions in Macau risky and legally unsafe at this time, and courts do not compel depositions to take place where there is a risk of arrest or criminal charges. *See Jacobs,* 2020 WL 1290607, at *15 (referring to the taking of a virtual deposition in China: "[t]he Court will neither direct nor encourage the Parties to engage in potentially illegal conduct.").

**CATEGORY 3: JLI'S POTENTIAL MOTION TO COMPEL REGARDING CJ'S DOCUMENT PRODUCTION**

***ISSUE 9.***     ***JLI's RFP requested that Defendants produce their responsive documents "as single-page TIFF files with a Concordance load file," that for all documents maintained as ESI, the load***

*file include "all available and extractable metadata and text," including a list of metadata fields, and that "Microsoft Excel spreadsheet files shall not be converted to TIFF files and shall be produced in native format." Defendants' produced documents consist of two pdf files, one with 139 pages and one with 6,593 pages, including numerous spreadsheets, and Defendants did not produce any load file or metadata. The Parties dispute whether Defendants' production is adequate under FRCP 34.*

JLI'S POSITION

JLI's position is that Defendants' production is improper because they failed to produce documents in a form that complies with the instructions in JLI's RFP pursuant to FRCP 34(b)(1)(C). JLI specified the form in which ESI was to be produced, and Defendants did not object to nor comply with such instructions. Defendants' also failed to produce documents as kept in the usual course of business or organized and labeled to correspond to the categories in the requests, and even if JLI's instructions were disregarded, Defendants failed to produce their documents as ordinarily maintained or in a reasonable usable form, in violation of FRCP 34(b)(2)(E); *see Davis v. Pinterest, Inc.,* No. 19-CV-07650 HSG(TSH), 2021 WL 3045878, at *7 (N.D. Cal. July 20, 2021) (holding "documents must be produced as they are kept in the ordinary course of business – meaning in whatever organizational structure they are stored in and not just randomly thrown together with items the litigant stores separately" and "ESI must be produced in its ordinary form or in a usable form").

CJ'S POSITION

Defendants objected to JLI's 'form of production' requests pursuant to FRCP 34(b)(2)(D) in a supplemental response two days after JLI first raised its concerns (9 days after CJ's initial PDF production) because, *inter alia*, JLI's form requests were wholly absent from the Parties' Discovery Plan (Dkt. 67 at 11:2-6, negotiated before CJ's current counsel appeared),which "must state the parties' views and proposals on: …(C) any issues about disclosure, discovery, or preservation of electronically stored information, including the form or forms in which it should be produced." FRCP 26(f)(3)(C). Moreover, many produced documents are screenshots or summaries from Defendants' records and are therefore substantially produced "as they are kept in the usual course of business" and "in a reasonably usable form." Fed. R. Civ. P. 34(b)(2)(E); *see also Morgan Hill Concerned Parents Ass'n v. Cal. Dep't of Educ.*, No. 2:11-cv-3471 KJM AC, at *8 (E.D. Cal. Feb. 1, 2017) (relying on a stipulation where the parties agreed PDF to be a suitable production format). Ultimately, converting the bookmarked PDF production to the form Plaintiff prefers to utilize would inure the same or less burden for JLI to accomplish than for the Defendants.

**CATEGORY 4: JLI'S POTENTIAL MOTION TO COMPEL RE CJ'S RESPONSES TO REQUESTS FOR PRODUCTION**

*ISSUE 10.     JLI's RFP No. 4*: *This request seeks all documents concerning Defendant Andy Chou's criminal conviction for infringement in China. Defendants' initial substantive response stated that they "have no non-privileged documents responsive to this request in their possession that Plaintiff does not already possess or are publicly obtainable by Plaintiff at a lower or similar burden than Defendants would bear in obtaining them." Defendants' supplemental response states: "Defendants have no non-privileged documents responsive to this request in their possession that are not already of Court record." The Parties dispute whether Defendants' response is adequate.*

JLI'S POSITION

JLI's position is that notwithstanding the fact that it has obtained some documents reflecting Defendant Chou's conviction from Chinese governmental authorities (*see* ECF Nos. 55-22, 66-1, 77-28), Defendants must produce all non-privileged documents responsive to this request in their possession or control.  *See Regal Elecs., Inc. v. Pulse Eng'g, Inc.*, No. 5:03-cv-1296 (JWRS), 2005 WL 3078983, at *3 (N.D. Cal. Nov. 16, 2005) ("Rule 34, however, does not excuse [a party] from providing documents in its possession or control, solely because the information is also publicly available.").  This includes any document(s) reflecting Mr. Chou's conviction, which Defendants admit they possess but are refusing to produce, and though Defendants claim to possess no other records, it would also include any non-privileged documents retained by Mr. Chou's counsel in that case, which Defendants control but have not yet looked into.

