1  STEPHEN C. STEINBERG (SBN 230656)
     *ssteinberg@bzbm.com*
2  GABRIELLA A. WILKINS (SBN 306173)
     *gwilkins@bzbm.com*
3  BARTKO ZANKEL BUNZEL & MILLER
   A Professional Law Corporation
4  One Embarcadero Center, Suite 800
   San Francisco, California 94111
5  Telephone:  (415) 956-1900
   Facsimile:  (415) 956-1152
6

7  Attorneys for Plaintiff JUUL Labs, Inc.

8

9              UNITED STATES DISTRICT COURT

10     CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

11

12 | JUUL LABS, INC., a Delaware Corporation, | Case No. 2:21-cv-03056-DSF-PDx |

13              Plaintiff,

14       v.                              **SEPARATE STATEMENT OF
                                         UNCONTROVERTED FACTS AND
15 ANDY CHOU (aka LIZHI ZHOU), an        CONCLUSIONS OF LAW IN
   individual; YIWU CUTE JEWELRY         SUPPORT OF JUUL LABS, INC.'S
16 CO., LTD., a Chinese limited company; MOTION FOR SUMMARY
   YIWU XITE JEWELRY CO., LTD., a        JUDGMENT AND
17 Chinese limited company; CJ           RECONSIDERATION**
   FULFILLMENT CORP., a California
18 Corporation; CJ TRADE CORP., an       Judge:  Hon. Dale S. Fischer
   Arizona Corporation; and YIWU         Date:   July 25, 2022
19 PROMOTIONAL TRADE CO., LTD.           Time:   1:30 p.m.
   (aka YIWU PROMOTION TRADE CO.,        Ctrm.:  7D
20 LTD.), a Chinese limited company,
                                         Action Filed:  April 8, 2021
21              Defendants.              Trial Date:    October 18, 2022

22

23

24

25

26

27

28

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Local Rule 56-1, and this Court's Standing Order and Order Re Motions for Summary Judgment, Plaintiff JUUL Labs, Inc. ("JLI") hereby submits the following Separate Statement of Uncontroverted Facts and Conclusions of Law, together with references to supporting evidence, in support of its Motion for Summary Judgment and Reconsideration against Defendants Andy Chou (aka Lizhi Zhou), Yiwu Cute Jewelry Co., Ltd., Yiwu Xite Jewelry Co., Ltd., CJ Fulfillment Corp., CJ Trade Corp., and Yiwu Promotional Trade Co., Ltd. (aka Yiwu Promotion Trade Co., Ltd.) (collectively, "Defendants").  The evidence cited in this Separate Statement is set forth in the Declarations of Adrian Punderson, Matthew Hewlett, and Gabriella A. Wilkins.

| UNCONTROVERTED FACTS | | |
|---|---|---|
| **No.** | **UNDISPUTED FACT** | **SUPPORTING EVIDENCE** |
| **JLI'S USE OF ITS MARKS, DEVELOPMENT OF THE JUUL BRAND, AND BRAND RECOGNITION IN THE U.S., GLOBALLY, AND IN CHINA** | | |
| 1. | JLI designs, manufactures, and distributes JUUL-branded electronic nicotine delivery systems ("ENDS"), also called the JUUL Device, and related JUUL-branded products, including but not limited to JUULpods and the JUUL USB Chargers. | Declaration of A. Punderson ("Punderson Decl.") ¶ 7. Declaration of Gabriella A. Wilkins ("Wilkins Decl.") Ex. 1[1] (ECF No. 90-1) ¶¶ 1, 4-6. |
| 2.[2] | The JUUL Portable Charging Case is an individual charging case designed specifically for the JUUL Device, that is sold with a JUUL USB Cable. | Punderson Decl. ¶ 9, Ex. 90. |

---

[1] All references hereinafter to "Ex._" are to the documents attached as exhibits to the Wilkins Decl. unless otherwise noted.

[2] JLI has color coded all new facts not previously known or included in its Motion For Summary Judgment filed in July 2021 [ECF No. 77]. Out of the 214 facts within, 175 of those are new.

| UNCONTROVERTED FACTS | | |
|---|---|---|
| **No.** | **UNDISPUTED FACT** | **SUPPORTING EVIDENCE** |
| 3. | JLI introduced its JUUL-branded electronic cigarette into the US market in 2015. | Punderson Decl. ¶ 8. Ex. 1 (ECF No. 90-1) ¶ 2. |
| 4. | All JUUL products are designed to meet industry standards for safety, quality, reliability and performance. | Punderson Decl. ¶ 10. |
| 5. | JLI conducts quality control tests on JUUL products in their totality and on component parts. | Punderson Decl. ¶ 11 Ex. 1 (ECF No. 90-1) ¶ 8. |
| 6. | JLI maintains strict quality control standards for all of its products and conducts regular visits to and audits of its suppliers' factories. | Punderson Decl. ¶¶ 11-12. Ex. 1 (ECF No. 90-1) ¶ 9. |
| 7. | In the United States, JLI sells its products on both its online retail store and through its pre-approved authorized network of distribution partners, and ensures that its distribution partners meet its high quality standards. | Punderson Decl. ¶ 13. Ex. 1 (ECF No. 90-1) ¶ 15. |
| 8. | Defendants are not one of JLI's authorized distribution partners. | Punderson Decl. ¶ 14. Ex. 1 (ECF No. 90-1) ¶ 16. |
| 9. | JLI has been the top-selling e-cigarette brand in the U.S. from at least 2018 through present. | Punderson Decl. ¶¶ 20-21. Ex. 92 (JLI00020117-21753). |
| 10. | Since at least 2018 until present, the JUUL brand has been widely discussed in news articles published by China news outlets online. | Punderson Decl. ¶ 23. Ex. 93 (JLI00010575-78: LI00024444-24694: JLI00024695) Exs. 6-7. (JLI00009899-9900: JLI00009893-95: JLI00009896-98: |

STATEMENT OF UNDISPUTED MATERIAL FACTS ISO JUUL'S MOTION FOR RECONSIDERATION/MOTION FOR SUMMARY JUDGMENT

| | UNCONTROVERTED FACTS | |
|---|---|---|
| **No.** | **UNDISPUTED FACT** | **SUPPORTING EVIDENCE** |
| | | JLI00009964-65; |
| 11. | Since 2017, JLI has filed numerous trademark oppositions and/or domain name disputes against Chinese companies and individuals for filing trademark registrations or registering domain names using the JUUL marks or marks confusingly similar to the JUUL marks. | Punderson Decl. ¶¶ 26-27 Ex. 95.<br><br>(JLI00013854-61; JLI00011937-70; JLI00014914-16; JLI00015062-72 JLI00015073-78; JLI00015079-85; JLI00015088-90; JLI00015452-53; JLI00015618-20) |
| 12. | Since at least 2017, there have been criminal prosecutions in China against Chinese companies and individuals for the sale of counterfeit JUUL products and/or trademark infringement of the JUUL brand. | Punderson Decl. ¶ 28-29. Ex. 96 (JLI00020026-107). |
| 13. | Since 2017, JLI has been notified by U.S. Customs and Border Patrol of dozens of seizures of shipments of counterfeit JUUL products going from China to the U.S. and from January 2019 until July 2019 alone, there were at least thirty-seven U.S. Customs seizures of counterfeit JUUL products shipped from China. | Punderson Decl. ¶ 31. Ex. 97. (JLI00009348-9385) |
| 14. | Authentic and authorized JUUL products were sold in China in 2019. | Ex. 9. (A. Punderson Depo Tr.) at 426:7-10; 429:5-13. |
| 15. | Counterfeit JUUL products have been manufactured, sold, and widely available in China from at least 2017 to present. | Punderson Decl. ¶¶ 28-32.<br><br>Ex. 18 (JLI00009969-71) |
| 16. | Counterfeit JUUL products are manufactured in Chinese factories. | Punderson Decl. ¶ 28-30. |

| UNCONTROVERTED FACTS | | |
|---|---|---|
| **No.** | **UNDISPUTED FACT** | **SUPPORTING EVIDENCE** |
| 17. | The U.S. government has found that the Yiwu market is "one of the biggest small-commodities venues that links manufacturers of counterfeit goods with large-scale distributors." | Request for Judicial Notice ("RJN") ¶ 13 pp. 44-45.<br><br>Ex. 85, pp. 4-5 |
| 18. | JLI's Brand Protection team investigates thousands of cases of counterfeiting of JUUL products every year, and in every case in which it has been able to identify a manufacturer of such products, they were made by a company based in China. | Punderson Decl. ¶ 32. |
| 19. | JLI has numerous trademark registrations in China. | Punderson Decl. ¶ 24. Ex. 94 (JLI00009901-920). |
| **JLI'S REGISTERED TRADEMARKS** | | |
| 20. | JLI owns the following trademarks registered with the USPTO for use in connection with genuine JUUL Products:<br><br>  a. "JUUL" (U.S. Trademark Reg. No. 4,818,664);<br><br>  b. JUUL (U.S. Trademark Reg. Nos. 4,898,257);<br><br>  c. JUUL LABS (U.S. Trademark Reg. No. 5,770,541);<br><br>  d. "JUUL LABS" (U.S. Trademark Reg. No. 5,776,153);<br><br>  e. "JUULPODS" (U.S. Trademark Reg. No. 5,918,490);<br><br>  f. JUUL (U.S. Trademark Reg. No. 6,064,902); | Punderson Decl., ¶¶ 15-16 Ex. 91.<br><br>RJN ¶ 1.<br><br>Ex. 1 (ECF No. 90-1) ¶ 10. |

| UNCONTROVERTED FACTS | | |
|---|---|---|
| **No.** | **UNDISPUTED FACT** | **SUPPORTING EVIDENCE** |
| | g. **JUUL** (U.S. Trademark Reg. No. 6,211,614); <br><br> h.  (U.S. Trademark Reg. No. 5,299,392); and <br><br> i.  (U.S. Trademark Reg. No. 5,304,697). <br><br> (the aforementioned nine registered trademarks are hereinafter referred to collectively as the "JUUL Marks"). | |

| UNCONTROVERTED FACTS | | |
|---|---|---|
| **No.** | **UNDISPUTED FACT** | **SUPPORTING EVIDENCE** |
| 21. | JLI has used the JUUL Marks continuously in commerce, including in connection with its sale of the JUUL Device, JUULpods, USB Charger, JUUL Portable Charging Case, and JUUL USB Cable. | Punderson Decl. ¶ 17. |
| 22. | JLI prominently displays the JUUL Marks in all of its advertising and promotional materials, including all product packaging. | Punderson Decl. ¶ 18. |
| 23. | The JUUL Marks symbolize the business goodwill of JLI and are invaluable assets to JLI. | Punderson Decl. ¶ 19. |
| **OVERVIEW OF DEFENDANTS** | | |
| 24. | Defendant Andy Chou (aka Lizhi Zhou) ("Chou") is the founder, owner, CEO, and principal of co-defendants Yiwu Cute Jewelry Co., Ltd., Yiwu Xite Jewelry Co., Ltd., CJ Fulfillment Corp., and CJ Trade Corp., which all make up the brand "cjdropshipping." | Ex. 10 (Chou's Depo Tr. Vol. I) at 30:16-31:14; 32:3-6; 33:24-34:4; 39:21-40:6; 49:10-13.<br><br>Ex. 1 (ECF No. 90-1) ¶ 17. |
| 25. | Defendant Chou owns Yiwu Cuijia Trade Co., Limited, which is the entity responsible for Defendants' entire operation. | Ex. 10. (Chou's Depo Tr. Vol. I) at 32:7-15; 33:11-14; 37:8-22. |
| 26. | Defendant Chou owns Hangzhou Cuijia Freight Forwarding Company Limited. | Ex. 10. (Chou's Depo Tr. Vol. I) at 34:11-21. |
| 27. | Defendant Chou owns Hong Kong Fashion Necklace Limited. | Ex. 10. (Chou's Depo Tr. Vol. I) at 35:14-36:1. |
| 28. | Defendants used to have an office at the Yiwu Market. | Ex. 10. (Chou's Depo Tr. Vol. I) at 378:12-379:2. |

