Timothy Wang (*pro hac vice*)
twang@nilawfirm.com
Neal Massand (*pro hac vice*)
nmassand@nilawfirm.com
Steve Moore (*pro hac vice*)
smoore@nilawfirm.com
Tong Jin (*pro hac vice*)
tjin@nilawfirm.com
NI, WANG & MASSAND, PLLC
8140 Walnut Hill Lane, Suite 500
Dallas, TX 75231
Telephone: (972) 331-4600
Facsimile: (972) 314-0900

John Karl Buche SBN 239477,
Byron E. Ma SBN 299706, *Local Counsel*
jbuche@buchelaw.com
BUCHE & ASSOCIATES, P.C.
2029 Century Park East
Suite 400N
Los Angeles, California 90067
Telephone: 310-593-4193

Attorneys for Defendants,
Andy Chou (aka Lizhi Zhou); Yiwu Cute Jewelry Co., Ltd.; Yiwu Xite Jewelry Co., LTD.; CJ Fulfillment Corp.; CJ Trade Corp.; and Yiwu Promotional Trade Co., LTD (aka Yiwu Promotion Trade Co., LTD.)

THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

(WESTERN DIVISION)

| | |
|---|---|
| JUUL LABS, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>ANDY CHOU, *et al.*,<br><br>Defendants. | Case No. 2:21-cv-03056-DSF-PDx<br><br>Honorable Dale S. Fischer<br><br>**DEFENDANTS' [PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

**[PROPOSED] FINDINGS OF FACT**

1. The United States Patent and Trademark Office ("PTO") issued and assigned to Plaintiff JUUL Labs, Inc. the following trademarks: U.S. Trademark Reg. No. 4,818,664; U.S. Trademark Reg. No. 4,898,257; U.S. Trademark Reg. No. 5,770,541; U.S. Trademark Reg. No. 5,776,153; U.S. Trademark Reg. No. 5,918,490; U.S. Trademark Reg. No. 6,064,902; and U.S. Trademark Reg. No. 6,211,614 (collectively, the "JUUL Marks").

2. United States Trademark Reg. No. 4,818,664 covers goods and services for "[Nicotine-based liquid, namely, liquid nicotine used to refill electronic cigarettes;] cartridges sold filled with liquid nicotine for electronic cigarettes; [Electronic cigarette refill liquids, namely, chemical flavorings in liquid form used to refill electronic cigarettes;] cartridges sold filled with chemical flavorings in liquid form for electronic cigarettes; Electronic cigarettes; electronic smoking vaporizers, namely, electronic cigarettes; tobacco substitutes in liquid solution form other than for medical purposes for electronic cigarettes."

3. United States Trademark Reg. No. 4,898,257 covers goods and services for "nicotine-based liquid, namely, liquid nicotine used to refill electronic cigarettes; cartridges sold filled with liquid nicotine for electronic cigarettes; electronic cigarette refill liquids, namely, chemical flavorings in liquid form used to refill electronic cigarettes; cartridges sold filled with chemical flavorings in liquid form for electronic cigarettes; electronic cigarettes; electronic smoking vaporizers, namely, electronic cigarettes; tobacco substitutes in liquid solution form other than for medical purposes for electronic cigarettes."

4. United States Trademark Reg. No. 5,770,541 covers goods and services for "nicotine-based liquid, namely, liquid nicotine used to refill electronic cigarettes; cartridges sold filled with liquid nicotine for electronic cigarettes; electronic cigarette refill liquids, namely, chemical flavorings in liquid form used to refill

electronic cigarettes; chemical flavorings in liquid form, and tobacco substitutes in liquid solution form other than for medical purposes; cartridges sold filled with chemical flavorings in liquid form for electronic cigarettes; electronic cigarettes; electronic smoking vaporizers, namely, electronic cigarettes; tobacco substitutes in liquid solution form other than for medical purposes for electronic cigarettes; refill cartridges sold empty for electronic cigarettes; electric vaporizers, namely, smokeless vaporizer pipes for the ingestion and inhalation of tobacco and other herbal matter; electric vaporizers for the vaporization of tobacco; processed tobacco pods; pipe tobacco, namely, tobacco for use in electric vaporizers; tobacco, whether manufactured or unmanufactured; smoking tobacco, pipe tobacco, hand rolling tobacco, snus tobacco; tobacco sold in pods."