CJ'S POSITION

Defendants' position: Mr. Chou's decade-old criminal conviction for strict liability copyright infringement, the corresponding appellate ruling confirming his lack of liability for willful trademark infringement, and translations thereof were relied upon in JLI's summary judgment briefing, Dkt. 77-51—and such documents are more than sufficient for JLI to attempt to impugn Mr. Chou's character based on this stale, questionably relevant mistake. As expressly stated in CJ's supplemental RFP response, Defendants "have no non-privileged documents responsive to this request in their possession that are not already of Court record," and JLI's allegation that "Defendants admit they possess [documents] but are refusing to produce [them]" is a patently false misrepresentation. While Mr. Chou retained counsel in the 2011 Chinese criminal proceedings, he lost contact with his former counsel years ago and cannot even recall his counsel's name

**ISSUE 11.** **RFP No. 6: This request seeks all version of Defendants' webpages through which it advertised, offered, and/or sold JUUL-branded products.  Defendants responded that they "have no non-privileged documents responsive to this request in their possession that Plaintiff does not already possess or are publicly obtainable by Plaintiff at a lower or similar burden than Defendants would bear in obtaining them," and "that they do not maintain archived copies of their webpages in the ordinary course of business."  The Parties dispute whether Defendants' response is adequate.**

JLI'S POSITION

JLI's position is that notwithstanding the fact that it has obtained some screenshots of Defendants' infringing webpages since beginning its investigation in 2019, Defendants must produce all non-privileged documents responsive to this request in their possession or control.  *See Regal Elecs., Inc.*, 2005 WL 3078983, at *3.  In meeting and conferring, Defendants now claim that they do not possess any documents responsive to this request, as they took down the infringing webpages and claim they do not archive such data.  JLI does not believe that Defendants do not have access to any older versions of their webpages, but if true, this raises a serious spoliation issue, as some or all of the infringing products were still being sold as of the date JLI filed this case.

CJ'S POSITION

As unambiguously stated in their supplemental response, Defendants "do not maintain archived copies of their webpages in the ordinary course of business" and do not have copies of webpages of Juul-branded products, except for those already of Court record. The single active web-page with Juul-branded USB charger product that was active when this lawsuit was filed (under seal) was hastily taken down in response to the Court's TRO while CJ—a company with severe logistical growing pains due to its exponential growth over the past three years—struggled to conduct extensive financial accounting in a short timeline and maintain business operations despite the freezing of its financial accounts. JLI's offensive and unsubstantiated suggestions that CJ is lying or purposely spoliated evidence (evidence that JLI preserved and put into the Court record at Dkt. 77-38) do not warrant a response.

*ISSUE 12.     RFP No. 11: This request seeks all documents "CONCERNING Apple-branded products, including but not limited to, YOUR listings and sales records."  Defendants' response is they "have no responsive documents" and "that they have never had any Apple-branded listings or sales, and accordingly have no responsive documents" and "[t]o the extent, that this RFP is intended to "products referencing the Apple brand," Defendants refer to their response to RFP 26." The Parties dispute whether this is true and/or adequate.*

JLI'S POSITION

JLI's position is that Defendants either did not adequately search for, or are improperly withholding, documents responsive to this request, as the evidence in the record shows that Celia Yang on behalf of Defendants, and JLI's investigator, Matthew Hewlett, communicated about the sale of "Apple branded" products through Defendants' online platform. More specifically, Ms. Yang stated that she had found a factory to source Apple-branded products, though the products were "not the genuine one but the copy one with the same genuine apple." *See* ECF No. 55-13, ¶ 9; ECF No. 55-17. That offer and any other offers to sell and/or sales of counterfeit  Apple products showing a pattern and practice of counterfeiting are relevant to Defendants' willfulness and their claims that they are careful not to infringe IP rights and that their counterfeiting of JUUL-branded products was an isolated mistake.

CJ'S POSITION

Notwithstanding that CJ already produced product codes and URL listings corresponding to accessories that are compatible with Apple products (but are not Apple-branded products themselves), JLI is unreasonably demanding that CJ search for and produce all communications—internal, with customers, or with suppliers—that reference the APPLE brand in any way without regard to context. But this discovery demand is not reasonably calculated to lead to discoverable evidence because CJ "never had any Apple-branded listings or sales." As to JLI's cited communication of record (for which re-production would be cumulative), JLI's investigator's attempts to obtain Apple-branded products from Celia Yang—who is not and never was an actual agent or employee of Defendants, but rather was an employee or agent of third party sellers using CJ's sales platform—were unsuccessful, confirming that, at least with respect to RFP 11, JLI is engaging a needlessly burdensome fishing expedition.