2875.000/1745838.2

Case No. 2:21-cv-03056-DSF-PDx
STATEMENT OF UNDISPUTED MATERIAL FACTS ISO JUUL'S MOTION FOR
RECONSIDERATION/MOTION FOR SUMMARY JUDGMENT

| UNCONTROVERTED FACTS | | |
|---|---|---|
| No. | UNDISPUTED FACT | SUPPORTING EVIDENCE |
| 29. | Defendant Yiwu Cute Jewelry Co., Ltd. is a China-based company operating the website, www.cjdropshipping.com. | Ex. 10. (Chou's Depo Tr. Vol. I) at 45:20-46:1.<br><br>Ex. 1 (ECF No. 90-1) ¶ 19. |
| 30. | Defendant CJ Trade Corporation is a U.S. company incorporated under the laws of Arizona, and operates a U.S. based fulfillment center for Defendants in Cranbury, New Jersey. | Ex. 10. (Chou's Depo Tr. Vol. I) at 33:6-8.<br><br>Ex. 1 (ECF No. 90-1) ¶ 20. |
| 31. | Defendant CJ Fulfillment Corporation is a U.S. company incorporated under the laws of California, and operates a U.S. based fulfillment center for Defendants in Chino, California. | Ex. 10. (Chou's Depo Tr. Vol. I) at 31:20-24.<br><br>Ex. 1 (ECF No. 90-1) ¶ 21. |
| 32. | In 2019 and 2020, Defendants' gross revenue was RMB 300 million (or approximately $45 million) and 1 billion RMB (or approximately $150 million), respectively. | Ex. 10. (Chou's Depo Tr. Vol. I) at 51:9-13. |
| 33. | Defendants own seven warehouses around the world, in China, the U.S., and Germany. | Ex. 12. (Chou's Depo Tr. Vol. III) at 301:17-302:6.<br><br>Ex. 1 (ECF No. 90-1) ¶ 22. |
| 34. | Defendants operate and/or collaborate with six different warehouses located in Thailand, Indonesia, Britain, the Netherlands, the Philippines, and France by storing products there on behalf of their users. | Ex. 12. (Chou's Depo Tr. Vol. III) at 301:17-302:20.<br><br>Ex. 1 (ECF No. 90-1) ¶ 22. |
| 35. | Defendants have four warehouses in China. | Ex. 10. (Chou's Depo Tr. Vol. I) at 33:9-10. |

| | UNCONTROVERTED FACTS | |
|---|---|---|
| **No.** | **UNDISPUTED FACT** | **SUPPORTING EVIDENCE** |
| 36. | Kevin Ye is the manager of CJ Trade Corp., which operates Defendants' New Jersey warehouse. | Ex. 16 (Ye Depo Tr.) at 13:25-14:10. |
| 37. | Leon Li is a warehouse worker for CJ Trade Corp., which operates Defendants' New Jersey warehouse. | Ex. 13. (Li Depo Tr.) at 21:5-9; 33:14-20. |
| 38. | As part of Leon Li's job, he translates for his manager, Mr. Ye, whenever anyone visits the warehouse. | Ex. 13. (Li Depo Tr.) at 36:15-23. |
| 39. | There are no posters in the NJ warehouse with brands on them. | Ex. 13. (Li Depo Tr.) at 109:15-110:8; 116:23-117:10. |
| 40. | Wang Huiyun was the purported "Director of IP Enforcement Unit" of Defendants. | Ex. 2 (ECF No. 51-15) (5/17/21 Wang Decl.) ¶ 2. |
| 41. | Wang Huiyun falsely claimed that Defendants maintain a trademark training and identification card that is updated every month to help her team members recognize brands and avoid infringement, when in fact, Defendants created one version of such card just before Wang's declaration in this case. | Ex. 2 (ECF No. 51-15) (5/17/21 Wang Decl.) ¶ 6.<br><br>Ex. 19 (2022.3.9 Chou Decl.) ¶ 5.<br><br>Ex. 71 (metadata showing created in May 2021). |
| 42. | After Wang Huiyun's false claim was revealed and before she was set to be deposed in this case, she resigned from Defendants. | Ex. 14. (Xiangcheng Depo Tr.) at 15:12-19, 16:10-15. |
| 43. | Zeng Xiangcheng is the vice supervisor of Defendants' sourcing department, which is responsible for finding suppliers for products requested by customers, and Zeng | Ex. 14 (Xiangcheng Depo Tr.) at 15:5-7; 33:21-34:9; 34:19-23; 88:5-12. |

| UNCONTROVERTED FACTS | | |
|---|---|---|
| **No.** | **UNDISPUTED FACT** | **SUPPORTING EVIDENCE** |
| | is also taking over some part of Wang Huiyun's responsibilities. | |
| 44. | Lynn Lee is Defendant Chou's wife and personal assistant. | Ex. 15 (Lee Depo Tr.) at 20:10; 21:7-17. |
| 45. | Joyi Jiang is a warehouse worker for CJ Trade Corp., which operates Defendants' New Jersey warehouse. | Ex. 17 (Jiang Depo Tr.) at 11:20-21; 11:25-12:4. |
| 46. | Joyi Jiang testified that she does not care if Defendants sell counterfeit products. | Ex. 17 (Jiang Depo Tr.) at 42:8-43:5. |
| 47. | Defendants did not train Leon Li, Kevin Ye, or Joyi Jiang on how to identify counterfeit products or what to do if a counterfeit product was in the warehouse. | Ex. 13 (Li Depo Tr.) at 108:16-24; 109:5-14.<br><br>Ex. 16 (Ye Depo Tr.) at 61:23-62:7; 66:17-23.<br><br>Ex. 17 (Jiang Depo Tr.) at 24:13-25; 29:23-25. |
| 48. | Defendants did not tell Kevin Ye or Joyi Jiang that they had been previously sued for counterfeiting by any of the following companies and well-known brands: Harley-Davidson, Swarovski, Chrome Hearts, Luxottica, Converse, and Oakley or that they had been found liable for counterfeiting in the past. | Ex. 16 (Ye Depo Tr.) at 65:8-66:10.<br><br>Ex. 17 (Jiang Depo Tr.) at 22:15-23:13. |
| 49. | Defendants did not tell Leon Li that Ray-Ban, Harley-Davidson, or Oakley are well-known brands. | Ex. 13 (Li Depo Tr.) at 111:6-12; 111:15-19. |
| 50. | Defendants did not inform Zeng Xiangcheng that they were being sued by JUUL for selling counterfeit products until | Ex. 14 (Xiangcheng Depo Tr.) at 10:3-8; 29:8-30:13; 69:21-70:6. |

| | UNCONTROVERTED FACTS | |
|---|---|---|
| **No.** | **UNDISPUTED FACT** | **SUPPORTING EVIDENCE** |
| | he spoke with counsel less than a week before his deposition on April 19, 2022. | |
| 51. | As of the date of his deposition, Defendants had not informed Zeng Xiangcheng that they had ever been sued or found liable for counterfeiting. | Ex. 14 (Xiangcheng Depo Tr.) at 70:7-71:21. |
| 52. | Defendants advertise, offer for sale, and sell products on Defendants' website, www.cjdropshipping.com ("CJ"), source products, store products in their warehouses, process orders from CJ, and arrange for shipping of products to customers. | Ex. 4 (ECF No. 51-1) ¶¶ 10, 12-13, 17-18. <br><br> Ex. 1 (ECF No. 90-1) ¶ 23. |
| 53. | When a customer purchases a product on Defendants' website, Defendants provide the inventory for the product and fulfill the order. | Ex. 10 (Chou depo Tr. Vol. I) at 86:15-21. <br><br> Ex. 1 (ECF No. 90-1) ¶ 24. |
| 54. | Defendants' sourcing team chooses the suppliers from which they source products. | Ex. 14 (Xiangcheng Depo Tr.) at 34:19-23; 39:4-8; 41:8-42:3. <br><br> Ex. 10 (Chou Depo Tr. Vol. I) at 88:8-11 (ending at "products"). <br><br> Ex. 1 (ECF No. 90-1) ¶ 25. |
| 55. | Defendants' sourcing team reviews all sourcing requests before approving them. | Ex. 14 (Xiangcheng Depo Tr.) at 34:24-35:13. <br><br> Exh. 2 (ECF 51-15), ¶¶ 6, 9 ([we] only permit[] new listings by third party resellers after approval by my unit"). |

| UNCONTROVERTED FACTS | | |
|---|---|---|
| **No.** | **UNDISPUTED FACT** | **SUPPORTING EVIDENCE** |
| | | ECF No. 90-1 ¶ 26. |
| 56. | Defendants maintain control over all product information on CJ. | Ex. 11 (Chou Depo Tr. Vol. II) at 225:12-18; 227:20-22; 229:15-18. Ex. 1 (ECF No. 90-1) ¶ 28. |
| 57. | Defendants maintain control over, and have access to, all communications taking place over their platform on CJ. | Ex. 4 (ECF No. 51-1) ¶ 24. Ex. 1 (ECF No. 90-1) ¶ 30. |
| 58. | Anyone can make purchases from CJ, not just "dropshippers." | Ex. 11 (Chou Depo Tr. Vol. II) at 152:22-153:21; 154:24-155:13. |
| 59. | Defendants use a website called 1688.com, a third party website where suppliers list their products, to source products. | Ex. 11 (Chou Depo Tr. Vol. II) at 131:4-12. Ex. 14 (Xiangcheng Depo Tr.) at 39:4-8; 41:8-42:3. |
| 60. | Defendants received notice of this lawsuit on April 22, 2021. | Ex. 12 (Chou Depo Tr. Vol. III) at 377:25-378:4. Ex. 1 (ECF No. 90-1) ¶ 77. |
| **DEFENDANTS' SOURCING, LISTING FOR SALE, SALE, AND DISTRIBUTION OF COUNTERFEIT JUUL PRODUCTS** | | |
| 61. | In January and February 2019, Defendants purchased 40 units of JUUL Starter Kits (SKU No. CJXFZNZN00104) from supplier Shenzhen Siwen Nouke Technologies, which Defendants shipped to one or more customers. | Ex. 10 (Chou Depo Tr. Vol. I at 90:12-25 (stop at "manufacturer"); 91:6-9; 92:15-19; 93:15-21. Ex. 21 (Chou Depo Ex. 122), p. 1. |

2875.000/1745838.2

Case No. 2:21-cv-03056-DSF-PDx

| UNCONTROVERTED FACTS | | |
|---|---|---|
| No. | UNDISPUTED FACT | SUPPORTING EVIDENCE |
| 62. | The JUUL Starter Kits (SKU No. CJXFZNZN00104) Defendants purchased, advertised for sale, sold, and shipped were counterfeit. | Ex. 11 (Chou Depo Tr. Vol. II) at 130:11-17; 218:8-11. |
| 63. | Data compiled by Defendants' warehouse personnel shows that from February 2019 until March 2021, Defendant received 169 units of JUUL Starter Kits (SKU No. CJXFZNZN00104) at their China warehouse. | Ex. 10 (Chou Depo Tr. Vol. I) at 104:1-105:5; 105:11-13; 106:24-107:15. Ex. 23 (Chou Depo Ex. 124), pp. 1-2. |
| 64. | Data compiled by Defendants' warehouse personnel shows that from February 2019 until March 2021, Defendants shipped 159 units of JUUL Starter Kits (SKU No. CJXFZNZN00104) from their China warehouse. | Ex. 10 (Chou Depo Tr. Vol. I) at 104:1-14; 106:24-107:15; 107:25-108:8; 111:16-112:6. Ex. 23 (Chou Depo Ex. 124), pp. 1-2. |
| 65. | Defendants claim they cannot account for or explain the missing 10 units of JUUL Starter Kits (SKU No. CJXFZNZN00104). | Ex. 10 (Chou Depo Tr. Vol. I) at 104:1-14; 107:25-108:13. Ex. 23 (Chou Depo Ex. 124), pp. 1-2. |
| 66. | Data generated from Defendants' system shows that from February 2019 until March 2021, Defendants received 155 units of JUUL Starter Kits (SKU No. CJXFZNZN00104) to their China warehouse. | Ex. 10 (Chou Depo Tr. Vol. I) at 104:1-14; 111:5-112:1. Ex. 23 (Chou Depo Ex. 124), p. 3. |
| 67. | Data generated from Defendants' system shows that from February 2019 until March 2021, Defendants shipped 44 units of JUUL Starter Kits (SKU No. CJXFZNZN00104) from their China warehouse. | Ex. 10 (Chou Depo Tr. Vol. I) at 104:1-14; 113:25-114:18. Ex. 23 (Chou Depo Ex. 124), |

| | UNCONTROVERTED FACTS | |
|---|---|---|
| **No.** | **UNDISPUTED FACT** | **SUPPORTING EVIDENCE** |
| | | p. 4. |
| 68. | Defendants claim they cannot account for or explain the missing 111 units of JUUL Starter Kits (SKU No. CJXFZNZN00104). | Ex. 10 (Chou Depo Tr. Vol. I) at 104:1-14; 107:16-108:13; 111:19-112:6; 114:8-116:11. Ex. 23 (Chou Depo Ex. 124). |
| 69. | From July 27, 2018 until October 21, 2020, Defendants listed for sale JUUL Starter Kits (SKU No. CJXFZNZN00104) on the CJ website. | Ex.11 (Chou Depo Tr. Vol. II) at 156:20-157:22; 218:1-25; 220:1-15. Ex. 25 (Chou Depo Ex. 126), p. 1. Ex. 31 (Chou Depo Ex. 134). |
| 70. | Defendants' IT department created the webpage listing and advertising the JUUL Starter Kits (SKU No. CJXFZNZN00104) on the CJ website. | Ex. 11 (Chou Depo Tr. Vol. II) at 219:13-21. |
| 71. | On or around October 7, 2019, the listing for JUUL Starter Kits (SKU No. CJXFZNZN00104) on Defendants' website showed inventory of 10,494 units in Defendants' China warehouse, a "Price Updated" date of July 27, 2018, and did not include a "View All" button. | Ex. 11 (Chou Depo Tr. Vol. II) at 218:1-25; 220:1-4; 221:3-7. *See* Ex. 31 (Chou Depo Ex. 134). Ex. 1 (ECF No. 90-1) ¶ 39. |
| 72. | On or around March 13, 2020, the listing for JUUL Starter Kits (SKU No. CJXFZNZN00104) on Defendants' website showed inventory of 10,494 units in Defendants' China warehouse, a "Price Updated" date of July 27, 2018, and included a "View All" button. | Ex. 11 (Chou Depo Tr. Vol. II) at 224:9-19; 225:2-11; 225:19-24. Ex. 33 (Chou Depo Ex. 136). Ex. 1 (ECF No. 90-1) ¶ 39. |