5. United States Trademark Reg. No. 5,776,153 covers goods and services for "nicotine-based liquid, namely, liquid nicotine used to refill electronic cigarettes; cartridges sold filled with liquid nicotine for electronic cigarettes; electronic cigarette refill liquids, namely, chemical flavorings in liquid form used to refill electronic cigarettes; chemical flavorings in liquid form, and tobacco substitutes in liquid solution form other than for medical purposes; cartridges sold filled with chemical flavorings in liquid form for electronic cigarettes; electronic cigarettes; electronic smoking vaporizers, namely, electronic cigarettes; tobacco substitutes in liquid solution form other than for medical purposes for electronic cigarettes; refill cartridges sold empty for electronic cigarettes; electric vaporizers, namely, smokeless vaporizer pipes for the ingestion and inhalation of tobacco and other herbal matter; electric vaporizers for the vaporization of tobacco; processed tobacco pods; pipe tobacco, namely, tobacco for use in electric vaporizers; tobacco, whether manufactured or unmanufactured; smoking tobacco, pipe tobacco, hand rolling tobacco, snus tobacco; tobacco sold in pods."

6. United States Trademark Reg. No. 5,918,490 covers goods and services

for "Nicotine liquid used to refill electronic cigarettes and vaporizer cartridges; electronic cigarettes and oral smoker's vaporizer refill cartridges sold with liquid nicotine solutions; electronic cigarette and vaporizer refill liquids, namely, liquid form chemical flavorings used to refill electronic cigarettes and oral vaporizers for smokers; liquid form tobacco substitutes other than for medical purposes; refill cartridges filled with liquid form chemical flavorings for electronic cigarettes and oral vaporizers for smokers; electronic and electric cigarettes and oral vaporizers for smokers; electronic smoking vaporizers, namely, electronic cigarettes and oral vaporizers for smokers; liquid form tobacco substitutes other than for medical purposes for electronic cigarettes and oral vaporizers for smokers; refill cartridges sold empty for electronic cigarettes and oral vaporizers for smokers; electronic oral vaporizers for smokers for the vaporization of tobacco; smoker's articles for electric and electronic cigarettes and vaporizers, namely, cases for electronic cigarettes and oral vaporizers for smokers and electronic cigarette accessories, namely, refill cartridges for electronic cigarettes sold empty, and boxes for electronic cigarettes and oral vaporizers for smokers and electronic cigarette accessories, namely, refill cartridges for electronic cigarettes sold empty; components for electric and electronic cigarettes and oral vaporizers for smokers, namely, atomisers, cartomisers, and clearomisers sold empty for tobacco substitutes."

7. United States Trademark Reg. No. 6,064,902 covers goods and services for "Carrying cases, holders, and protective cases featuring power supply connectors, adaptors and battery charging devices adapted for use with handheld electronic devices, namely, electronic cigarettes; Printed materials and publications, namely, user manuals, booklets, and brochures all in the field of electronic cigarettes and vaping technology."

8. United States Trademark Reg. No. 6,211,614 covers goods and services for "Carrying cases, holders, and protective cases featuring power supply

connectors, adaptors and battery charging devices adapted for use with handheld electronic devices, namely, electronic cigarettes."

9. The JUUL Marks are notorious in the U.S. market.

10. In 2022, Plaintiff's products with the JUUL Marks were banned by U.S. Food and Drug Administration for public health concerns.

11. Plaintiff has been involved in multiple lawsuits and has paid hundreds of millions of dollars in settlements for its marketing strategy to teenagers, which were filed by numerous school districts and state attorneys general, and for health concerns related to its products.

12. The goodwill associated with the JUUL Marks' is low.

13. There are seven (7) types of goods involved in this case: (1) JUUL Devices; (2) JUULPods ; (3) JUUL USB Charges/USB Charging Docks; (4) JUUL Charging Box; (5) JUUL Portable Charger; (6) JUUL USB Charging Cable/ USB universal magnetic JUUL USB charging cables; and (7) JUUL Mobile phone cases.

14. None of the "JUUL Marks" covers "JUUL USB Chargers," "USB universal magnetic JUUL USB charging cables," or "JUUL mobile phone cases."

15. The "JUUL Portable Charger" was "OVNS" branded.

16. There is no "JUUL" branding on the "USB universal magnetic JUUL USB charging cables."

17. The "USB universal magnetic JUUL USB charging cables" and "JUUL mobile phone cases" were never sold to the United States.

18. Defendants' use of "Juul" in the listings of the "JUUL Portable Charger," "USB universal magnetic JUUL USB charging cables" and "JUUL mobile phone cases" was merely descriptive.