**CATEGORY 5: JLI'S POTENTIAL MOTION TO COMPEL RE CJ'S RESPONSES TO REQUESTS FOR ADMISSION**

*ISSUE 13.     RFA Nos. 30-39: These requests seek admissions as follows: "Admit that YOU withdrew, transferred, or otherwise dissipated money from one or more of your [BANK] accounts after service of the Court's order granting Plaintiff's ex parte application for an asset freeze." And RFA No. 40: "Admit that YOU have not disclosed ALL assets and/or accounts pursuant to the Court's Orders." Defendants responded as follows: "Defendants specifically object to this request as unduly broad, burdensome, and not relevant to the claims at issue in this litigation. In the Court's Order, Dkt. 103, the Court concluded that any alleged violations of the Court's order "are not relevant to [Juul's] damages calculation." Additionally, Defendants specifically object to this request as compound in that "YOU" refers to multiple entities. Subject to and without waiving any general objections, Defendants respond to this request as follows: <u>Admitted that Defendants endeavored to comply and, at a minimum, have substantially complied with every order issued by this Court. To the extent not expressly admitted, Defendants deny the request</u>." The Parties dispute whether the underlined portion of the response is sufficient and whether these requests are relevant.*

JLI'S POSITION

JLI's position is that Defendants' answers do not comply with FRCP 36(a)(4) in that they do not specify the part of the requests they are admitting, by stating in response to each one "[a]dmitted that Defendants endeavored to comply, and at a minimum, have substantially complied with every order issued by this Court," which is evasive, nonresponsive, and improper. *See* FRCP 36(a)(4); *Full Tilt Boogie, LLC. v. KEP Fortune, LLC*, No. 2:19-CV-09090 ODWK(ESX), 2021 WL 3261638, at *12 (C.D. Cal. May 24, 2021), *report and recommendation adopted sub nom. Full Tilt Boogie, LLC v. KEP Fortune, LLC*, No. 2:19-CV-09090 ODWK(ESX), 2021 WL 4535347 (C.D. Cal. July 1, 2021) (holding, "[a] party cannot re-write the RFA and deny a different matter."). Defendants' violations of Court Orders and lies to the Court regarding compliance therewith are relevant to the Court's assessment of Defendants' credibility, trustworthiness, and the weighing of evidence, particularly party testimony, at trial.

CJ'S POSITION

After its extensive (re)briefing on the issue of alleged asset dissipation, where JLI unsuccessfully sought to increase the amount of CJ's asset freeze based on such accusations (*e.g.,* Dkt. Nos. 72, 76, 92) and unsuccessfully argued that such accusations supported their willfulness allegations (*e.g.*, Dkt. 77-1 at 29:18-30:10; Dkt. 94 at 7:17-8:18), the Court expressly found any such dissipation to be irrelevant to the only issue remaining in the case: "Defendants' violations of Court orders, while concerning and potentially warranting sanctions, are not relevant to the damages calculation as the statute clearly permits enhanced statutory damages only if 'the court finds that the use of the counterfeit mark was willful.'" Dkt. 103 at 20 n.20 (emphasis added). Putting this established lack of relevance aside, Defendants have sufficiently denied each request: "To the extent not expressly admitted, Defendants deny the request." *Cf. Full Tilt Boogie, LLC. v. KEP Fortune, LLC*, No. 2:19-CV-09090 ODWK(ESX), 2021 WL 3261638, at *12 (C.D. Cal. May 24, 2021) (*e.g.,* "When RFA 21 asked if the Biks had conducted 'the initial training program,' KEP responded by describing other training.") Moreover, given that the Court has already made assessments regarding violations of its Orders (*e.g.*, Dkt. 102 at 2) and that JLI's RFAs collectively pertain to all corporate and individual defendants, it is unclear how any RFA response would reflect on the credibility of any particular witness in the pending bench trial.

--
Larry Sandell
Attorney at Law
Mei & Mark LLP

**202-329-9407** | **888-860-5678 x717** (US Toll Free) | **202-567-6417 x717** (International) | **888-706-1173** (Fax)
lsandell@meimark.com | www.meimark.com
Office Address: 818 18th Street NW, Suite 410, Washington, DC 20006
Mailing Address: P.O. Box 65981, Washington, DC 20035-5981

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.