| | UNCONTROVERTED FACTS | |
|---|---|---|
| **No.** | **UNDISPUTED FACT** | **SUPPORTING EVIDENCE** |
| 73. | An employee in Defendants' IT department updated the webpage for JUUL Starter Kits (SKU No. CJXFZNZN00104) on Defendants' website sometime between October 2019 and March 2020. | Ex. 11 (Chou Depo Tr. Vol. II) at 218:1-25; 224:9-19; 225:12-18. *Compare* Ex. 31 (Chou Depo Ex. 134) *with* Ex. 33(Chou Depo Ex. 136). |
| 74. | On or around April 8, 2020, the webpage listing JUUL Starter Kits (SKU No. CJXFZNZN00104) on Defendants' website showed inventory of 10,507 units in Defendants' China warehouse. | Ex. 11 (Chou Depo Tr. Vol. II) at 226:2-22. Ex. 34 (Chou Depo Ex. 137). Ex. 1 (ECF No. 90-1) ¶ 39. |
| 75. | An employee in Defendants' IT department updated the inventory listed on the webpage for JUUL Starter Kits (SKU No. CJXFZNZN00104) on Defendants' website sometime between March and April 2020. | Ex. 11 (Chou Depo Tr. Vol. II) at 226:23-227:22. *Compare* Ex. 33 (Chou Depo Ex. 136) *with* Ex. 34 (Chou Depo Ex. 137). |
| 76. | ==From January 20, 2019 until February 14, 2019, Defendants sold 20 units of counterfeit JUUL Starter Kits to Nour Chaaban for a price per unit of $13.69 and shipped them to different customers in the U.S.== | Ex. 11 (Chou Depo Tr. Vol. II) at 174:20-175:15, 176:21-177:19, 178:1-179:9. Ex. 27 (Chou Depo Ex. 128). Ex. 56 (Chou Depo Ex. 164) |
| 77. | JLI's investigator received a total of 118 counterfeit JUUL Starter Kits (SKU No. CJXFZNZN00104) from Defendants in 2020. | Ex. 10 (Chou Depo Tr. Vol. I) at 70:7-23. *See* Ex. 20 (Chou Depo Ex. 121), p. 5. Declaration of Matthew Hewlett ("Hewlett Decl.") ¶ 17. Ex. 1 (ECF No. 90-1) ¶ 40. |

| UNCONTROVERTED FACTS | | |
|---|---|---|
| No. | UNDISPUTED FACT | SUPPORTING EVIDENCE |
|  |  | 47-48, 54. |
| 78. | Both the data generated from Defendants' system and the data compiled by Defendants' warehouse personnel show that two units of JUUL Starter Kits (SKU No. CJXFZNZN00104) were received by Defendants' China warehouse in March 2021. | Ex. 10 (Chou Depo Tr. Vol. I) at 104:1-14; 111:5-112:11; 113: 5-9 (stopping at "down"); 113:17-22. <br><br> Ex. 23 (Chou Depo Ex. 124), pp. 1-3. |
| 79. | Defendants claim they cannot account for or explain what happened to the two units of JUUL Starter Kits (SKU No. CJXFZNZN00104) they received in March 2021 to their China warehouse. | Ex. 10 (Chou Depo Tr. Vol. I) at 113:17-24. |
| 80. | In January 2019, Defendants purchased 15 units of JUUL-branded USB Chargers (SKU No. CJXFLPCD00042) from supplier Shiyan Sai Baoan District Shenzhen, which Defendants shipped to customers. | Ex. 10 (Chou Depo Tr. Vol. I) at 90:12-19; 93:22-95:4. <br><br> Ex. 21 (Chou Depo Ex. 122), p. 2. |
| 81. | In October 2019, Defendants purchased 10 units of JUUL-branded USB Chargers (SKU No. CJXFLPCD00042) from supplier Shiyan Sai Baoan District Shenzhen, which Defendants shipped to customers. | Ex. 10 (Chou Depo Tr. Vol. I at 90:12-19; 93:22-95:4. <br><br> Ex. 21 (Chou Depo Ex. 122), p. 2. |
| 82. | In December 2019, Defendants purchased 20 units of JUUL USB Chargers (SKU No. CJXFLPCD00042) from supplier Shenzhen City Yisimo Technologies Company Limited, which Defendants shipped to customers. | Ex. 10 (Chou Depo Tr. Vol. I at 90:12-19; 95:14-96:16. <br><br> Ex. 21 (Chou Depo Ex. 122), p. 3. |
| 83. | Data compiled by Defendants' warehouse personnel shows that from January 2019 until March 2021, Defendants received 55 units of the JUUL USB Chargers (SKU No. | Ex. 10 (Chou Depo Tr. Vol. I) at 104:1-14; 108:14-23; 111:19-112:6. <br><br> Ex. 23 (Chou Depo Ex. 124), |

STATEMENT OF UNDISPUTED MATERIAL FACTS ISO JUUL'S MOTION FOR RECONSIDERATION/MOTION FOR SUMMARY JUDGMENT

| UNCONTROVERTED FACTS | | |
|---|---|---|
| No. | UNDISPUTED FACT | SUPPORTING EVIDENCE |
| | CJXFLPCD00042) at their China warehouse. | pp. 1-2. |
| 84. | Data generated by Defendants' system shows that from January 2019 until March 2021, Defendants received 55 units of the JUUL USB Chargers (SKU No. CJXFLPCD00042) to their China warehouse. | Ex. 10 (Chou Depo Tr. Vol. I) at 104:1-14; 111:19-112:6; 119:11-19. Ex. 23 (Chou Depo Ex. 124), p. 5. |
| 85. | From January 20, 2019 until February 14, 2019, Defendants sold 7 units of counterfeit JUUL USB Chargers to Nour Chaaban for a price per unit of $1.00 and shipped them to different customers in the U.S. | Ex. 11 (Chou Depo Tr. Vol. II) at 174:20-175:15, 176:21-177:19, 178:1-179:9. Ex. 27 (Chou Depo Ex. 128). |
| 86. | From January 18, 2019 until April 23, 2021, Defendants listed for sale JUUL USB Chargers (SKU No. CJXFLPCD00042) on the CJ website. | Ex. 11 (Chou Depo Tr. Vol. II) at 156:20-157:10; 158:22-159:8. Ex. 25 (Chou Depo Ex. 126), p. 1. |
| 87. | Defendants' IT department created the webpage for the JUUL USB Chargers (SKU No. CJXFLPCD00042) on the CJ website. | Ex. 11 (Chou Depo Tr. Vol. II) at 222:25-223:4. |
| 88. | On or around October 7, 2019, the webpage listing for JUUL USB Chargers (SKU No. CJXFLPCD00042) on Defendants' website showed inventory of 1,841 units in Defendants' China warehouse. | Ex. 11 (Chou Depo Tr. Vol. II at 221:18-25; 223:5-8. Ex. 32 (Chou Depo Ex. 135). |
| 89. | At another point in time, the webpage listing for JUUL USB Chargers (SKU No. CJXFLPCD00042) on Defendants' website showed inventory of 1,843 units in Defendants' China warehouse. | Ex. 11 (Chou Depo Tr. Vol. II) at 228:1-229:7. Ex. 35 (Chou Depo Ex. 138), p. 1. |

| UNCONTROVERTED FACTS | | |
|---|---|---|
| **No.** | **UNDISPUTED FACT** | **SUPPORTING EVIDENCE** |
| | | Ex. 1 (ECF No. 90-1) ¶ 39. |
| 90. | Sometime after October 2019, one of Defendants' employees updated the inventory number listed on the webpage listing for JUUL USB Chargers (SKU No. CJXFLPCD00042) on Defendants' website. | Ex. 11 (Chou Depo Tr. Vol. II) at 229:9-18. *Compare* Ex. 32 (Chou Depo Ex. 135), *with* Ex. 35 (Chou Depo Ex. 138), p. 1. |
| 91. | Defendants delisted the JUUL USB Chargers (SKU No. CJXFLPCD00042) from www.cjdropshiping.com because Defendants received notice of this lawsuit. | Ex. 11 (Chou Depo Tr. Vol. II) at 159:9-11; 229:19-24. |
| 92. | ==Data generated by Defendants' system shows that from January 2019 until October 2019, 12 units of the JUUL USB Chargers (SKU No. CJXFLPCD00042) shipped from their China warehouse.== | Ex. 10 (Chou Depo Tr. Vol. I) at 104:1-14; 111:19-112:6; 120:19-121:1. Ex. 23 (Chou Depo Ex. 124), p. 6. |
| 93. | In November 2019, JLI's investigator received 5 counterfeit JUUL USB Chargers (SKU No. CJXFLPCD00042) from Defendants. | *See* Ex. 20 (Chou Depo Ex. 121), p. 5. Hewlett Decl. ¶ 9. Ex. 1 (ECF No. 90-1) ¶ 40. |
| 94. | Two units of the JUUL USB Chargers (SKU No. CJXFLPCD00042) did not leave Defendants' warehouse until June 2021. | Ex. 10 (Chou Depo Tr. Vol. I) at 104:1-14; 108:24-109:2. Ex. 23 (Chou Depo Ex. 124), pp. 1-2. |
| 95. | Defendants' records show that two units of the JUUL USB Chargers (SKU No. CJXFLPCD00042) were still in Defendants' inventory as of May 2021, after the Court had ordered Defendants to "sequester and deliver to counsel for JLI all | Ex. 10 (Chou Depo Tr. Vol. I) at 104:1-14; 106:24-107:15. Ex. 23 (Chou Depo Ex. 124), |

| | UNCONTROVERTED FACTS | |
|---|---|---|
| **No.** | **UNDISPUTED FACT** | **SUPPORTING EVIDENCE** |
| | JUUL-marked products or products advertised using the JUUL Marks in their inventory, possession, custody, or control," yet they failed to produce any of them. | pp. 1-2.<br><br>Ex. 3 (ECF No. 31) pp. 29-30. |
| 96. | Defendant Chou claimed Defendants did not have any JUUL products in their inventory but did not personally check any of Defendants' warehouses. | Ex. 10 (Chou Depo Tr. Vol. I) at 110:14-111:4. |
| 97. | The first and last sales of JUUL Starter Kits and JUUL USB Chargers on the CJ website were January 20, 2019 and April 8, 2020, respectively. | Ex. 10 (Chou Depo Tr. Vol. I) at 70:7-23.<br><br>Ex. 12 (Chou Depo Tr. Vol. III) at 257:13-259:3; 259:19-263:17.<br><br>*See* Ex. 20 (Chou Depo Ex. 121), p. 5.<br><br>Ex. 36 (Chou Depo Ex. 143).<br><br>Ex. 37 (Chou Depo Ex. 144), p. 5. |
| 98. | JLI's investigator purchased JUUL Starter Kits (SKU No. CJXFZNZN00104) and JUUL USB Chargers (SKU No. CJXFLPCD00042) on the CJ website in October 2019, December 2019, March 2020, and April 2020. | Ex. 10 (Chou Depo Tr. Vol. I) at 70:7-23;<br><br>Ex. 12 (Chou Depo Tr. Vol. III) at 263:25-265:10.<br><br>Ex. 20 (Chou Depo Ex. 121), p. 5. |
| 99. | JLI's investigators received counterfeit JUUL Starter Kits and counterfeit JUUL USB Chargers from Defendants between November 2019 and August 2020. | Hewlett Decl. ¶¶ 8-15<br><br>Ex. 73 (ECF No. 90-1) ¶¶ 40, 48, 54. |
| 100. | In December 2018 and January 2019, Defendants purchased 80 units of JUUL | Ex. 10 (Chou Depo Tr. Vol. I) at 98:18-99:1; 101:14- |

| UNCONTROVERTED FACTS | | |
|---|---|---|
| **No.** | **UNDISPUTED FACT** | **SUPPORTING EVIDENCE** |
| | Portable Chargers (aka "JUUL travel charger") (SKU No. CJXFLPCD00038) from supplier Shenzhen City Yifangda Technologies Company Limited. | 102:19.<br><br>Ex. 22 (Chou Depo Ex. 123), pp. 4-6. |
| 101. | In December 2018 and January 2019, Defendants received 80 units of the JUUL Portable Chargers (aka "JUUL travel charger") (SKU No. CJXFLPCD00038) at one of their warehouses. | Ex. 11 (Chou Depo Tr. Vol. II at 137:4-16; 138:21-139:11; 142:12-17; 145:15-146:1; 179:25-180:7.<br><br>Ex. 24 (Chou Depo Ex. 125), pp. 2-3. |
| 102. | From December 21, 2018 until April 23, 2021, Defendants listed for sale JUUL Portable Chargers (aka "JUUL travel charger") (SKU No. CJXFLPCD00038) on CJ. | Ex. 11 (Chou Depo Tr. Vol. II) at 165:5-15; 167:1-7; 168:1-16; 228:1-13; 233:10-19; 234:20-235:4; 235:6.<br><br>Ex. 26 (Chou Depo Ex. 127), p. 2.<br><br>Ex. 35 (Chou Depo Ex. 138), p. 4. |
| 103. | Defendants delisted JUUL Portable Chargers (aka "JUUL travel charger") (SKU No. CJXFLPCD00038) from CJ on April 23, 2021 in response to receiving notice of this lawsuit. | Ex. 11 (Chou Depo Tr. Vol. II) at 168:7-16. |
| 104. | Defendants did not preserve or produce any screenshots of the listings of the JUUL Portable Chargers (aka "JUUL travel charger") (SKU No. CJXFLPCD00038). | Ex. 11 (Chou Depo Tr. Vol. II) at 168:18-169:14; 169:2-14.<br><br>Ex. 15 (Lee Depo Tr.) at 18:2-8; 70:6-14; 105:16-25.<br><br>Ex. 88, RFP No. 6.<br><br>ECF No. 123-1, p. 11. |