19. Defendants did not infringe the JUUL Marks when using "Juul" relating to the "JUUL Portable Chargers," "USB universal magnetic JUUL USB charging cables," and "JUUL mobile phone cases."

4

20. Through Deng Qiu Han (aka "Celia Yang"), Plaintiff's investigator purchased infringing JUUL Devices, JUUL pods, and USB Charging Docks (the "Prior Products") from Qian Hu.

21. Defendants were asked by their customer to source "JUUL Charging Boxes," "JUUL Portable Chargers," "USB universal magnetic JUUL USB charging cables," and "JUUL mobile phone cases," ("New JUUL Products"). However, Defendants delisted all of them after receiving the notice of this lawsuit.

22. Defendants did not spoliate any evidence because they delisted all JUUL related products to comply with the Court's restraining order.

23. Plaintiff did not send a cease-and-desist letter to Defendants prior to filing this lawsuit.

24. Qian Hu was a supplier who fulfill sourcing orders that were placed on Defendants' online dropshipping platform "CJDropshipping.com."

25. CJDropshipping.com lists more than 500,00 products.

26. Celia Yang is Qian Hu's employee.

27. Qian Hu is not Defendants' employee or agent.

28. Celia Yang is not Defendants' employee or agent.

29. When Celia Yang sold the Prior Products to Plaintiff's investigator, she was not aware that the Prior Products infringed JUUL Marks.

30. When Defendants sourced the Prior Products, Defendants were not aware that "Juul" was a brand.

31. When Defendants were asked by their customer to source New JUUL Products, Defendants were not aware that "Juul" was a brand.

32. When Defendants listed the New JUUL Products on their online dropshipping platform "CJDropshipping.com," Defendants were not aware that "Juul" was a brand.

33. Defendants were not aware that "Juul" was a brand until they received

5

notice of this case in April 2021.

34. Defendants did not willfully infringe JUUL Marks.

35. Inventory numbers on Defendants' website are not accurate.

36. The lost sale of Plaintiff in total is less than $10,000.

37. Defendants' total profits from the sale of all of the New JUUL Products and Prior Products were $1,307.83.

38. Defendants now have a robust system to combat counterfeiting.

39. Specifically, after CJ (including Defendants Yiwu Cute Jewelry Co., Ltd; CJ Fulfillment Corp.; CJ Trade Corporation ("Trade"), Yiwu Xite Jewelry Co., Ltd. and Yiwu Cujia Trade Co., Ltd.) receives a sourcing request from its vendor customers, the sourcing department of CJ searches for suppliers who can supply the requested product. As part of CJ's anticounterfeiting effort, the sourcing department directly asks the supplier whether their products are generic or whether there is authorization from the owner of any intellectual property rights that may cover the product. The sourcing department then independently uses the online search engine baidu.com, which is the equivalent of Google.com in China, to research whether the supplier is authorized to sell products that carry any trademarks. The members of the sourcing department also use their past work and life experiences to determine if there is any infringement risk. In addition, they use the links provided by the supplier to find the name or title, pictures of, and a description of the product. If they see well-known names or logos, then they visit relevant websites and use CJ's computer systems to see if there is a match. Before approving a product listing on the CJ platform, the sourcing department utilizes CJ's brand name database. If the listing matches any trademark in the database, the system will notify the sourcing department accordingly. Then the sourcing department will undertake further research to prevent listing infringing products. After the product is listed, the sourcing department reviews the listing again.

40. Utilizing this system, CJ successfully prevented 19,858 sourcing requests that involved potentially infringing products since 2018. CJ encourages its users to report potentially infringing listings and takes immediate action to remove infringing listings. Upon receiving a report, CJ investigates and, if the reported listing is found to infringe, CJ delists the product and adds the brand to its database. CJ would have delisted all the JUUL related listings if they had been reported.

41. CJ provides 7-days of training for all new sourcing department staff, and that includes intellectual property related training. Other than clearly informing the sourcing department staff that they cannot list infringing products under any circumstances, they are also trained about how to use CJ's system, such as the brand name database, to identify and deal with suspected infringing products. CJ's sourcing department also provides follow-up intellectual property training to its staff from time to time.

42. CJ has taken additional actions to increase its anti-counterfeiting capabilities. CJ has a reward system for reporting infringing products and a punishment system for wrongfully listing infringing products. CJ also implemented its Infringing Product Inspection Protocol that sets detailed procedures for the inspection of infringing products to help prevent the listing of infringing products.

## [PROPOSED] CONCLUSIONS OF LAW

1. As a matter of law, Defendants' conduct was not willful because they did not act with knowledge that their conduct constituted infringement. *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1335 n. 2 (9th Cir. 1990).