STATEMENT OF UNDISPUTED MATERIAL FACTS ISO JUUL'S MOTION FOR RECONSIDERATION/MOTION FOR SUMMARY JUDGMENT

| | UNCONTROVERTED FACTS | |
|---|---|---|
| **No.** | **UNDISPUTED FACT** | **SUPPORTING EVIDENCE** |
| | | ECF No. 128-1, p. 10. |
| 105. | At one point in time, the listing for JUUL Portable Chargers (aka "JUUL travel charger") (SKU No. CJXFLPCD00038) on Defendants' website listed inventory of 3,197 units in Defendants' China warehouse. | Ex. 11 (Chou Depo Tr. Vol. II) at 228:1-13; 234:20-235:4; 235:6.<br><br>Ex. 35 (Chou Depo Ex. 138), p. 3. |
| 106. | Data compiled by Defendants' warehouse personnel and Defendants' sales records show that in December 2018 and January, 2019, Defendants sold 62 units of the JUUL Portable Chargers (aka "JUUL travel charger") (SKU No. CJXFLPCD00038) to Nour Chaaban and shipped them from their China warehouse to different customers, mostly in the U.S. | Ex. 10 (Chou Depo Tr. Vol. I) at 111:5-112:1.<br><br>Ex. 11 (Chou Depo Tr. Vol. II) at 137:4-16; 142:18-22; 142:18-143:11 (stop at "yes"); 179:13-183:21.<br><br>Ex. 28 (Chou Depo Ex. 129), p. 1.<br><br>Ex. 57 (Chou Depo Ex. 165).<br><br>Ex. 24 (Chou Depo Ex. 125), p. 3. |
| 107. | Data generated by Defendants' system show only eight units of the JUUL Portable Chargers (aka "JUUL travel charger") (SKU No. CJXFLPCD00038) being shipped out in December 2018 and January, 2019. | Ex. 10 (Chou Depo Tr. Vol. I) at 111:5-112:1;<br><br>Ex. 11 (Chou Depo Tr. Vol. II) at 137:4-16; 138:21-139:15; 149:6-15.<br><br>Ex. 24 (Chou Depo Ex. 125), p. 4. |
| 108. | The JUUL Portable Chargers (aka "JUUL travel charger") (SKU No. CJXFLPCD00038) advertised, offered for sale and sold on Defendants' website were all counterfeit. | Ex. 11 (Chou Depo Tr. Vol. II at 134:9-10; 134:12; 233:10-19; 234:2-7. |

STATEMENT OF UNDISPUTED MATERIAL FACTS ISO JUUL'S MOTION FOR
RECONSIDERATION/MOTION FOR SUMMARY JUDGMENT

| UNCONTROVERTED FACTS | | |
|---|---|---|
| No. | UNDISPUTED FACT | SUPPORTING EVIDENCE |
| 109. | Defendants' records show 18 units of the JUUL Portable Chargers (aka "JUUL travel charger") (SKU No. CJXFLPCD00038) remained in Defendants' inventory from January 2019 through at least October 2021, six months after the Court ordered Defendants to "sequester and deliver to counsel for JLI all JUUL-marked products or products advertised using the JUUL Marks in their inventory, possession, custody, or control," yet they failed to produce any of them. | Ex. 11 (Chou Depo Tr. Vol. II) at 137:4-16; 140:17-142:1; 143:7-11 (stop at "yes"). <br><br> Ex. 24 (Chou Depo Ex. 125), p. 1. <br><br> Ex. 11 (Chou Depo Tr. Vol. II) at pp. 29-30. |
| 110. | Defendants claim they do not possess any units or pictures of the JUUL Portable Chargers (aka "JUUL travel charger") (SKU No. CJXFLPCD00038). | Ex. 11 (Chou Depo Tr. Vol. II) at 136:17. |
| 111. | In November 2018, Defendants purchased 19 units of JUUL Charging Boxes (aka "Portable Universal JUUL Charging Case") (SKU No. CJJJJTJT00645) from supplier Shenzhen Renke Technologies Company Limited. | Ex. 10 (Chou Depo Tr. Vol. I) at 98:18-99:8; 99:11-17; 99:20-101:13. <br><br> Ex. 22 (Chou Depo Ex. 123), pp. 1-4. |
| 112. | In November 2018, Defendants received 18 units of the JUUL Charging Boxes (aka "Portable Universal JUUL Charging Case") (SKU No. CJJJJTJT00645) at one of their warehouses. | Ex. 11 (Chou Depo Tr. Vol. II) at 137:4-16; 150:18-151:13. <br><br> Ex. 24 (Chou Depo Ex. 125), p. 5. |
| 113. | In November and December 2018 and March 2019, Defendants sold 17 units of the JUUL Charging Boxes (aka "Portable Universal JUUL Charging Case") (SKU No. CJJJJTJT00645) to Khalid Alameri and Nour Chaaban, and shipped them to different customers in the U.S. | Ex. 11 (Chou Depo Tr. Vol. II at 179:13-24; 184:12-185:17. <br><br> Ex. 28 (Chou Depo Ex. 129), p. 2. <br><br> Ex. 57 (Chou Depo Ex. 165). |

STATEMENT OF UNDISPUTED MATERIAL FACTS ISO JUUL'S MOTION FOR RECONSIDERATION/MOTION FOR SUMMARY JUDGMENT

| | UNCONTROVERTED FACTS | |
|---|---|---|
| **No.** | **UNDISPUTED FACT** | **SUPPORTING EVIDENCE** |
| 114. | Data compiled by Defendants' warehouse personnel shows that from December 2018 and March 2019. Defendants shipped 17 units of JUUL Charging Boxes (aka "Portable Universal JUUL Charging Case") (SKU No. CJJJJTJT00645) from their China warehouse. | Ex. 10 (Chou Depo Tr. Vol. I) at 111:5-112:1.<br><br>Ex. 24 (Chou Depo Ex. 125), p. 2. |
| 115. | Data generated by Defendants' system show only eight units of the JUUL Charging Boxes (aka "Portable Universal JUUL Charging Case") (SKU No. CJJJJTJT00645) being shipped in December 2018 and March 2019. | Ex. 10 (Chou Depo Tr. Vol. I) at 111:5-112:1.<br><br>Ex. 11 (Chou Depo Tr. Vol. II) at 137:4-16; 155:4-13.<br><br>Ex. 24 (Chou Depo Ex. 125), p. 6. |
| 116. | From September 5, 2018 until April 23, 2021, Defendants listed for sale JUUL Charging Boxes (aka "Portable Universal JUUL Charging Case") (SKU No. CJJJJTJT00645) on CJ. | Ex. 11 (Chou Depo Tr. Vol. II) at 165:5-24; 168:7-16.<br><br>Ex. 26 (Chou Depo Ex. 127), p. 1. |
| 117. | Defendants delisted JUUL Charging Boxes (aka "Portable Universal JUUL Charging Case") (SKU No. CJJJJTJT00645) from CJ on April 23, 2021 in response to receiving notice of this lawsuit. | Ex. 11 (Chou Depo Tr. Vol. II) at 168:12-16 ("all products related to the JUUL brand"). |
| 118. | Defendants did not preserve or produce any screenshots of the listings of the JUUL Charging Boxes (aka "Portable Universal JUUL Charging Case") (SKU No. CJJJJTJT00645). | Ex. 11 (Chou Depo Tr. Vol. II) at 168:18-169:14; 169:2-14.<br><br>Ex. 15 (Lee Depo Tr.) at 18:2-8; 70:6-14; 105:16-25.<br><br>Ex. 88, RFP No. 6.<br><br>ECF No. 123-1, p. 11. |

| UNCONTROVERTED FACTS | | |
|---|---|---|
| **No.** | **UNDISPUTED FACT** | **SUPPORTING EVIDENCE** |
| | | ECF No. 128-1, p. 10. |
| 119. | The JUUL Charging Boxes (aka "Portable Universal JUUL Charging Case") (SKU No. CJJJJTJT00645) advertised, offered for sale, and sold on Defendants' website were all counterfeit. | Ex. 10 (Chou Depo Tr. Vol. I) at 98:18-99:8; (Chou Depo Tr. Vol. II) 133:8-15, 133:17-18 (ending with "products"); 133:23-134:1.<br><br>Ex. 22 (Chou Depo Ex. 123), pp. 1-4. |
| 120. | Defendants' records show 1 unit of the JUUL Charging Boxes (aka "Portable Universal JUUL Charging Case") (SKU No. CJJJJTJT00645) remained in Defendants' inventory from March 2019 through at least October 2021, six months after the Court ordered Defendants to "sequester and deliver to counsel for JLI all JUUL-marked products or products advertised using the JUUL Marks in their inventory, possession, custody, or control," yet they failed to produce any of them. | Ex. 11 (Chou Depo Tr. Vol. II) at 137:4-16; 140:17-142:1; 143:7-11 (stop at "yes").<br><br>Ex. 24 (Chou Depo Ex. 125), p. 1.<br><br>Ex. 3 (ECF No. 31) pp. 29-30. |
| 121. | Defendants claim they do not possess any units or pictures of the JUUL Charging Boxes (aka "Portable Universal JUUL Charging Case") (SKU No. CJJJJTJT00645). | Ex. 11 (Chou Depo Tr. Vol. II) at 134:14-17. |
| 122. | In January 2019, Defendants sourced Universal Magnetic JUUL USB Charging Cables (SKU No. CJXFLPCD00039). | Ex. 11 (Chou Depo Tr. Vol. II) at 211:6-15; 124:1-12.<br><br>Ex. 30 (Chou Depo Ex. 133), line 164. |
| 123. | From January 4, 2019 until April 23, 2021, Defendants listed for sale Universal | Ex. 11 (Chou Depo Tr. Vol. II) at 165:5-15; 167:8-12; 167:14; 167:16-18;167:24; 168:7-16; 228:1-13; 234:20- |

| UNCONTROVERTED FACTS | | |
|---|---|---|
| **No.** | **UNDISPUTED FACT** | **SUPPORTING EVIDENCE** |
| | Magnetic JUUL USB Charging Cables (SKU No. CJXFLPCD00039) on CJ. | 235:6. Ex. 26 (Chou Depo Ex. 127), pp. 2-3. Ex. 35 (Chou Depo Ex. 138), p. 2. |
| 124. | At one point in time, the listing for Universal Magnetic JUUL USB Charging Cables (SKU No. CJXFLPCD00039) on Defendants' website listed inventory of 10,000 units in Defendants' China warehouse. | Ex. 11 (Chou Depo Tr. Vol. II) at 228:1-13; 234:20-235:4; 235:6. Ex. 35 (Chou Depo Ex. 138), p. 2. |
| 125. | Defendants delisted Universal Magnetic JUUL USB Charging Cables (SKU No. CJXFLPCD00039) from CJ on April 23, 2021 in response to receiving notice of this lawsuit. | Ex. 11 (Chou Depo Tr. Vol. II) at 168:12-16 ("all products related to the JUUL brand"). |
| 126. | Defendants did not preserve or produce any screenshots of the listings, nor any units, of the Universal Magnetic JUUL USB Charging Cable (SKU No. CJXFLPCD00039). | Ex. 11 (Chou Depo Tr. Vol. II) at 168:18-169:14; 169:2-14. Ex. 15 (Lee Depo Tr.) at 18:2-8; 70:6-14; 105:16-25. |
| 127. | The Universal Magnetic JUUL USB Charging Cables (SKU No. CJXFLPCD00039) advertised and offered for sale on Defendants' website were counterfeit. | Ex. 11 (Chou Depo Tr. Vol. II) at 214:13-17; 214:19-20; 230:4-15. |
| 128. | In January 2019, Defendants sourced JUUL Skin Stickers (SKU No. CJSJSJPB00020). | Ex. 11 (Chou Depo Tr. Vol. II) at 211:6-15; 213:15-21. Ex. 30 (Chou Depo Ex. 133), line 163. |