2. As a matter of law, Defendants were not willfully blind because they did not suspect wrongdoing and deliberately fail to investigate. *Philip Morris USA Inc. v. Liu*, 489 F. Supp. 2d 1119, 1123 (C.D. Cal. 2007).

3. As a matter of law, Celia Yang was not an agent of Defendants because none of Defendants had the right to control her conduct. *Bultemeyer v. Sys. & Servs.*

7

*Techs., Inc.*, 2012 U.S. Dist. LEXIS 138859, 2012 WL 4458138, *6 (D. Ariz. 2012).

4. As a matter of law, Celia Yang did not act with apparent authority because there is no showing of an apparent or actual partnership, authority to bind Defendants in transactions with third parties or joint ownership or control over the infringing product. *Symantec Corp. v. CD Micro, Inc.*, 286 F.Supp.2d 1265, 1275 (D. Or. 2003).

5. As a matter of law, Celia Yang did not act with the apparent authority of Defendants because (1) Defendants did not, by statements or conduct, intentionally or negligently allows Plaintiff to reasonably to believe the she had authority to act; (2) in dealing with the Celia Yang, Plaintiff was not justified in acting in reliance upon a belief that an agency relationship *existed*; and (3) in reliance upon the *Yang's* apparent authority to act as agent, Plaintiff did not part with something of value. *S.F. Residence Club, Inc. v. Amado*, 773 F. Supp. 2d 822, 830-31 (N.D. Cal. 2011).

6. As a matter of law, the applicable multiplier for damages in this case is 7, 3 for the Starter Kits use of JUUL, JUULPods , and JUUL LABS, 3 for JUUL Pods uses of JUULPods , JUUL LABS, and JUUL, and 1 for JUUL Charging Boxes used JUUL. *Chanel, Inc. v. Tshimanga*, No. C-07-3592 EMC, 2008 U.S. Dist. LEXIS 118783, at *41 (N.D. Cal. July 15, 2008).

7. As a matter of law, the "JUUL Portable Charger" does not infringe the JUUL Marks because it was "OVNS" branded. *Playboy Enters. v. Netscape Communs. Corp.*, 354 F.3d 1020, 1030 n.44 (9th Cir. 2004).

8. As a matter of law, Defendants cannot claim statutory damages based on JUUL USB Charges/USB Charging Docks, "JUUL USB Charging Cable/ USB universal magnetic JUUL USB charging cables;" and "JUUL Mobile Phone Case" because JUUL Marks do not cover these goods. *Idaho Potato Comm'n v. G&T Terminal Packaging, Inc.*, 425 F.3d 708, 721 (9th Cir. 2005).

9. As a matter of law, damages in this case should be assessed at the statury minimum. *Tiffany (NJ) Inc. v. Luban*, 282 F. Supp. 2d 123, 125 (S.D.N.Y. 2003).

10. As a matter of law, Plaintiff is barred from, in part or in whole, to recover any damages because it failed to mitigate its damages. *E & J Gallo Winery v. Grenade Bev. LLC*, No. 1:13-cv-00770-AWI-SAB, 2014 U.S. Dist. LEXIS 60769, at *14 (E.D. Cal. Apr. 30, 2014); *see also Energy Intelligence Grp., Inc. v. Kayne Anderson Capital Advisors, L.P.*, 948 F.3d 261, 275 (5th Cir. 2020).

11. As a matter of law, Plaintiff is barred from, in part or in whole, to recover any damages under the unclean hands doctrine. *Levi Strauss & Co. v. Shilon*, 121 F.3d 1309, 1313 (9th Cir. 1997); *United States v. McClelland*, 72 F.3d 717, 722 (9th Cir. 1995).

Dated: March 23, 2023

By: */s/ Tong Jin*

Timothy Wang (*pro hac vice*)
twang@nilawfirm.com
Neal Massand (*pro hac vice*)
nmassand@nilawfirm.com
Steve Moore (*pro hac vice*)
smoore@nilawfirm.com
Tong Jin (*pro hac vice*)
tjin@nilawfirm.com
NI, WANG & MASSAND, PLLC

Local Counsel
John Karl Buche (SBN 239477)
jbuche@buchelaw.com
Byron E. Ma (SBN 299706)
bma@buchelaw.com
BUCHE & ASSOCIATES, P.C.

Attorneys for Defendants

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on March 23, 2023, I served the foregoing by ECF.

                                           */s/ Tong Jin*
                                                  Tong Jin