STATEMENT OF UNDISPUTED MATERIAL FACTS ISO JUUL'S MOTION FOR
RECONSIDERATION/MOTION FOR SUMMARY JUDGMENT

| UNCONTROVERTED FACTS | | |
|---|---|---|
| No. | UNDISPUTED FACT | SUPPORTING EVIDENCE |
| 129. | From January 4, 2019 until April 23, 2021, Defendants listed for sale JUUL Skin Stickers (SKU No. CJSJSJPB00020) on CJ. | Ex. 11 (Chou Depo Tr. Vol. II) at 165:5-15; 166:9-12; 168:7-16.<br><br>Ex. 26 (Chou Depo Ex. 127), p. 1. |
| 130. | Defendants delisted JUUL Skin Stickers (SKU No. CJSJSJPB00020) from CJ on April 23, 2021 in response to receiving notice of this lawsuit. | Ex. 11 (Chou Depo Tr. Vol. II) at 168:12-16 ("all products related to the JUUL brand"). |
| 131. | Defendants did not preserve or produce any screenshots of the listings of the JUUL Skin Stickers (SKU No. CJSJSJPB00020). | Ex. 11 (Chou Depo Tr. Vol. II) at 168:18-169:14; 169:2-14.<br><br>Ex. 15 (Lee Depo Tr.) at 18:2-8; 70:6-14; 105:16-25.<br><br>Ex. 88, RFP No. 6.<br><br>ECF No. 123-1, p. 11.<br><br>ECF No. 128-1, p. 10. |
| 132. | The JUUL Skin Stickers (SKU No. CJSJSJPB00020) advertised and offered for sale on Defendants' website were counterfeit. | Ex. 11 (Chou Depo Tr. Vol. II) at 214:13-20. |
| 133. | In January 2019, Defendants sourced JUUL Mobile Phone Cases (SKU No. CJSJSJSJ00464). | Ex. 11 (Chou Depo Tr. Vol. II) at 211:6-15; 213:5-11.<br><br>Ex. 30 (Chou Depo Ex. 133), line 162. |
| 134. | From January 4, 2019 until April 23, 2021, Defendants listed for sale JUUL Mobile | Ex. 11 (Chou Depo Tr. Vol. II) at 165:5-15; 166:13-17; 166:19-25; 168:7-16; |

STATEMENT OF UNDISPUTED MATERIAL FACTS ISO JUUL'S MOTION FOR RECONSIDERATION/MOTION FOR SUMMARY JUDGMENT

| UNCONTROVERTED FACTS | | |
|---|---|---|
| No. | UNDISPUTED FACT | SUPPORTING EVIDENCE |
| | Phone Cases (SKU No. CJSJSJSJ00464) on CJ. | 213:12-14. Ex. 26 (Chou Depo Ex. 127), pp. 1-2. |
| 135. | Defendants delisted JUUL Mobile Phone Cases (SKU No. CJSJSJSJ00464) from CJ on April 23, 2021 in response to receiving notice of this lawsuit. | Ex. 11 (Chou Depo Tr. Vol. II) at 168:12-16 ("all products related to the JUUL brand"). |
| 136. | Defendants did not preserve or produce any screenshots of the listings of the JUUL Mobile Phone Cases (SKU No. CJSJSJSJ00464). | Ex. 11 (Chou Depo Tr. Vol. II) at 168:18-169:14; 169:2-14. Ex. 15 (Lee Depo Tr.) at 18:2-8; 70:6-14; 105:16-25. Ex. 88, RFP No. 6. ECF No. 123-1, p. 11. ECF No. 128-1, p. 10. |
| 137. | The JUUL Mobile Phone Cases (SKU No. CJSJSJSJ00464) advertised and offered for sale on Defendants' website were counterfeit. | Ex. 11 (Chou Depo Tr. Vol. II) at 214:13-20. |
| 138. | Defendants did not do anything to preserve the listing webpages for any of the JUUL-branded products from CJ. | Ex. 11 (Chou Depo Tr. Vol. II) at 168:18-169:14; 169:2-14. Ex. 15 (Lee Depo Tr.) at 18:2-8; 70:6-14; 105:16-25. Ex. 88, RFP No. 6. ECF No. 123-1, p. 11. ECF No. 128-1, p. 10. |

| UNCONTROVERTED FACTS | | |
|---|---|---|
| **No.** | **UNDISPUTED FACT** | **SUPPORTING EVIDENCE** |
| 139. | Defendants did not produce any photographs or units of any of the counterfeit JUUL products they sourced, advertised, offered for sale, sold, or distributed on their website. | Wilkins Decl. ¶__. |
| 140. | Defendants' inventory records are not reliable due to irregular practices by the warehouse. | Ex. 10 (Chou Depo Tr. Vol. I) at 109:13-24; 111:19-112:6; 114:8-18.<br><br>Ex. 11 (Chou Depo Tr. Vol. II) at 143:2-5; 146:2-24; 149:16-23; 155:14-156:16. |
| 141. | Defendants cannot account for certain inventory of JUUL-branded products. | Ex. 10 (Chou Depo Tr. Vol. I) at 107:16-108:13; 113:23-24; 114: 19-116:11.<br><br>Ex. 11 (Chou Depo Tr. Vol. II) at 146:2-24; 149:16-23; 155:14-156:16; 183:22-184:3. |
| **PREVIOUS CONVICTIONS AND LAWSUITS AGAINST DEFENDANTS FOR COUNTERFEITING** | | |
| 142. | In 2010, Defendant Chou was convicted of conspiracy for producing and selling hundreds of thousands of toys that infringed on a copywritten character, and was sentenced to four years in jail in China. | Ex. 10 (Chou Depo Tr. Vol. I) at 81:17-82:13; 83:5-13; 83:23-84:3.<br><br>Exs. 86-87.<br><br>RJN ¶¶ 14-15.<br><br>Ex. 1 (ECF No. 90-1) ¶ 88. |
| 143. | On January 17, 2017, H-D U.S.A., LLC ("Harley-Davidson") sued Defendant Yiwu Cute Jewelry Co., Ltd. for counterfeiting, in Case No. 17-cv-00339. | Ex. 12 (Chou Depo Tr. Vol. III) at 286:1-287:1. |

| UNCONTROVERTED FACTS | | |
|---|---|---|
| **No.** | **UNDISPUTED FACT** | **SUPPORTING EVIDENCE** |
| | | Ex. 45 (Chou Depo Ex. 152). Ex. 74. RJN ¶¶ 2. |
| 144. | In Case No. 17-cv-00339, on March 6, 2017, Defendant Yiwu Cute Jewelry Co., Ltd. was found to have offered for sale products using counterfeit versions of Harley-Davidson trademarks, found liable for willful trademark infringement and counterfeiting, false designation of origin, and deceptive trade practices, permanently enjoined from infringing on Harley-Davidson's trademarks, and judgment was entered in favor of Harley-Davidson and against Defendant Yiwu Cute Jewelry Co., Ltd. in the amount of $2,000,000 in statutory damages for willful counterfeiting. | Ex. 12 (Chou Depo Tr. Vol. III) at 272:10-12; 273:5-15; 273:20-24. Ex. 38(Chou Depo Ex. 145). Ex. 75. RJN ¶ 3. |
| 145. | On May 30, 2018 and June 1, 2018, Lynn Lee, Defendant Chou's wife emailed Harley-Davidson's counsel acknowledging receipt of notice of the lawsuit for Case No. 17-cv-00339. | Ex. 12 (Chou Depo Tr. Vol. III) at 279:4-280:8. Ex. 44 (Chou Depo Ex. 151.) |
| 146. | On November 6, 2021, Defendant Yiwu Cute Jewelry Co., Ltd. settled with Harley-Davidson in Case No. 17-cv-00339 for $7,500. | Ex. 12 (Chou Depo Tr. Vol. III) at 286:1-287:1; 288:9-17. Ex. 45 (Chou Depo Ex. 152). |
| 147. | On February 13, 2017, Chrome Hearts LLC ("Chrome Hearts") sued Defendant Yiwu Cute Jewelry Co., Ltd. for counterfeiting, in Case No. 17-cv-01109. | Ex. 12 (Chou Depo Tr. Vol. III) at 287:7-18. Ex. 46 (Chou Depo Ex. 153). Ex. 76. RJN ¶ 4. |

| | UNCONTROVERTED FACTS | |
|---|---|---|
| No. | UNDISPUTED FACT | SUPPORTING EVIDENCE |
| 148. | On March 11, 2017, one of Defendants' employees responded to an email from Chrome Hearts's counsel serving Defendants with the Amended Complaint and Injunction in Case No. 17-cv-01109. | Ex. 12 (Chou Depo Tr. Vol. III) at 267:17-279:1.<br><br>Ex. 43 (Chou Depo Ex. 150). |
| 149. | In Case No. 17-cv-01109, on April 19, 2017, Defendant Yiwu Cute Jewelry Co., Ltd. was found to have offered for sale products using counterfeit versions of Chrome Hearts trademarks, found liable for willful trademark infringement and counterfeiting, false designation of origin, and deceptive trade practices, permanently enjoined from infringing on Chrome Hearts's trademarks, and judgment was entered in favor of Chrome Hearts and against Defendant Yiwu Cute Jewelry Co., Ltd. in the amount of $200,000 in statutory damages for willful counterfeiting. | Ex. 12 (Chou Depo Tr. Vol. III) at 274:2-7; 274:15-21; 274:25.<br><br>Ex. 39 (Chou Depo Ex. 146).<br><br>Ex. 77.<br><br>RJN ¶ 5. |
| 150. | On November 6, 2021, Defendant Yiwu Cute Jewelry Co., Ltd. settled with Chrome Hearts in Case No. 17-cv-01109 for $8,882.08. | Ex. 12 (Chou Depo Tr. Vol. III) at 287:7-288:10; 288:14-17.<br><br>Ex. 46 (Chou Depo Ex. 153). |
| 151. | On June 16, 2017, Chrome Hearts sued Defendant Yiwu Cute Jewelry Co., Ltd. for counterfeiting, in Case No. 17-cv-04536. | Ex. 12 (Chou Depo Tr. Vol. III) at 288:18-289:4.<br><br>Ex. 47 (Chou Depo Ex. 154).<br><br>Ex. 78.<br><br>RJN ¶ 6. |
| 152. | In Case No. 17-cv-04536, on August 2, 2017, Defendant Yiwu Cute Jewelry Co., Ltd. was found to have offered for sale products using counterfeit versions of | Ex. 12 (Chou Depo Tr. Vol. III) at 275:1-13. |

| No. | UNDISPUTED FACT | SUPPORTING EVIDENCE |
|---|---|---|
| UNCONTROVERTED FACTS |||

| No. | UNDISPUTED FACT | SUPPORTING EVIDENCE |
|---|---|---|
| | Chrome Hearts trademarks, found liable for willful trademark infringement and counterfeiting, false designation of origin, and deceptive trade practices, permanently enjoined from infringing on Chrome Hearts's trademarks, and judgment was entered in favor of Chrome Hearts and against Defendant Yiwu Cute Jewelry Co., Ltd. in the amount of $1,000,000 in statutory damages for willful counterfeiting. | Ex. 40 (Chou Depo Ex. 147). Ex. 79. RJN ¶ 7. |
| 153. | On November 6, 2021, Defendant Yiwu Cute Jewelry Co., Ltd. settled with Chrome Hearts in Case No. 17-cv-04536 for $7,500. | Ex. 12 (Chou Depo Tr. Vol. III) at 288:18-289:4; 290:15-291:3. Ex. 47 (Chou Depo Ex. 154). |
| 154. | On May 28, 2019, Harley-Davidson sued Defendant Yiwu Cute Jewelry Co., Ltd. for counterfeiting, in Case No. 19-cv-03546. | Ex. 12 (Chou Depo Tr. Vol. III) at 292:15-293:3. Ex. 48 (Chou Depo Ex. 155). Ex. 80. RJN ¶ 8. |
| 155. | In Case No. 19-cv-03546, on August 14, 2019, Defendant Yiwu Cute Jewelry Co., Ltd. was found to have offered for sale products using counterfeit versions of Harley-Davidson trademarks, found liable for willful trademark infringement and counterfeiting, false designation of origin, and deceptive trade practices, permanently enjoined from infringing on Harley-Davidson's trademarks, and judgment was entered in favor of Harley-Davidson and against Defendant Yiwu Cute Jewelry Co., | Ex. 12 (Chou Depo Tr. Vol. III) at 280:11-24. Ex. 41 (Chou Depo Ex. 148). Ex. 81. RJN ¶ 9. |

STATEMENT OF UNDISPUTED MATERIAL FACTS ISO JUUL'S MOTION FOR RECONSIDERATION/MOTION FOR SUMMARY JUDGMENT

| UNCONTROVERTED FACTS | | |
|---|---|---|
| **No.** | **UNDISPUTED FACT** | **SUPPORTING EVIDENCE** |
| | Ltd. in the amount of $200,000 in statutory damages for willful counterfeiting. | |
| 156. | On November 6, 2021, Defendant Yiwu Cute Jewelry Co., Ltd. settled with Harley-Davidson in Case No. 19-cv-03546 for $7,621.92. | Ex. 12 (Chou Depo Tr. Vol. III) at 292:15-293:12.<br><br>Ex. 48 (Chou Depo Ex. 155). |
| 157. | On October 3, 2019, Swarovski Aktiengesellschaft & Swaroski North America Limited ("Swarovski") sued "CJJewelry Dropshipping," which Defendants have admitted is their business, for counterfeiting in Case No. 19-cv-06568. | Ex. 12 (Chou Depo Tr. Vol. III) at 293:22-294:12.<br><br>Ex. 49 (Chou Depo Ex. 156).<br><br>Ex. 82.<br><br>RJN ¶ 10. |
| 158. | In Case No. 19-cv-06568, on December 13, 2019, Defendants were found to have offered for sale products using counterfeit versions of Swarovski trademarks, found liable for willful trademark infringement and counterfeiting, false designation of origin, and deceptive trade practices, permanently enjoined from infringing on Swarovksi's trademarks, and judgment was entered in favor of Swarovski and against Defendants in the amount of $250,000 in statutory damages for willful counterfeiting. | Ex. 12 (Chou Depo Tr. Vol. III) at 281:8-22.<br><br>Ex. 42 (Chou Depo Ex. 149).<br><br>Ex. 83.<br><br>RJN ¶ 11. |
| 159. | On November 6, 2021, Defendants settled with Swarovski in Case No. 19-cv-06568 for $15,000. | Ex. 12 (Chou Depo Tr. Vol. III) at 293:22-294:21.<br><br>Ex. 49 (Chou Depo Ex. 156). |
| 160. | On August 10, 2021, Converse, Inc. ("Converse") sued "CJDropShipping Store," which Defendants have admitted is their business, for counterfeiting in Case No. 21-cv-4260. | Ex. 12 (Chou Depo Tr. Vol. III) at 282:8-12; 297:1-18.<br><br>*See* Ex. 51 (Chou Depo Ex. |

| UNCONTROVERTED FACTS | | |
|---|---|---|
| **No.** | **UNDISPUTED FACT** | **SUPPORTING EVIDENCE** |
| | | 158) Ex. 84. RJN ¶ 12. |
| 161. | On January 25, 2022, Defendants settled with Converse in Case No. 21-cv-4260 for $2,500. | Ex. 12 (Chou Depo Tr. Vol. III) at 297:1-3; 297:12-298:20; 299:5-10; 299:17-18. Ex. 51 (Chou Depo Ex. 158). |
| 162. | On September 24, 2021, Luxottica Group S.p.A., ("Luxottica") sued Defendants Yiwu Cute Jewelry Co., Ltd., Lizhi Zhou, and the operator of website cjdropshipping.com for counterfeiting of Oakley trademarks, among others, in Case No. 21-cv-05078. | Ex. 12 (Chou Depo Tr. Vol. III) at 281:23-282:7; 331:10-13. *See* Ex.50 (Chou Depo Ex. 157). |
| 163. | On November 6, 2021, Defendants settled with Luxottica in Case No. 21-cv-05078 for $205,000, and agreed not to infringe on the Oakley trademarks. | Ex. 12 (Chou Depo Tr. Vol. III) at 295:1-19; 296:13-22; 333:14-25. Ex. 49 (Chou Depo Ex. 156). |
| 164. | On March 3, 2022, Oakley, Inc. ("Oakley") sued Defendants for counterfeiting in Case No. 22-cv-01140. | Ex. 12 (Chou Depo Tr. Vol. III) at 299:22-300:13; 301-5. Ex. 52 (Chou Depo Ex. 159). |
| 165. | Defendants are currently trying to negotiate a settlement with Oakley in Case No. 22-cv-01140. | Ex. 12 (Chou Depo Tr. Vol. III) at 339:19-341:21. |
| **DEFENDANTS' PURPORTED DATABASE OF BRANDS TO AVOID INFRINGING** | | |
| 166. | Defendants claim that since 2018, they have kept a database of well-known brand names to avoid infringing, and that had they | Ex. 12 (Chou Depo Tr. Vol. III) at 304:13-16. |

| UNCONTROVERTED FACTS | | |
|---|---|---|
| **No.** | **UNDISPUTED FACT** | **SUPPORTING EVIDENCE** |
| | known or otherwise learned of the JUUL brand before the present case, they would have stopped infringing. | Ex. 4 (ECF No. 51-1) (5/17/21 Chou Decl.) ¶¶ 21, 31.<br><br>Ex. 2 (ECF No. 51-15) (5/17/21 Wang Decl.) ¶¶ 8-10, 21. |
| 167. | Defendants claim to also keep a database with brand logos, which they claim that they use as a tool to try and avoid infringing trademarks. | Ex. 12 (Chou Depo Tr. Vol. III) at 336:16-337:3.<br><br>Ex. 55 (Chou Depo Ex. 163). |
| 168. | Within Defendants' sourcing department, Defendants claim Zeng Xiangcheng, Chen Yuan, He Xubin, Yang Liuqing, Jin Lulu, and Tie Zhu make up the "infringement inspection team," who source products for customers and are purportedly also responsible for checking for product brand names on Baidu, a major Chinese internet search engine, before it is listed on CJ and updating Defendants' database of well-known brand names. | Ex. 14 (Zeng's Depo Tr.) at 42:4-43:12; 49:7-9; 50:7-52:14. |
| 169. | In fact, Defendants' admit their purported database of well-known brands is not updated on a regular or periodical basis. | Ex. 12 (Chou Depo Tr. Vol. III) at 305:6-10.<br><br>Ex. 14 (Zeng's Depo Tr.) at 71:22-72:4. |
| 170. | Defendants purportedly added the Harley-Davidson, Converse, and Oakley brands to their database of well-known brand names on July 17, 2018. | Ex. 12 (Chou Depo Tr. Vol. III) at 306:16-307:12, 308:7-17; 315:18-316:7<br><br>Ex. 54 (Chou Depo Ex. 161) at entry 44, 253, and 312. |
| 171. | Defendants were sued by Harley-Davidson, and found liable for willful infringement | Ex. 12 (Chou Depo Tr. Vol. |

| UNCONTROVERTED FACTS | | |
|---|---|---|
| No. | UNDISPUTED FACT | SUPPORTING EVIDENCE |
| | and counterfeiting approximately a year after the Harley-Davidson brand was purportedly added to Defendants' database of well-known brand names. | III) at 320:10-18. |
| 172. | Defendants were sued by and settled with Converse for willful infringement and counterfeiting approximately three years after the Converse brand was purportedly added to Defendants' database of well-known brand names. | Ex. 12 (Chou Depo Tr. Vol. III) at 316:8-9; 316:14-16 (starting with "it"). |
| 173. | Defendants were sued by Oakley for willful infringement and counterfeiting approximately three years after the Oakley brand was purportedly added to Defendants' database of well-known brand names. | Ex. 12 (Chou Depo Tr. Vol. III) at 334:1-11. |
| 174. | Defendants were sued by Oakley for willful infringement and counterfeiting again just four months after settling with Luxottica and agreeing not to infringe on the Oakley trademarks. | Ex. 12 (Chou Depo Tr. Vol. III) at 334:1-11. |
| 175. | Defendants were sued by Oakley in March 2022, after the Oakley logo, including the Oakley oval, was purportedly added to Defendants' database of brand logos, sometime before February 2022. | Ex. 12 (Chou Depo Tr. Vol. III) at 337:4-338:6. *See* Ex. 55 (Chou Depo Ex. 163), p. 4. |
| 176. | Defendants purportedly added the Swarovski brand to their database of well-known brand names on January 29, 2021, approximately thirteen months after they were found liable for willful infringement and counterfeiting of the Swarovski brand. | Ex. 12 (Chou Depo Tr. Vol. III) at 305:13-25; 311:2-8. Ex. 53 (Chou Depo Ex. 160) at entry 149. |
| 177. | Defendants purportedly added the Chrome Hearts brand to their database of well-known brand names on August 22, 2021, approximately four years after they were | Ex. 12 (Chou Depo Tr. Vol. III) at 305:13-25; 308:10-17; 310:9-25. |

STATEMENT OF UNDISPUTED MATERIAL FACTS ISO JUUL'S MOTION FOR RECONSIDERATION/MOTION FOR SUMMARY JUDGMENT

| UNCONTROVERTED FACTS | | |
|---|---|---|
| **No.** | **UNDISPUTED FACT** | **SUPPORTING EVIDENCE** |
| | found liable for willful infringement and counterfeiting of the Chrome Hearts brand. | Ex. 53 (Chou Depo Ex. 160) at entry 399. |
| 178. | Defendants purportedly added the Luxottica brand to their database of well-known brand names on October 16, 2021. | Ex. 12 (Chou Depo Tr. Vol. III) at 305:13-25; 313:8-17.<br><br>Ex. 53 (Chou Depo Ex. 160) at entry 414. |
| 179. | Defendants admit they were at fault in failing to detect and avoid infringing logos and images that are registered trademarks. | Ex. 12 (Chou Depo Tr. Vol. III) at 335:1-11. |
| **ADDITIONAL EVIDENCE OF WILLFULNESS** | | |
| 180. | On or around October 20, 2020, the U.S. Department of Homeland Security ("DHS") visited Defendants' New Jersey warehouse. | Ex. 16 (Ye Depo Tr.) at 34:25-35:16.<br><br>Ex. 13 (Li Depo Tr.) at 184:6-9; 184:17-185:6.<br><br>*See* Ex._ (Ye Depo Ex. 15). |
| 181. | During their visit, the DHS agents identified the JUUL Starter Kits by SKU number to Leon Li and Keyin Ye, notified them that such products that Defendants were selling had "copyright" issues, and asked Defendants to send them the contact information for the manufacturer. | Ex. 16 (Kevin Depo Tr.) at 38:23-39:21.<br><br>Ex. 13 (Li Depo Tr.) at 184:17-185:6. |
| 182. | Mr. Ye notified Defendant Chou that DHS had visited the New Jersey warehouse and had asked for the contact information for the manufacturer of the e-cigarettes Defendants were selling. | Ex. 16 (Ye Depo Tr.) at 46:10-47:20; 48:22-49:11. |
| 183. | On October 21, 2020, Defendant Chou sent WeChat messages to a CJ employee with the user name "Fanfan" instructing them to | Ex. 11 (Chou Depo Tr. Vol. II) at 197:1-199:10; 200:3-8; |

| UNCONTROVERTED FACTS | | |
|---|---|---|
| No. | UNDISPUTED FACT | SUPPORTING EVIDENCE |
| | delist the JUUL Starter Kits (SKU No. CJXFZNZN00104) because "selling this was not allowed, is not allowed," and explaining that it was a "copycat brand." | 201:8-13; 205:11-16; 205:23. Ex. 29 (Chou Depo Ex. 131). |
| 184. | On October 21, 2020, Defendants sent an email to DHS identifying eboattimes as the e-cigarette manufacturer. | Ex. 16 (Ye Depo Tr.) at 35:23-37:10: 37:21-24. Ex. 16 (Ye Depo Ex. 15). |
| 185. | Defendants delisted the JUUL Starter Kits (SKU No. CJXFZNZN00104) from CJ on October 21, 2020 because of DHS's visit, but did not delist any of the other JUUL-branded products advertised and offered for sale on CJ. | Ex.11 (Chou Depo Tr. Vol. II) at 156:20-157:22; 160:7-11. Ex. 25 (Chou Depo Ex. 126), p. 1. |
| 186. | The purchase records for the JUUL Starter Kits (SKU No. CJXFZNZN00104) from supplier Shenzhen Siwen Nouke Technologies state "Europe and USA hot-selling juul cigarette" in the description, which Defendants' sourcing team would have seen prior to purchasing the JUUL Starter Kits. | Exs. 10-11 (Chou Depo Tr. Vol. I & II) at 90:12-19; 132:6-21 (ending at "this"). Ex. 21 (Chou Depo Ex. 122), p. 1. |
| 187. | Throughout JLI's investigation, JLI's investigator communicated with several different sales agents communicating on behalf of Defendants, including Meera Jin, "Gringer," and one or more individuals identifying as "Celia" | Hewlett Decl. ¶ 18. Ex. 1 (ECF No. 90-1) ¶ 67. |
| 188. | Celia sent JLI's investigator photographs of the JUUL Starter Kits being advertised and offered for sale that were in stock. | Hewlett Decl. ¶ 14. Ex. 1 (ECF No. 90-1) ¶ 70. |
| 189. | Celia wrote to JLI's investigator that the "product attribution" for the JUUL Starter Kits was banned. | Ex. 5 (ECF No. 51-12) p. 41. |

STATEMENT OF UNDISPUTED MATERIAL FACTS ISO JUUL'S MOTION FOR
RECONSIDERATION/MOTION FOR SUMMARY JUDGMENT

| | UNCONTROVERTED FACTS | |
|---|---|---|
| **No.** | **UNDISPUTED FACT** | **SUPPORTING EVIDENCE** |
| 190. | After JLI's investigator asked Celia "When can you ship it," Celia responded, "we can ship it secretly and ship it with several times but we can be sure it wont be checked and hold." | Ex. 5 (ECF No. 51-12) p. 41. |
| 191. | When JLI's investigator asked Celia if there were any more JUUL Starter Kits in stock, Celia responded "sorry we wont sell that because it is banned to ship and last time we take big risk to send out." | Ex. 5 (ECF No. 51-12) p. 69. |
| 192. | It is a common tactic for international counterfeiters to ship counterfeit products in multiple packages with other products to circumvent detection by U.S. Customs. | Punderson Decl. ¶ 33. |
| 193. | When JLI's investigator asked Celia to source Apple-branded earbuds (SKU No. CJXFBXEJ00077) that were branded and had branded packaging, Celia initially responded, "okay I will source for you" and "yes I found a factory with apple brand but they are not the genuine one but the copy one same with the genuine apple." | Hewlett Decl. ¶ 21, Ex. 89. |
| 194. | As of February 2, 2022, Defendants were listing for sale Apple-branded products on CJ. | Ex. 66 (JLI00024696-24699). |
| 195. | On October 12, 2020, after a customer asked Celia whether a product she had successfully sourced for her was real or not, Celia responded, "sorry it is not the genuine one." | Ex. 67 (CJ020775) |
| 196. | Defendants used a total of fifteen counterfeit JUUL Marks on the six different types of counterfeit JUUL Products advertised for sale, sold, and distributed on CJ. | Ex. 73 (demonstrative counting marks) |

STATEMENT OF UNDISPUTED MATERIAL FACTS ISO JUUL'S MOTION FOR RECONSIDERATION/MOTION FOR SUMMARY JUDGMENT

| UNCONTROVERTED FACTS | | |
|---|---|---|
| **No.** | **UNDISPUTED FACT** | **SUPPORTING EVIDENCE** |
| **CELIA IS AN EMPLOYEE OF DEFENDANTS, OR AT THE VERY LEAST, HAD ACTUAL OR APPARENT AUTHORITY** | | |
| 197. | Defendants assigned Celia Yang to JLI's investigator as his personal agent to handle all his orders. | Hewlett Decl. ¶ 18-19.<br>Ex. 1 (ECF No. 90-1) ¶ 68. |
| 198. | All communication between Celia and JLI's investigator took place through the CJ platform. | Hewlett Decl. ¶ 19.<br>Ex. 1 (ECF No. 90-1) ¶ 69. |
| 199. | There was never any indication from Celia or anyone else that she was representing anyone other than Defendants. | Hewlett Decl. ¶ 22. |
| 200. | Defendants assigned Celia her Skype account and maintained the username and password. | Ex. 15. (Lee Depo Tr.) at 51:16-18.<br>Ex. 69 (Defs. Resp. to JUUL RFA, set three), RFA Nos. 71-73. |
| 201. | Defendants assigned Celia a Corporate WeChat account. | Ex. 15 (Lee Depo Tr.) at 51:19-23. |
| 202. | Defendants assigned Celia a live chat account on Defendants' ERP system and she used it to communicate with customers on behalf of Defendants. | Ex. 15 (Lee Depo Tr.) at 51:24-52:1.<br>Ex. 13 (Li Depo Tr.) at 137:9-138:12; 139:1-12. |
| 203. | Only employees of CJ can use the live chat of Defendants' ERP system. | Ex. 13 (Li Depo Tr.) at 139:14-17. |
| 204. | Multiple employees of Defendants testified that Celia was an employee of Defendants and was Defendants' sales agent. | Ex. 17 (Jiang Depo Tr.) at 18:4-12.<br>Ex. 13 (Li Depo Tr.) at |

| UNCONTROVERTED FACTS | | |
|---|---|---|
| **No.** | **UNDISPUTED FACT** | **SUPPORTING EVIDENCE** |
| | | 137:9-138:12; 139:1-141:20; 142:1-18. |
| 205. | Joyi Jiang communicated with Celia over Defendants' Corporate WeChat account for business purposes. | Ex. 17 (Jiang Depo Tr.) at 16:1-18; 25:23-26:6; 26:13-16; 27:4-11; 27:17-28:6.<br><br>Ex.   (Jiang Depo Ex. 17 [*sic*]) |
| 206. | Joyi Jiang took photos of the exterior packaging of the JUUL Starter Kits at Defendants' New Jersey warehouse and sent them to Celia to send to JLI's investigator on July 30, 2020. | Ex.   (Jiang Depo Tr.) at 16:1-17:24; 25:23-26:6; 26:13-16.<br><br>*See* Ex.   (Jiang Depo Ex. 17 [*sic*]), pp. 1-2. |
| 207. | Joyi Jiang opened up the exterior packages and took photos of the JUUL Starter Kits at Defendants' New Jersey warehouse and sent them to Celia on July 30, 2020. | Ex.   (Jiang Depo Tr.) at 16:1-17:24; 25:23-26:6; 26:13-16.<br><br>*See* Ex. 65 (Jiang Depo Ex. 17), p. 4. |
| 208. | Numerous sales agents have used the name Celia when communicating with customers on the live chat of Defendants' ERP System, all of whom are employees of Defendants. | Ex. 13 (Li Depo Tr.) at 139:19-141:20; 142:1-18. |
| 209. | Defendants' list of their sales agents includes "Celia Xie" and "Celia Yang." | Ex. 70 (CJ065287) |
| 210. | Celia Xie, one of Defendants' U.S. agents, worked for Defendants from March 2019 until June 2019. | Ex. 13 (Li Depo Tr.) at 95:21-22.<br><br>Ex. 68 (Defs. Supp. Rog Responses 2nd Set), p 5. |

2875.000/1745838.2

Case No. 2:21-cv-03056-DSF-PDx
STATEMENT OF UNDISPUTED MATERIAL FACTS ISO JUUL'S MOTION FOR
RECONSIDERATION/MOTION FOR SUMMARY JUDGMENT

| | UNCONTROVERTED FACTS | |
|---|---|---|
| **No.** | **UNDISPUTED FACT** | **SUPPORTING EVIDENCE** |
| 211. | On April 20, 2020 at 7:59AM, andychoulizhi sent a message to customer, ahsanbilly, and Celia via Skype stating "This is Celia" and Celia responded "this is Celia." | Ex. 12 (Chou Depo Tr. Vol. III) at 362:1-363:19.<br><br>Ex. 58 (Chou Depo Ex. 168). |
| 212. | On April 20, 2020 at 8:02AM and 8:03AM, customer ahsanbilly messaged andychoulizhi and Celia on Skype and wrote "From ?" and "CJ?" to which andychoulizhi responded at 8:03AM, "Yes, she is." | Ex. 12 (Chou Depo Tr. Vol. III) at 362:1-11; 364:13-23.<br><br>Ex. 58 (Chou Depo Ex. 168). |
| 213. | On January 7, 2020 at 3:32:14AM, andychoulizhi sent a message to customer eddyasuma, and Celia via Skype stating, "Hi let me introduce Celia." | Ex. 12 (Chou Depo Tr. Vol. III) at 366:1-15.<br><br>Ex. 59 (Chou Depo Ex. 169). |
| 214. | On January 7, 2020 at 3:32:53AM, Celia messaged andychoulizhi and eddyasuma via Skype and wrote "Hi eddy this is Celia." | Ex. 12 (Chou Depo Tr. Vol. III) at 366:1-15.<br><br>*See* Ex. 59 (Chou Depo Ex. 169). |
| 215. | On April 17, 2020 at 10:38AM, andychoulizhi sent a message to customer akm2441, and Celia via Skype stating, "THis is Celia." | Ex. 12 (Chou Depo Tr. Vol. III) at 368:8-16; 368:24-369:2.<br><br>*See* Ex. 60 (Chou Depo Ex. 170). |
| 216. | Celia had regular communications with Defendants' warehouse personnel such as Keyin Ye in the New Jersey warehouse. | Ex. 12 (Chou Depo Tr. Vol. III) at 372:2-19.<br><br>*See* Ex. 61 (Chou Depo Ex. 171). |
| 217. | Defendant Chou has never communicated with a purported third party named "Hu Qian." | Ex. 12 (Chou Depo Tr. Vol. III) at 373:20-22. |

STATEMENT OF UNDISPUTED MATERIAL FACTS ISO JUUL'S MOTION FOR RECONSIDERATION/MOTION FOR SUMMARY JUDGMENT

| UNCONTROVERTED FACTS | | |
|---|---|---|
| No. | UNDISPUTED FACT | SUPPORTING EVIDENCE |
| 218. | Defendant Chou communicated with Celia. | Ex. 12 (Chou Depo Tr. Vol. III) at 373:15-18. |
| 219. | Defendant Chou communicated with Celia via Defendants' corporate WeChat from at least February 2020 through December 2020. | Ex. 12 (Chou Depo Tr. Vol. III) at 374:16-375:12.<br><br>Ex. 62 (Chou Depo Ex. 172). |
| 220. | Defendant Chou communicated with Celia on April 24, 2021 via Defendants' corporate WeChat and asked Celia for the full chat history for JLI's investigator. | Ex. 12 (Chou Depo Tr. Vol. III) at 375:17-377:16.<br><br>Ex. 63 (Chou Depo Ex. 173). |
| 221. | Lynn Lee communicated with Celia via telephone in June 2021. | Ex. 15 (Lee Depo Tr.) at 93:1-24. |

| CONCLUSIONS OF LAW | | |
|---|---|---|
| No. | CONCLUSION OF LAW | SUPPORTING EVIDENCE |
| 1. | A motion for summary judgment must be granted when the pleadings, the discovery and disclosure materials on file, and any affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." | Fed. R. Civ. P. 56(c).<br><br>*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). |
| 2. | "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." | *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). |

| 3. | An issue of fact is a genuine issue if it reasonably can be resolved in favor of either party. | *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). |
|---|---|---|
| 4. | "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury . . . could find by a preponderance of the evidence that the [non-movant] is entitled to a verdict . . . ." | *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). |
| 5. | Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial." | *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) |
| 6. | At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. | *Scott v. Harris,* 550 U.S. 372, 380 (2007) |
| 7. | When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. | *Scott v. Harris,* 550 U.S. 372, 380 (2007) |

| 8. | A motion for reconsideration may be brought when new material facts become available after the order was entered. | *L.R. 7-18*<br><br>*Soler v. Trans Union, LLC,* 2021 WL 6104828 at *1 (Jan. 5, 2021, Case No. 20-8459, C.D. Cal.) |
|----|----|----|
| 9. | A motion for reconsideration may be made on the following grounds, among other things: "a material difference in fact … from that presented to the Court that, in the exercise of reasonable diligence, could not have been known to the party moving for reconsideration at the time the Order was entered." | *L.R. 7-18* |
| 10. | A motion for reconsideration may be filed more than 14 days after the entry of the Order that is the subject of the motion, where moving party shows good cause. | *L.R. 7-18*<br><br>*Evanger's Dog and Cat Food Company, Inc. v. Environmental Democracy Project,* 2022 WL 1592828 at *3 (May 18, 2022, Case No. 21-08489, C.D. Cal.) |
| 11. | Good cause for the purpose of a motion for reconsideration focuses primarily on the diligence of the moving party. | *Evanger's Dog and Cat Food Company, Inc. v. Environmental Democracy Project,* 2022 WL 1592828 at *3 (May 18, 2022, Case No. 21-08489, C.D. Cal.) |
| 12. | A party may reasonably rely on its opponent's under oath statements and refrain from conducting discovery on such matters. | *See Averbach v. Rival Mfg. Co.,* 879 F.2d 1196, 1201 (3d Cir. 1989) ("A litigant is entitled to accept answers to previous interrogatories as true, and to refrain from seeking additional discovery directed to the same issue. Because the Federal Rules of Civil Procedure are structured to elicit truthful answers given ***under*** |

| | | *oath, the opposing party, in circumstances such as presented here, may reasonably rely on* interrogatory *answers.)* |
|---|---|---|
| 13. | "Any person who shall, without the consent of the registrant - (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive ... shall be liable in a civil action by the registrant for the remedies hereinafter provided." | 15 U.S.C. § 1114 (1)(a). |
| 14. | To prevail on a trademark infringement claim, the moving party must establish: (1) they have a valid, protectable trademark; and (2) defendant's use of the same or similar mark causes a likelihood of confusion in the minds of the relevant consuming public. | *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.,* 826 F.2d 837, 841 (9th Cir. 1987).<br><br>*BMW of N. Am., LLC v. Rocco,* No. CV 19-9285 DSF (PLAx), 2020 WL 7047318, at *7 (C.D. Cal. Nov. 18, 2020). |
| 15. | Federal registration of a trademark is prima facie evidence of the mark's validity and entitles the plaintiff to a strong presumption that the mark is protectable. | *Zobmondo Ent., LLC v. Falls Media, LLC,* 602 F.3d 1108, 1113 (9th Cir. 2010).<br><br>*BMW of N. Am., LLC v. Rocco,* No. CV 19-9285 DSF (PLAx), 2020 WL 7047318, at *7 (C.D. Cal. Nov. 18, 2020). |
| 16. | "Any person who shall . . . use in commerce any . . . counterfeit . . . of a registered mark . . . which such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action by the registrant for the remedies hereinafter provided." | 15 U.S.C. § 1114. |

| 17. | An offer to sell a counterfeit good, "without the consent of the [trademark] registrant," is sufficient to establish trademark counterfeiting under the Lanham Act. | 15 U.S.C. 1114(1)(a).<br><br>*Levi Strauss & Co. v. Shilon*, 121 F.3d 1309, 1312 (9th Cir. 1997).<br><br>*Tommy Bahama Group, Inc. v. Sexton*, No. C 07-06360 EDL, 2009 WL 4673863, at *4 (N.D. Cal. Dec. 3, 2009), aff'd, 476 F. App'x 122 (9th Cir. 2012). |
| --- | --- | --- |
| 18. | A counterfeit is "a non-genuine mark identical to the registered, genuine mark of another, where the genuine mark was registered for use on the same goods to which the infringer applied the mark." | *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 945-946 (9th Cir. 2011).<br><br>15 U.S.C. § 1127. |
| 19. | Counterfeiting is a more specialized case of trademark infringement because "[a] 'counterfeit' is a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." | 15 U.S.C. § 1127.<br><br>4 McCarthy on Trademarks and Unfair Competition § 25:10 (5th ed.). |
| 20. | Counterfeiting is an aggravated form of trademark infringement "that seeks to trick the consumer into believing he or she is getting the genuine article." | *UL LLC v. Space Chariot Inc.*, 250 F. Supp. 3d 596, 607–08 (C.D. Cal. 2017) (internal quotation marks and citations omitted). |
| 21. | "[T]rademark infringement" is a "strict liability offense[], and the state of mind of the defendant is not relevant." | *Microsoft Corp. v. Image & Bus. Sols., Inc.*, No. CV 05-6807 ABC (RCx), 2007 WL 2874430, at *7 (C.D. Cal. May 4, 2007). |

| 22. | A defendant is strictly liable for selling infringing goods even if it did not personally itself affix the offending mark to the goods it sells. | *Atari Interactive, Inc. v. Redbubble, Inc.,* ___ F. Supp. 3d ___, 2021 WL 706790, at *4 (N.D. Cal. Jan. 28, 2021). |
|---|---|---|
| 23. | "An online marketplace" cannot avoid liability for "offering to sell an infringing good" by asserting that it is simply selling a third parties' goods "if a person shopping on [the website] would have reasonably believed that the [website provider], and not the third-party sellers, was the seller with title or possession of a product who could have entered into a contract to transfer title or possession." | *Atari Interactive, Inc. v. Redbubble, Inc.,* ___ F. Supp. 3d ___, 2021 WL 706790, at *8 (N.D. Cal. Jan. 28, 2021). *Accord e.g., Phillip Morris USA Inc. v. Shalabi,* 352 F. Supp. 2d 1067, 1074 (C.D. Cal. 2004) (sellers of cigarettes with infringing packaging liable regardless of whether they knew the goods were counterfeit). *Accord e.g., Chanel, Inc. v. RealReal, Inc.,* 449 F. Supp. 3d 422, 441 (S.D.N.Y 2020) (online consignment store could be liable for direct infringement by counterfeit products even though it was not involved in the "manufacture nor the affixing" of the trademark). |
| 24. | "[A]s a legal matter, a 'sale' is not limited to sales by the owner" since "the law recognizes a sale by anyone who has authority to transfer title." | *Atari Interactive, Inc. v. Redbubble, Inc.,* ___ F. Supp. 3d ___, 2021 WL 706790, at *5 (N.D. Cal. Jan. 28, 2021). |
| 25. | "Courts in the Ninth Circuit have held that in . . . trademark . . . cases, any member of the distribution chain of allegedly infringing products can be jointly and severally liable for the alleged misconduct." | *Adobe Sys. Inc. v. Blue Source Grp., Inc.,* 125 F. Supp. 3d 945, 973 (N.D. Cal. 2015) (internal citations omitted). |

STATEMENT OF UNDISPUTED MATERIAL FACTS ISO JUUL'S MOTION FOR RECONSIDERATION/MOTION FOR SUMMARY JUDGMENT

| 26. | "'Where . . . one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of likelihood of confusion.'" | *Power Balance LLC v. Power Force LLC,*, No. SACV 10-1726 AG (MLGx) 2010 WL 5174957, at *4 (C.D. Cal. 2010) (quoting *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir. 1987)). |
|---|---|---|
| 27. | When dealing with counterfeit products, "it is unnecessary to perform [*Sleekcraft*'s] step-by-step examination … because counterfeit marks are inherently confusing.'" | *Phillip Morris USA Inc. v. Shalabi*, 352 F. Supp. 2d 1067, 1073 (C.D. Cal. 2004) (quoting *Philip Morris USA Inc. v. Felizardo*, No. 03 Civ. 5891(HB), 2004 WL 1375277, at *5 (S.D.N.Y. June 18, 2004)). *Accord e.g., Chloe SAS v. Sawabeh Info Servs. Co.*, CV 11-4147 GAF (MANx), 2013 WL 12126742, at *5 (C.D. Cal. Oct. 8, 2013). |
| 28. | The *Sleekcraft* test considers the following: "(1) the strength of the mark; (2) proximity or relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) the defendant's intent in selecting the mark; and (8) the likelihood of expansion of the product lines." | *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1106 (9th Cir. 2016). |
| 29. | "The factors are non-exhaustive and applied flexibly; the *Sleekcraft* factors are not intended to be a rote checklist." | *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1106 (9th Cir. 2016) (internal quotation marks and citation omitted). |
| 30. | Under the Lanham Act, a plaintiff who proves trademark infringement is entitled to recover the defendant's profits, any damages suffered by the plaintiff, and the costs of the action. | 15 U.S.C. § 1117(a). |

| 31. | In a case involving use of a counterfeit mark, a plaintiff can elect instead to recover statutory damages of "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just," or "if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." | 15 U.S.C. § 1117(c). |
| --- | --- | --- |
| 32. | For the purpose of statutory damages, a counterfeit mark includes a mark registered on the principal register in the USPTO for the goods or services sold, offered for sale, or distributed. | 15 U.S.C. §§ 1116(d), 1117(c). |
| 33. | To calculate statutory damages, the Court determines the number of infringing "marks" used on each type of goods and multiplies this by number of different types of goods sold. | *Nike, Inc. v. Top Brand Co.*, No. 00 Civ.8179(KMW)(RLE), 2006 WL 2946472 at *3 (S.D.N.Y. Feb. 27, 2006). (Counting four separate marks for sales of t-shirts, sweatshirts, and polo shirts for a total of 12)  *Omega SA v. 375 Canal, LLC,* 984 F.3d 244 (2nd Cir. 2021) (Counting four separate marks for included on a single watch) |
| 34. | "[T]he court has wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima." | *Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1194 (9th Cir. 2001). |

| 35. | "[T]here is no necessary mathematical relationship between the size of [a statutory damages] award and the extent or profitability of the defendant's wrongful activities." | *Sara Lee Corp. v. Bags of New York, Inc.*, 36 F. Supp. 2d 161, 165 (S.D.N.Y. 1999) (internal quotations and citations omitted). |
| --- | --- | --- |
| 36. | Statutory damages must be sufficient to deter Defendants and others from continuing to counterfeit, compensate Plaintiffs, and punish Defendants. | *Volkswagen Group of America, Inc. v. Varona,* 2021 WL 1997573 at *3 (May 18, 2021, Case No. 19-24838, S.D. Fl.) |
| 37. | Significant statutory damages are necessary to curb the proliferation of counterfeiting in online marketplaces. | *Volkswagen Group of America, Inc. v. Varona,* 2021 WL 1997573 at *12 (May 18, 2021, Case No. 19-24838, S.D. Fl.) |
| 38. | Since statutory damages also provide deterrence for future infringement, the statutory damages awarded need not equal the actual damages suffered by Plaintiff. | *Microsoft Corp. v. Buy More, Inc.,* No. CV-14-9697-R, 2015 WL 12748627, at *4 (C.D. Cal. Nov. 6, 2015). *N. Face Apparel Corp. v. Niman*, No. CV 05-3628 DSF (PLAx), 2007 WL 9700729, at *7 (C.D. Cal. Jan. 29, 2007). |
| 39. | Maximum statutory damages for use of counterfeit marks will be awarded when a defendant's counterfeit use "is sufficiently broad, extensive, blatant, and willful." | *Playboy Enters., Inc. v. Asiafocus Int'l, Inc.*, No. Civ. A. 97-734-A, 1998 WL 724000, at *9 (E.D. Va. Apr. 10, 1998). |

| 40. | Many courts have considered the following factors in determining the appropriate statutory damages award:<br>1. the expenses saved and the profits reaped;<br>2. the revenues lost by the plaintiffs;<br>3. the value of the trademark;<br>4. the deterrent effect on others besides the defendant;<br>5. whether the defendant's conduct was innocent or willful;<br>6. whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and<br>7. the potential for discouraging the defendant. | *Feiya Cosmetics, LLC v. Beyond Beauty Int'l, LLC*, No. C-10-00967 JCS, 2011 WL 4506182 at *13 (N.D. Cal. Aug. 29, 2011).<br><br>*Playboy Enters., Inc. v. Asiafocus Int'l, Inc.*, No. Civ. A. 97-734-A, 1998 WL 724000, at *9 (E.D. Va. Apr. 10, 1998). |
| --- | --- | --- |
| 41. | Willfulness is proven by showing that the defendant was actually aware of the infringing activity or the defendant's actions were the result of reckless disregard or willful blindness. | *Innovation Ventures, LLC v. Ultimate One Distrib. Corp.*, 176 F. Supp. 3d 137, 164 (E.D.N.Y. 2016).<br><br>*UL LLC v. Space Chariot Inc.*, 250 F.Supp.3d 596, 613 (C.D. Cal., 2017) |
| 42. | Willful trademark infringement, including willful infringement via willful blindness, can be proven on summary judgment. | *Fendi Adele, S.R.L. v. Ashley Reed Trading, Inc.*, 507 Fed.Appx. 26, 31 (2nd Cir. 2013) |
| 43. | "Knowledge may be actual or constructive . . . it need not be proven directly but may be inferred from the defendant's conduct." | *Innovation Ventures, LLC v. Ultimate One Distrib. Corp.*, 176 F. Supp. 3d 137, 164 (E.D.N.Y. 2016) (internal citations omitted). |

| 44. | A determination of willfulness may also rest on defendant's failure to cooperate in discovery or its violation of court orders. | *Rolex Watch U.S.A., Inc. v. Zeotec Diamonds, Inc.,* 2003 WL 23705746 at *4 (Mar. 7, 2003, Case No. 02–01089, C.D. Cal.) |
|---|---|---|
| 45. | "[A] prior conviction of trademark counterfeiting charges is relevant to show present infringement was willful." | *Delta Air Lines, Inc. v. Wunder,* No. 1:13-CV-3388-MHC, 2015 WL 11242003, at *13 (N.D. Ga. Dec. 15, 2015) (citing *United States v. Kim,* 307 F. App'x 324, 326 (11th Cir. 2009). |
| 46. | A repeated pattern of past counterfeiting supports a finding that subsequent trademark infringement was willful. | *Burberry Limited v. Salim,* 2013 WL 12146120 at *4 (Jul. 7, 2012, Case No. 12-02389, C.D. Cal.) |
| 47. | If the evidence establishes that "no reasonable juror could fail to find other than willful infringement," the court may award enhanced statutory damages for willful infringement at the summary judgment stage. | *Innovation Ventures, LLC v. Ultimate One Distributing Corp.,* 176 F.Supp.3d 137 at 164-165 (E.D. NY 2016)<br><br>*Fendi Adele, S.R.L. v. Ashley Reed Trading, Inc.,* 507 Fed.Appx. 26 (2nd Cir. 2013) |
| 48. | A substantial damage award is necessary to deter future infringement for a Defendant who has previously been found liable for infringement in similar litigation. | *Viacom Intern. Inc. v. Fanzine Intern., Inc.,* 2001 WL 930248 at *5 (Aug. 16, 2001, Case No. 98-7448, S.D.N.Y.) |

| 49. | Defendants lack of cooperation and candor in the discovery process favors a higher statutory damages award. | *Volkswagen Group of America, Inc. v. Varona*, 2021 WL 1997573 at *13 (May 18, 2021, Case No. 19-24838, S.D. Fl.) |
|---|---|---|
| 50. | Higher statutory damages are warranted to deter the sale of counterfeit products that pose a potential risk to public safety by failing to comply with industry and governmental standards. | *Volkswagen Group of America, Inc. v. Varona*, 2021 WL 1997573 at *14 (May 18, 2021, Case No. 19-24838, S.D. Fl.) |
| 51. | High statutory damages are warranted to deter the sale of counterfeit products intended for human consumption. | *Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Eastimpex*, 2007 WL 328696 at *13 (Feb. 2, 2007, Case No. 04–4146, N.D. Cal.) |
| 52. | The maximum amount allowed should be awarded to discourage such activity that is threatening to "public health and safety." | *Innovation Ventures, LLC v. Ultimate One Distrib. Corp.*, 176 F. Supp. 3d 137, 170 (E.D.N.Y. 2016) (internal citations omitted). |
| 53. | "Apparent authority is the power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations" | Rest. (3d) of Agency § 2.03 (2006). |

STATEMENT OF UNDISPUTED MATERIAL FACTS ISO JUUL'S MOTION FOR
RECONSIDERATION/MOTION FOR SUMMARY JUDGMENT

| 54. | Spoliation of evidence includes the destruction or failure to preserve evidence in pending litigation. | *Gaina v. Northridge Hospital Medical Center*, 2018 WL 6258895 at *3 (Nov. 21, 2018, Case No. 18-00177, C.D. Cal.) |
|---|---|---|
| 55. | The Court may sanction a party who intentionally destroys ESI after litigation has been commenced that cannot be replaced through additional discovery. | Fed. R. Civ. P. 37(e);<br><br>*Winecup Gamble, Inc. v. Gordon Ranch LP*, 850 Fed.Appx. 573, 574 (9th Cir. 2021). |
| 56. | The Court may sanction a party who fails to obey and order to provide or permit discovery. | Fed. R. Civ. P. 37(b) |
| 57. | The "ultimate test" for federal claims for false designation of origin and unfair competition "is exactly the same as for trademark infringement: 'whether the public is likely to be deceived or confused by the similarity of the marks.'" | *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1178 (9th Cir. 1988); ECF No. 103 at 15. |
| 58. | The elements for a California state law claim for unfair competition are also the same as for the Lanham Act. | *SV3, LLC v. GG Distrib., Inc.*, No. EDCV 19-0046 JGB (SPx), 2019 WL 1460621, at *3 (C.D. Cal. Feb. 27, 2019); ECF No. 103 at 15-16. |

1   DATED:  June 8, 2022          BARTKO ZANKEL BUNZEL & MILLER

2                                  A Professional Law Corporation

3

4                                  By:       */s/ Stephen C. Steinberg*

5                                       Stephen C. Steinberg

6                                       Attorneys for Plaintiff JUUL Labs, Inc.